Steven M. Wilker, OSB No. 911882
  Direct Dial: 503.802.2040
  Fax: 503.972.3740
  E-Mail: steven.wilker@tonkon.com
David S. Aman, OSB No. 962106
  Direct Dial: 503.802.2053
  Fax: 503.972.3753
  E-Mail: david.aman@tonkon.com
**TONKON TORP LLP**
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR 97204

    Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| **OBSIDIAN FINANCE GROUP, LLC and KEVIN D. PADRICK,** | Civil No. CV 11-0057 HZ |
| Plaintiffs, | |
| v. | **MEMORANDUM IN OPPOSITION TO *SUA SPONTE* MOTION FOR SUMMARY JUDGMENT** |
| **CRYSTAL COX,** | |
| Defendant. | ***ORAL ARGUMENT REQUESTED*** |

PAGE 1 – MEMORANDUM IN OPPOSITION TO *SUA SPONTE* MOTION FOR
        SUMMARY JUDGMENT

I.  **INTRODUCTION**

Every time someone gets on the Internet and uses a search engine such as Google to research Kevin Padrick or Obsidian Finance, what they immediately find is that Padrick and Obsidian are being accused of serious criminal and civil misconduct on literally dozens of websites. These false[1] and defamatory accusations—defended and presented by defendant Cox as the "truth", not speculation or opinion—have already caused Padrick and Obsidian to suffer severe damage to their reputations. Bankers, potential clients and others in the business community reading these false accusations have taken them seriously enough to question Padrick's and Obsidian's reputations—reputations that they have earned over many years with hard work, integrity and professionalism.[2]

In an effort to protect their reputations, Padrick and Obsidian have spent hours answering the serious concerns raised by current and potential business partners and clients as they inevitably encounter defendant's accusations on the Internet. And those are only the instances that Padrick and Obsidian have learned about—who knows how many others had the same concerns but never voiced them, opting instead to do business with parties who are not openly accused of serious criminal and civil misconduct.

The defamation laws exist to protect citizens like Padrick and Obsidian from precisely the kind of blatantly false and damaging attacks that we see here from defendant Cox. If this Court grants summary judgment in Cox's favor, it will effectively hold that the defamation laws can never apply to Internet bloggers such as defendant Cox. Indeed, what more could Cox

---

[1]  As the Court is aware, Defendant offered no admissible evidence to support the truth of her statements in response to a *prima facie* showing by Padrick and Obsidian that the statements were false. The statements should therefore be considered false as a matter of law.

[2]  *See* Declaration of Kevin D. Padrick in Opposition to *Sua Sponte* Motion for Summary Judgment ("Padrick Decl."), ¶¶ 7-14; Declaration of David W. Brown in Opposition to *Sua Sponte* Motion for Summary Judgment ("Brown Decl."), ¶¶ 2-9. Indeed, when asked to provide a declaration recounting his concerns, at least one business partner decided not to for fear that defendant Cox would falsely ruin his company's reputation with unfounded accusations just as they have ruined Padrick's and Obsidian's reputations. (Brown Decl. ¶ 5; Padrick Decl. ¶ 9).

say to damage Padrick's and Obsidian's reputations? She has deliberately stated over and over again—not as opinion, but as "truth"—that they are criminals who have engaged in specific criminal acts and civil misconduct in the normal course of their business. By posting these accusations on the Internet, she has made them available to millions of users daily, creating a virtually permanent record of the accusations that will follow Padrick and Obsidian indefinitely.

Ms. Cox's motivation here is not public service—it is private gain. When Padrick and Obsidian demanded that defendant Cox stop making these false and defamatory statements, her response was to demand money from them to "repair" the damage she herself had done by creating dozens of websites to spread her lies about them.

Defendant's predatory conduct is not protected by the First Amendment. The First Amendment does not give defendant an unfettered license to falsely accuse Padrick and Obsidian of criminal acts and severely damage their reputations for her personal monetary gain. The United States Supreme Court had made clear that these kinds of false accusations of criminal conduct are not constitutionally protected as "opinion", as has the Ninth Circuit. If this Court allows defendant Cox to blatantly and falsely defame Padrick and Obsidian to potentially millions of Internet users, it will do so in direct conflict with established and controlling precedent.

For all of these reasons, Defendant Cox is not entitled to summary judgment in her favor.

II. **DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT BASED ON THE FIRST AMENDMENT**

    A. **There is No Constitutional "Opinion" Privilege—Provably False Assertions of Fact are Not Protected by the First Amendment**

The starting point for assessing defendant's statements under the First Amendment is the Supreme Court's decision in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695 (1990). The plaintiff in *Milkovich* was a high school wrestling coach whose team had

been involved in an altercation with another team. The state's high school athletic association conducted an investigation and placed the team on probation. Several parents sued in court to overturn the probation and ultimately prevailed in doing so. During the court proceedings the plaintiff coach had testified under oath about the altercation. 497 U.S. at 4.

Following the state court's ruling, the defendant, a reporter for a local newspaper, wrote an article about the proceedings entitled "Maple beat the law with 'the big lie'." A primary theme of the column, as suggested in the title, was that the plaintiff coach had perjured himself in order to secure a favorable decision from the state court. *Id.* at 4-5.

The Supreme Court held that the defendant's defamatory statements in the column were not protected by the First Amendment. First, the Court held that the First Amendment did not provide a separate constitutional privilege for "opinion" statements. As long as the statements were provable as true or false based on objective evidence they were not protected by the First Amendment, even if they were presented in the form of an opinion. The Court made clear that merely saying "I think" or "In my opinion" before calling someone a liar does not dispel the implication that the speaker has facts on which to base the opinion. As a result, such statements are not protected under the First Amendment simply because they are couched as opinions. *Id.* at 19-21.

In reaching its decision that there is no constitutional "opinion" privilege the Court recognized that while First Amendment protections are important, so too are the core principles behind the concept of defamation. As the Court explained:

> The numerous decisions discussed above establishing First Amendment protection for defendants in defamation actions surely demonstrate the Court's recognition of the Amendment's vital guarantee of free and uninhibited discussion of public issues. But there is also another side to the equation; we have regularly acknowledged the "important social values which underlie the law of defamation," and recognized that "[s]ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation."

PAGE 4 – MEMORANDUM IN OPPOSITION TO *SUA SPONTE* MOTION FOR
                SUMMARY JUDGMENT

*Id.* at 20-21 *(quoting Rosenblatt v. Baer,* 383 U.S. 75, 86, 86 S.Ct. 669, 676, 15 L.Ed.2d 597 (1966)).

Second, after recognizing that there was no constitutional privilege for opinions, the Court held that a reasonable fact-finder could conclude that the statements made in the column implied that the plaintiff had in fact committed perjury. The Court noted that the column did not use loose or figurative language that would negate the impression that defendant was seriously maintaining that the plaintiff coach perjured himself. Nor did the general tenor of the work negate that impression—to the contrary, the primary theme of the column was that plaintiff had lied during the state court proceeding. *Id.* at 21.

Finally, the Court found that the charge of perjury was sufficiently factual to be susceptible to being proven as true or false. That was because it could be determined by reference to objective evidence. As a result, the Court held that the First Amendment did not prevent the plaintiff coach from pursuing his defamation claim against the reporter. *Id.* at 21-22.

### B. <u>Defendant's False and Defamatory Statements are Not Protected by the First Amendment</u>

After *Milkovich*, the threshold question in a defamation suit is whether a reasonable fact-finder could conclude that the defendant's statement implies an assertion of objective fact. *Milkovich*, 497 U.S. at 20; *Unelko Corp. v. Rooney,* 912 F.2d 1049, 1053 (9th Cir. 1990). To determine whether a statement implies an assertion of objective fact, the Ninth Circuit has set out a three-part test: (1) whether the general tenor of the entire work negates the impression that the defendant made the statement as an assertion of objective fact; (2) whether the defendant used loose, figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false. *Partington v. Bugliosi,* 56 F.3d 1147, 1155-1159 (9th Cir.1995).

As other courts have recognized, where there is a disagreement over what inferences a reasonable fact-finder might draw from the facts (even if the facts themselves are undisputed), then the issue of whether the statements are defamatory must be submitted to the jury. *See Point Ruston, LLC v. Pacific Northwest Regional Church of the United Brotherhood of Carpenters and Joiners of Amer.*, 2010 WL 3732984, at *8 (W.D. Wash.). In this case, a reasonable fact-finder could easily conclude that defendant Cox's statements about Padrick and Obsidian—charging them with serious civil and criminal misconduct, as in *Milkovich*—were false and defamatory under the standards adopted by the United States Supreme Court and the Ninth Circuit.

### 1. The General Tenor of the Websites Support the Impression that Defendant Cox Was Asserting that Padrick and Obsidian Engaged in the Wrongful Conduct

The general tenor of defendant's websites does not negate the impression that she was asserting the claims of serious civil and criminal misconduct as objective facts. To the contrary, the tenor and context of the websites directly <u>support</u> that impression.[3]

Throughout her websites, defendant Cox attempts to persuade the reader that she is an investigative blogger who is pursuing the "truth" about Mr. Padrick and Obsidian and presumably uncovering and exposing information about them that has not yet come to light. (Padrick Decl., Ex. 1).[4] This stated purpose appears at the very top of her web page and in numerous other places throughout her websites. She does not purport to express only her personal or subjective views, but instead to expose actual corrupt and criminal conduct—

---

[3] Even where the general tenor of the work suggests the author is expressing her personal opinions, particular statements within the work may still imply a false assertion of objective fact. *See Partington*, 56 F.3d at 1155; *see also Chapman v. Journal Concepts, Inc.*, 2008 WL 5381353, *9.

[4] We note for the Court that Exhibit 1 to Mr. Padrick's declaration includes the web pages filed in connection with Mr. Padrick's Declaration in Support of Plaintiffs' Motion for Partial Summary Judgment (Docket No. 11, Ex. 1) as well as additional web pages from her websites.

PAGE 6 – MEMORANDUM IN OPPOSITION TO *SUA SPONTE* MOTION FOR SUMMARY JUDGMENT

including such conduct (she states) involving Padrick and Obsidian. She does not present her blog postings in an overall humorous tone or as parody. Instead, the primary theme of her websites as a whole—like the reporter's column in *Milkovich*—is to steadfastly accuse Padrick and Obsidian of engaging in illegal and corrupt behavior.

Not only that, throughout her websites defendant Cox repeatedly disabuses the reader of the notion that her statements are merely her own opinions as opposed to objective facts. She repeatedly reminds the reader that the statements she makes are the "truth." (*See, e.g.,* Padrick Decl., Ex. 1 at 1, 2, 4 and 14). She reinforces that fact by assuring the reader that she has proof to support her claims which she will present in later postings. (*Id.,* Ex. 1 at 1, 12 and 17). By doing so, a reader could reasonably conclude that she has objective evidence to support her charges. In fact, that is exactly what readers have concluded. (Padrick Decl., ¶¶ 7-14; Brown Decl. ¶¶ 3-9). She even suggests that the fact that Padrick failed to send her a "cease and desist" or take other action against her confirms that her statements about his conduct must be true—otherwise, he would have tried to stop her. (*Id.,* Ex. 1 at 4).

The fact that Cox exhibited some measure of bias or that her statements were arguably part of a debate[5] do not insulate her from liability under the First Amendment. A good example is the Ninth Circuit's decision in *Manufactured Home Communities Inc. v. County of San Diego*, 544 F.3d 959 (9th Cir. 2008). There, the plaintiff was a mobile home park operator who had raised rents in three of its parks. The tenants, primarily elderly, contacted the county supervisor to complain. The county supervisor publicly stated, among other things, that the plaintiff was preying on the elderly and that it had lied to the county. The plaintiff sued the county supervisor. On appeal, the Ninth Circuit held that a jury could reasonably conclude that

---

[5] Defendant Cox was not involved in a "debate" with anyone when she made the false and defamatory statements. There is no evidence that plaintiffs ever contacted her—in fact, she stated on her website that the statements she makes must be true because the plaintiffs never contacted her to dispute them. (Padrick Decl., Ex. 1 at 4). Instead, defendant Cox claims she was investigating and providing the truth, not debating.

PAGE 7 – MEMORANDUM IN OPPOSITION TO *SUA SPONTE* MOTION FOR
               SUMMARY JUDGMENT

the statements—particularly that the plaintiff lied to the County—were defamatory. 544 F.3d at 964-65.

No doubt, the county supervisor was involved in debate with the plaintiff about its mobile home park operations and the supervisor could be considered by a reader to be biased against the plaintiff—even more so than defendant Cox could be considered involved in a "debate" or biased here. But as the Ninth Circuit recognized in *Manufactured Homes*, a defendant is not free to make false and defamatory charges against another party simply because they disagree on a "heated" issue. 544 F.3d at 962 (holding that jury could find that statements were actionable as provably false assertions of fact although they were uttered in the "heat of political battle"). Instead, the defendant is still accountable for any false and defamatory statements he or she makes that are provably false assertions of fact.

 2. **Defendant Cox Did Not Use Hyberbole or Figurative Language When Making the Defamatory Statements**

The Ninth Circuit has held that the use of hyberbole, figurative language or imaginative expression may in some instances negate the impression that the defendant was asserting an objective fact in making an otherwise defamatory statement. *Partington,* 56 F.3d at 1545; *see Gardner v. Martino,* 563 F.3d 981 (9th Cir. 2009) (hyberbolic statements by radio talk show host in response to caller were not actionable).

We do not dispute that there are instances in defendant's blogs where she uses hyberbole or figurative language. Plaintiffs have not brought a defamation claim for those statements. Instead, plaintiffs are pursuing their defamation claims for the direct factual assertions of serious civil and criminal misconduct, statements which a reasonable juror could find were meant to convey objective facts. Those statements include charges of serious civil and criminal violations, including that Padrick and Obsidian engaged in illegal and criminal conduct, "broke many laws", committed "Fraud, Deceit on the Government, Illegal Activity, Money

PAGE 8 –  MEMORANDUM IN OPPOSITION TO *SUA SPONTE* MOTION FOR SUMMARY JUDGMENT

Laundering, Defamation, Harassment," committed "tax fraud" and committed "solar tax credit" fraud and crimes. (*See, e.g.,* Padrick Decl., Ex. 1 at 1, 2, 4, 5, 12 14 and 15). There is nothing figurative or hyperbolic in those statements. They are presented in a direct and serious manner, in an attempt to convince the reader that Padrick and Obsidian in fact committed such criminal acts.

        An instructive case is *Chapman v. Journal Concepts, Inc.*, 2008 WL 5381353 (D. Hawaii). There, the defendant was a surfer who wrote an article in a surfing magazine about purchasing a surfboard from the plaintiff. The Court found that many of the comments in the article were the personal views of the author and filled with hyperbole and figurative language. Nevertheless, the court found that several statements in the article—such as the claim that plaintiff was sober one year out of the last forty and a negative description of plaintiff's conduct while surfing—could be false and defamatory under the First Amendment. *Chapman*, at *12-13; *see also Fodor v. Doe*, 2011 WL 1629572, at *4-5 (D. Nev.) (defamatory blog postings accusing plaintiffs of involvement in a criminal enterprise were not protected by First Amendment because statements were not "sardonic" and reasonable reader could take the statements seriously). The fact that some of the statements used hyberbole did not insulate the plaintiff from liability for those statements that were provably false assertions of fact.

        Similarly here, while some of defendant Cox's statements may be hyberbole, the specific false and defamatory statements at issue are not. They are direct charges of serious criminal and civil misconduct involving plaintiffs' actions in their professional capacity. A reasonable reader could, and likely would, believe that the defendant was actually accusing Padrick and Obsidian of engaging in criminal behavior in conducting their business. Cox's direct charges of criminal conduct—like the perjury charge in *Milkovich*—are very different from statements in other cases where the courts have found that the use of hyberbole or figurative language gave the defendant protection under the First Amendment. *See Gardner v. Martino*, 563 F.3d 981, 989-90 (distinguishing *Milkovich* and *Manufactured Home* because the direct

PAGE 9 –  MEMORANDUM IN OPPOSITION TO *SUA SPONTE* MOTION FOR
               SUMMARY JUDGMENT

statements at issue in *Gardner* did "not rise to the level of criminal accusations that were at issue in those cases[.]"); *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 273, 94 S.Ct. 2770 (1974) (union newsletter accusing plaintiffs who worked during a strike of being "traitors" was made in loose, figurative sense; no reasonable reader would believe that the union was accusing plaintiffs of the criminal act of treason); *Kneivel v. ESPN*, 393 F.3d 1068, 1073-75 (9th Cir. 2005) (use of term "pimp" in magazine article not defamatory since it was obviously being used as a form of slang and no reasonable juror would conclude that the author was factually charging Kneivel with trafficking prostitutes).

### 3. Defendant's Defamatory Statements are Susceptible of Being Proved True or False Based on Objective Evidence

All of defendant Cox's defamatory statements that are the subject of plaintiffs' claim are factual assertions that are susceptible of being proved true or false. *Partington*, 56 F3d at 1155. Defendant repeatedly claims that Padrick and Obsidian engaged in various illegal and criminal conduct in the context of Padrick's work as a bankruptcy trustee and in other ventures. The criminal conduct includes specific charges of money laundering, tax fraud, solar tax credit crimes and other serious misconduct.

Each of defendant Cox's statements clearly implies that Padrick and Obsidian committed these acts—in other words, the statements imply facts that are provable as true or false. As with the perjury charge in *Milkovich*, whether the statements about Padrick's and Obsidian's misconduct are true or false can be determined by reference to *objective* evidence. Plaintiff could have (in response to plaintiffs' motion for summary judgment) presented objective evidence to prove her statements that Padrick and Obsidian committed such acts. But she failed to do so—because no such objective evidence exists. *See also Manufactured Home*, 544 F.3d at 962-63 (statement that plaintiff lied to county in connection with rent charged to elderly tenants was defamatory since it was susceptible of being proved true or false).

Accordingly, the First Amendment does not protect defendant Cox from liability for her defamatory statements.

### 4. Internet Blogs Are Not Entitled to Special Protection Under the First Amendment

The Supreme Court and the Ninth Circuit have not created any special or additional First Amendment protections for statements made on the Internet, whether on blogs or otherwise. Indeed, the Ninth Circuit has applied the same First Amendment standards to the Internet as it has to other mediums of communication. *See, e.g., Kneivel*, 393 F.3d at 1073-75 (9th Cir. 2005) (applying traditional First Amendment analysis to defamation claim for statements made on website). As a result, the standards announced in *Milkovich* and subsequent Ninth Circuit cases apply to defendant's statements as if they were made on a leaflet she distributed in downtown Portland or in the newspaper.

There is good reason for applying the same First Amendment principles to the Internet as to other mediums. The Internet allows a defaming party such as defendant Cox to broadcast damaging statements worldwide with little effort and in a virtually permanent medium that can be easily accessed at any time—meaning that defamatory statements on the Internet have the potential to cause even more harm, not less, than those published in traditional mediums such as a newspaper. As one Court explained in rejecting the argument that the Internet is a special forum that should enjoy greater First Amendment protection than other mediums:

> The court also rejects the Anonymous Blogger's argument that this court should find as a matter of law that Internet blogs serve as a modern day forum for conveying personal opinions, including invective and ranting, and that the statements in this action when considered in that context, cannot be reasonably understood as factual assertions. To the contrary, "In that the Internet provides a virtually unlimited, inexpensive, and almost immediate means of communications with tens, if not hundreds, of millions of people, the dangers of its misuse cannot be ignored."

*Cohen v. Google, Inc.*, 887 N.Y.S.2d 424, 428 (N.Y. Sup. Ct. 2009); *see also Fodor, supra*, at * 4 (noting the defamatory Internet posting was available to potentially billions of users daily and was on the first page of an Internet search using the Google search engine).

In this case, it is undisputed that (a) the defamatory statements were available to millions of users daily, (b) the defamatory websites showed up on the very first page of an Internet search for "Obsidian Finance Group" or "Kevin Padrick", and (c) the defamatory statements have damaged and continue to damage Padrick's and Obsidian's reputations—including many instances in which actual and potential business partners read the defamatory statements and took them seriously enough that it impacted their decision-making as to whether to do business with Padrick and Obsidian. (Padrick Decl., ¶¶ 7-14; Brown Decl., ¶¶ 3-9).

This case demonstrates precisely why the standards for applying the First Amendment should not be relaxed in the context of the Internet, given the serious damages caused to Padrick's and Obsidian's reputations. It was precisely this type of harm that caused the Supreme Court in *Milkovich* to reject a separate opinion privilege and hold that provably false assertions of fact (even when couched in opinion) are not protected by the First Amendment.

Moreover, there is good reason to question the apparent assumption that readers generally do not believe what they read on the Internet or take it seriously. To the contrary, some recent studies suggest that as Internet usage increases (as it has), some readers have begun to believe the Internet is more credible than or as credible as traditional mediums. *See* Declaration of David S. Aman in Opposition to *Sua Sponte* Motion for Summary Judgment, Exs. 1 and 2; *see also* Anthony Ciolli, *Chilling Effects: The Communications Decency Act and the Online Marketplace of Ideas*, 63 U. Miami L. Rev. 137, 256-58 (2008) (discussing the "myth" of the Internet as a "low authority" medium). The direct evidence in this case further undermines the assumption that no one takes the Internet seriously, since actual and potential business partners and clients took the statements seriously enough to question Padrick and Obsidian about the criminal and civil charges that defendant Cox made about them.

PAGE 12 –   MEMORANDUM IN OPPOSITION TO *SUA SPONTE* MOTION FOR
SUMMARY JUDGMENT

### III.  CONCLUSION

Defendant Cox has falsely stated to potentially millions of Internet users that Padrick and Obsidian have engaged in criminal and civil misconduct. In doing so, she has seriously damaged their reputations. Nothing in the First Amendment protects her from the consequences of her actions. As set forth in our prior motion for summary judgment, defendant Cox's statements are false and defamatory assertions of fact as a matter of law. But at a minimum, a reasonable juror could and we believe would find that the statements are assertions of fact—and thus not protected by the First Amendment. The Court should therefore deny the pending *sua sponte* motion for summary judgment.

DATED this 22nd day of July 2011.

                TONKON TORP LLP

                By */s/ David S. Aman*
                    Steven M. Wilker, OSB No. 911882
                      Direct Dial:  503.802.2040
                      Fax:  503.972.3740
                      E-Mail:  steven.wilker@tonkon.com
                  David S. Aman, OSB No. 962106
                      Direct Dial:  503.802.2053
                      Fax:  503.972.3753
                      E-Mail:  david.aman@tonkon.com

                Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **MEMORANDUM IN OPPOSITION TO *SUA SPONTE* MOTION FOR SUMMARY JUDGMENT** on:

>Crystal L. Cox
>PO Box 505
>Eureka, Montana 59917
>Crystal @CrystalCox.com

☑ by mailing a copy thereof in a sealed, first-class postage prepaid envelope, addressed to said party's last-known address and depositing in the U.S. mail at Portland, Oregon on the date set forth below.

DATED this 12th day of May 2011

TONKON TORP LLP

By /s/ David S. Aman
David S. Aman, OSB No. 962106
Direct Dial: 503.802.2053
Fax: 503.972.3753
E-Mail: david.aman@tonkon.com
Attorneys for Plaintiffs

033992/00010/3000436v1

PAGE 1 - CERTIFICATE OF SERVICE