IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

OBSIDIAN FINANCE GROUP, LLC, and
KEVIN D. PADRICK,                                No. 3:11-CV-00057-HZ

                    Plaintiffs,

          v.                                     SUPPLEMENTAL OPINION
                                                 & ORDER

CRYSTAL COX,

                    Defendant.

Steven M. Wilker
David S. Aman
TONKON TORP LLP
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, Oregon 97204

          Attorneys for Plaintiffs


/ / /

/ / /


1 - SUPPLEMENTAL OPINION & ORDER

Crystal L. Cox
P.O. Box 1610
Eureka, Montana 59917

   Defendant Pro Se

HERNANDEZ, District Judge:

   Plaintiffs Obsidian Finance Group, LLC and Kevin Padrick bring this defamation action

against defendant Crystal Cox.  In a July 7, 2011 Opinion & Order, I denied plaintiffs' motion for

partial summary judgment on the issue of liability after determining that the challenged

statements were protected by the First Amendment.

   Defendant did not cross-move for summary judgment.  However, given my conclusion, I

gave notice in the July 7, 2011 Opinion that I intended to grant summary judgment for defendant

"independent of the motion."  See Fed. R. Civ. P. 56(f).  I gave plaintiffs the opportunity to file

an opposition to such action.  On July 22, 2011, plaintiffs filed a memorandum in opposition to a

grant of summary judgment in favor of defendant.  Although defendant was given the

opportunity to reply to plaintiffs' opposition, she has not done so.

   Plaintiffs seek reconsideration of my conclusion that the First Amendment precludes

liability for the statements made by defendant.  In support, plaintiffs cite relevant legal authority

for the first time.  Plaintiffs re-submit the blog posts filed with their original summary judgment

motion.  They also submit additional blog posts that were not included with their previous

motion.  To the extent plaintiffs' July 22, 2011 Opposition Memorandum addresses newly-

submitted blog posts, I construe it as a supplemental motion for summary judgment.

   The July 7, 2011 Opinion contains the background of the dispute and quotes all of the

previously-submitted blog posts.  I do not repeat that information here.  As to my legal

2 - SUPPLEMENTAL OPINION & ORDER

conclusion, I held that under the relevant three-part test used by the Ninth Circuit to determine if speech is constitutionally protected by the First Amendment as "opinion," meaning that a reasonable factfinder could not conclude that the challenged statements implied a provably false assertion, the statements were protected. July 7, 2011 Op. at pp. 11-14. I noted the obviously critical blog title on which they appeared, the creation of a forum for "heated debate," the extensive use of hyperbolic and figurative language, and the posing of several questions rather than statements, as evidence that when the totality of circumstances were considered, the statements were not actionable assertions of fact. Id. I further noted that while there were some statements that could be reasonably interpreted as implying a provable factual assertion if considered in isolation, they could not be so reasonably interpreted when they were considered in context. Id. at pp. 12-13.

Plaintiffs argue that the general tenor of the websites supports, rather than negates, the impression that defendant was asserting claims of serious civil and criminal misconduct as objective facts, that defendant did not use hyperbole or figurative language when making the defamatory statements, and that defendant's statements are susceptible of being proved true or false based on objective evidence. I have reviewed all of the blog posts plaintiffs submitted in support of their original summary judgment motion in light of the arguments they make in their July 22, 2011 Opposition Memorandum. However, I adhere to my original conclusion regarding those posts and thus, for the reasons explained in the July 7, 2011 Opinion, I grant summary judgment to defendant on the issue of liability for statements made in the blog posts plaintiffs submitted with their original motion.

With one exception discussed below, I also reach the same conclusion regarding the new

3 - SUPPLEMENTAL OPINION & ORDER

posts plaintiffs submitted for the first time with their July 22, 2011 Opposition Memorandum.

As I explained in the July 7, 2011 Opinion, in assessing whether a statement is actionable as an assertion of fact or is protected by the First Amendment as "opinion," the Ninth Circuit has held that after Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990), where the Supreme Court rejected a bright-line categorical First Amendment protection for "opinions," the "threshold question" in a defamation claim is "whether a reasonable factfinder could conclude that the contested statement implies an assertion of objective fact." Gardner v. Martino, 563 F.3d 981, 987  (9th Cir. 2009) (internal quotation omitted).  The Ninth Circuit uses a three-part test to determine whether a statement contains or implies a provable factual assertion.  Underwager v. Channel 9 Austl., 69 F.3d 361, 366 (9th Cir. 1995).  Whether a statement is a statement of opinion or one of fact is a question of law.  Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1193 (9th Cir. 1989); Slover v. Or. St. Bd. of Clinical Social Workers, 144 Or. App. 565, 568, 927 P.2d 1098, 1100 (1996).

The test assesses  (1) whether in the broad context, the general tenor of the entire work, including the subject of the statements, the setting, and the format, negates the impression that the defendant was asserting an objective fact; (2) whether the context and content of the specific statements, including the use of figurative and hyperbolic language, and the reasonable expectations of the audience, negate that impression; and (3) whether the statement is sufficiently factual to be susceptible of being proved true or false.  Gardner, 563 F.3d at 987; Underwager, 69 F.3d at 366.

While the inquiry in any given case is fact-specific, certain themes are discernable and worth noting here.  First, statements made as part of an acknowledged heated debate often negate

4 - SUPPLEMENTAL OPINION & ORDER

the impression that the defendant was asserting an objective fact.  E.g., Gardner, 563 F.3d at 988 (radio talk show program that included drama, hyperbolic language, opinionated and arrogant host, and heated controversy reduced audience's expectation of learning an objective fact); Underwager, 69 F.3d at 366-67 (fact that statements were made at workshop which included speakers on opposite sides of the "heated debate" over child witness reliability, relevant to analysis); Info. Control Corp. v. Genesis One Computer Corp., 611 F.2d 781, 784 (9th Cir. 1980) (in context of legal dispute, "the audience may anticipate efforts by the parties to persuade others to their position by use of epithets, fiery rhetoric or hyperbole, [and thus] language which generally might be considered as statements of fact may well assume the character of statements of opinion") (internal quotations omitted); Art of Living Found. v. Does 1-10, No. 10-CV-05022-LHK, 2011 WL 2441898, at *7  (N.D. Cal. June 15, 2011) (readers less likely to view statements made on blogs with "heated discussion and criticism,"as assertions of fact); Nicosia v. De Rooy, 72 F. Supp. 2d 1093, 1101  (N.D. Cal. 1999) (readers less likely to view statements made as part of heated debate concerning a "bitter legal dispute" as assertions of fact).

Second, while generally, "online speech stands on the same footing as other speech," In re Anonymous Online Speakers, No. 09-71265, 2011 WL 61635, at *2 (9th Cir. Jan. 7, 2011), blogs[1] are a subspecies of online speech which inherently suggest that statements made there are not likely provable assertions of fact.  E.g., Art of Living Found., 2011 WL 2441898, at *7 (statements made on obviously critical blog with "heated" discussion and criticism less likely to

---

[1]  As explained by one court, an online blog is a "frequently updated website consisting of personal observations, excerpts from other sources, or, more generally, an online journal or diary."  Quixtar, Inc. v. Signature Mgmt. Team, LLC, 566 F. Supp. 2d 1205, 1212 (D. Nev. 2008).  Thus, a blog is distinct from other online speech affiliated with, for example, a major media publication.

be viewed as assertions of fact); Nicosia, 72 F. Supp. 2d at 1101 (statements made on personal

website and through online discussion group less likely to be seen as assertions of fact); see also

Too Much Media, LLC v. Hale, 206 N.J. 209, 234-35, 20 A.3d 364, 378-79 (2011) (noting that

"online message boards provide virtual, public forums for people to communicate with each

other about topics of interest" and "promote a looser, more relaxed communication style")

(internal quotation and brackets omitted); Sandals Resorts Int'l, Ltd v. Google, Inc., 925 N.Y.S.

2d 407, 415-16, 86 A.D. 3d 32, 43-44 (N.Y. App. Div. 2011) (noting that the "low barrier to

speaking online allows anyone with an Internet connection to publish his thoughts, free from the

editorial constraints that serve as gatekeepers for most traditional media of disseminating

information [] [o]ften result[ing] in speech characterized by grammatical and spelling errors, the

use of slang, and, in many instances, an overall lack of coherence"; observing that readers give

less deference to allegedly defamatory remarks published on online message boards, chat rooms,

and blogs, than to similar remarks made in other contexts) (internal quotation omitted).

Third, courts have frequently found certain terms suggestive of name calling,

exaggeration, ridicule, imaginative expression, or subjective evaluation, and not assertions or

implications of provable facts.  E.g., Old Dominion Branch No. 496, Nat'l Ass'n of Letter

Carriers v. Austin, 418 U.S. 264, 284-85 (1974) (statement calling plaintiffs "traitors" not

libelous when context showed used figuratively); Greenbelt Coop. Publ'g Ass'n v. Bresler, 398

U.S. 6, 14 (1970) (word "blackmail" no more than "rhetorical hyperbole"); Lieberman v. Fieger,

338 F.3d 1076, 1080 (9th Cir. 2003) (comments that individual was "Looney Tunes," "crazy,"

"nuts," and "mentally imbalanced," did not contain verifiable assertions, and thus could not serve

as basis for defamation claim); Beverly Hills Foodland, Inc. v. United Food & Commercial

6 - SUPPLEMENTAL OPINION & ORDER

Workers Union, 39 F.3d 191, 196 (8th Cir. 1994) ("'Unfair' is a term requiring a subjective

determination and is therefore incapable of factual proof"); Phantom Touring, Inc. v. Affiliated

Publ'ns., 953 F.2d 724, 728 (1st Cir. 1992) (statements asserting production was "fake" and

"phony" unprovable); Miracle v. New Yorker Magazine, 190 F. Supp. 2d 1192, 1200 (D. Haw.

2001) (asserting the plaintiff was "nuts" not actionable); Nicosia, 72 F. Supp. 2d at 1104

(statements that the plaintiff was a "self-serving fraud," a "criminal" and acted "illegally"

understood to be only loose, hyperbolic expression in light of the many surrounding criticisms).

Even the term liar or lying has been found to be figurative, not literal. E.g., Underwager,

69 F.3d at 367 ("the term 'lying' applies to a spectrum of untruths including 'white lies', 'partial

truths', 'misinterpretation', and 'deception'[] [and a]s a result, the statement is no more than

nonactionable rhetorical hyperbole, a vigorous epithet used by those who considered the

appellant's position extremely unreasonable") (internal quotations and brackets omitted); see also

Gardner, 563 F.3d at 989 ("lying" statements not sufficiently factual to imply a false factual

assertion in light of surrounding statements such as "Polaris sucks" which the court described as

"loose, hyperbolic statements . . . which were an obvious exaggeration").

Finally, while the use of a question mark "does not automatically insulate [the defendant]

from liability for defamation," Point Ruston, LLC v. Pacific N.W. Reg'l Council of the United

Bhd of Carpenters & Joiners of Am., No. C09-5232BHS, 2010 WL 3732984, at *8 (W.D. Wa.

Sept. 13, 2010), it is a "rhetorical device" which can "serve[] two purpose[s]":  (1) making clear

the author's lack of definitive knowledge about an issue; and (2) inviting the reader to consider

the possibility of other justifications for the defendant's actions, thereby negating the impression

that the statement implies a false assertion of fact.  Partington, 56 F.3d at 1157; see also Volm v.

7 - SUPPLEMENTAL OPINION & ORDER

Legacy Health Sys., 237 F. Supp. 2d 1166, 1178 (D. Or. 2002) (statement in the form of a

question was a rhetorical question not capable of being proved true or false). If, however, the

question can be reasonably read as an assertion of a false fact, it may be actionable. Id.

In their July 22, 2011 Opposition Memorandum plaintiffs submit sixteen previously

unsubmitted blog entries. Ex. 1 to July 22, 2011 Padrick Decl. at pp. 15-41. For the reasons

discussed below, the following of these entries are not actionable:

Tuesday, December 21, 2010

**So What Was The Hundred Million Dollar Secret that I Claimed Bankruptcy
Whistleblower Stephanie DeYoung Knew?**

I wrote on my Blog about a **"Hundred Million Dollar Secret"** that I Claimed
Bankruptcy Whistleblower Stephanie DeYoung Knew.

So what Was this **"Hundred Million Dollar Secret"**, maybe it was he [sic] Secret
that Kevin Padrick **Obsidian Finance** had covered up information worth a
Hundred Million Dollars, or he had to Shut Up Bankruptcy Whistleblower
Stephanie DeYoung On.

How about secrets on the Aloha Lumber Corporation Bankruptcy and other "foul
play" - or maybe Stephanie Deyoung knew where Kevin Padrick hid assets that he
stole during years of foul play.. the **"Hundred Million Dollar Secret" that I
claimed Stephanie DeYoung knew, well that was my words.. and I was never
asked what I meant.**.

**See** Kevin Padrick Obsidian Finance **has been gunning for** Bankruptcy
Whistleblower Stephanie Deyoung from the start as **she knew to** [sic] **much**, she
knew about ever [sic] bit of the accounting, the LLC's and well just everything
and pretty much off the top of her head as you see in her depositions.. a brilliant
woman with all the Knowledge that Oregon Attorney Kevin Padrick **did not want
anyone to know...**

So Bankruptcy Whistleblower Stephanie Deyoung set her up on charges over
video taping a public meeting (See the Video Proves Illegal Activity so Kevin
Padrick did not want the Creditors seeing it, understanding it..) anyway.. Kevin
Padrick worked with the Bend DA to set up Bankruptcy Whistleblower Stephanie
Deyoung and to keep her under constant duress so she would stop Yapping all

8 - SUPPLEMENTAL OPINION & ORDER

those Amazing, True, and so very accurate FACTS about how bad a job that Kevin Padrick of **Obsidian Finance LLC was doing as the Chapter 11 Trustee for the Summit Bankruptcy, AFTER he had meetings with the Summit Principals to help them keep things going ...**

Corrupt Oregon Attorney Kevin Padrick of Obsidian Finance actually said he would bring in investors to help keep summit afloat during the restructuring.. **Flat Out Lies**... as Once Kevin Padrick of Obsidian Finance LLP got the inside scoop on the finances and secrets of the Summit Principals well then **Kevin Padrick of Obsidian Finance** jumped the fence with the information and STOLE the Job as the Chapter 11 Trustee.. using this information and made millions.. - Talk about Corrupt, Immoral .. and Well Just Really  .. Really Bad.

more Coming soon on the "**Hundred Million Dollar Secret**" - possibly it was a Fudge Recipe now that I think of it. who will be deposed next to figure out what goes on in my mind?

**note to post, Dec. 22nd**
NOW that Jackass David Aman has Sent me a Cease and Desist..
after 15 Months..

So Based on this Accusation by Me about **a "Hundred Million Dollar Secret"** these Thugs take some sort of action against Stephanie DeYoung and never Ever bother to ask me what I meant, they assume what I meant and attack.. her and they take my word as FACT.. but when I talk of Kevin Padrick well that is Defamation?  Talk about Shocking, Double Standards...

Tonkon Torp, David Aman the Attorney for Kevin Padrick, Obsidian Finance LLC Sent a Cease and Desist.. so Time to Prove Every Criminal Act they both have done over the last 2 years involving the Summit 1031 Bankruptcy.. every dirty deal..

<u>Id.</u> at p. 15

Wednesday, December 22, 2010

**Why Investigative Blogger Crystal L. Cox Says Kevin Padrick, Obsidian Finance LLC May have Hired a Hitman.**

**"Did Oregon Attorney Kevin Padrick hire a hitman to kill me?"**
**this is one of the Points that Pompous Ass Oregon Attorney David Aman want** [sic] **me to remove from my Blog... So Why Did I Post it..??**

9 - SUPPLEMENTAL OPINION & ORDER

Kevin Padrick has harassed Stephanie Deyoung to the point of ruining her reputation and quality of life.. Kevin Padrick has been in contact with a man in Montana who I Believe threatened to Kill me.. I got another Death Threat a couple weeks back and I posted the possible aggressors for my own safety and to leave a record should this person follow thru on killing me.. I would not put it past Kevin Padrick of Obsidian Finance LLC... for in My Opinion... Kevin has been involved in Fishy Circumstances before and I do feel I am in danger.. so I posted it..

Many have told me that in their Opinion Kevin Padrick Obsidian Finance LLP is not above Killing Someone to Shut them up.. just what I heard and I want to be prepared.. Whether I do or Not.. the TRUTH will Prevail..

Id. at p. 16

Wednesday, December 22, 2010

**Why Investigative Blogger Crystal L. Cox Says Kevin Padrick, Obsidian Finance LLC is a Corrupt Thug, a Thief, and a Dirty Lawyer..**

Why Investigative Blogger Crystal L. Cox Says...

"Kevin Padrick of Obsidian Finance LLC is a Criminal, he has broken many laws in the last 2 years to do with the Summit 1031 case and regardless of the guilt of the Summit 1031 principals, Kevin Padrick is a THUG and a Thief hiding behind the Skirt tails of a corrupt un-monitored bankruptcy court system and protected by Corrupt Bend DA and Corrupt Bend Oregon Judges.  And I will Expose every detail of every law he broke, every secret hand shake and back alley deal.. every solar credit fraud.. every sale to a friend or cronie of real estate consumer money and every indiscretion[.]"

Coming Soon in great detail and daily for the next.. well.. FOREVER..

Id. at p. 17.

Wednesday, December 22, 2010

**Todays** [sic] **Stats So far.. Obsidian and Montana Stalker..**

Remember when Kevin Padrick was in Contact with my Montana Death Threat Stalker.. Well today they are on the Site at the Same time .. again, they exchanged emails quiet [sic] a few months back.. maybe Tonkon Torp should look into all that, as to WHY I say that Kevin Padrick may have threatened my Life..

10 - SUPPLEMENTAL OPINION & ORDER

Still No One Looks into My Death Threat from Aug. of 2009 and this man is Still after me.. still stalking me daily, every thing I do there he is and Paid for By the University of Montana.

Id. at p. 18.

Wednesday, December 22, 2010

**David Aman - Tonkon Torp is the Attorney for the Corrupt Oregon Attorney Kevin Padrick**

got a Tip on Oregon Attorney David Aman - Tonkon Torp LLP - Portland Oregon?

...Stay Tuned to My Whistleblower Media Network for TONS on Tonkon Torp LLP, David Aman, Kevin Padrick - Obsidian Finance LLC and Bankruptcies and A years [sic] worth of tips I have not had time for...

**David Aman - Tonkon Torp** will be accountable for his part in the Defamation and Harassment of Bankruptcy Whistleblower Stephanie DeYoung and for his part in the Demise of the Creditors Money After the Fact.

Kevin Padrick, Obsidian Finance LLC will be indicted.. will be sued by the Federal Government for Illegal Activity. Kevin Padrick, Obsidian Finance LLC will be accountable for his part in the Defamation and Harassment of Bankruptcy Whistleblower Stephanie DeYoung and for his part in the Demise of the Creditors Money After the Fact.

I will Prove Every Law.. Every Dirty Deal that Kevin Padrick, Obsidian Finance LLC and David Aman - Tonkon Torp LLP ever did and in the Summit 1031 Bankruptcy there is plenty of wrong doing and illegal activity.

I will show you how to file Oregon State Bar Complaints on Kevin Padrick, Obsidian Finance LLC and David Aman - Tonkon Torp LLP.  I will Show you how to File Criminal Complaints in Oregon with an Attorney AGAINST the actions of Kevin Padrick, Obsidian Finance LLC and David Aman - Tonkon Torp LLP.

I will show the illegal activity behind the scenes that ILLEGALLY got Kevin Padrick, Obsidian Finance LLC and David Aman - Tonkon Torp LLP involved as the OPPOSITE side of Summit in the First Place ...

This will NEVER Go Away, Summit Principals in Jail.. Money Paid.. Whatever..

11 - SUPPLEMENTAL OPINION & ORDER

This DOES not Change the Fact that Kevin Padrick, Obsidian Finance LLC acted illegally and Unethically.. and it will never Change the Fact that Kevin Padrick, Obsidian Finance LLC was WRONG, immoral and used dirty illegal tactics.. Kevin Padrick, Obsidian Finance LLC will be held accountable to the truth... by We the People..

Kevin Padrick, Obsidian Finance LLC - Oregon Attorney is NOT above the LAW..
... And Why Does an Attorney such as Kevin Padrick, Obsidian Finance LLC need an attorney from another firm to handle his dirty deeds..???hmmmm

Ready?

**the LIE will NEVER become the TRUTH on My Watch..**

Id. at p. 22

Wednesday, December 22, 2010

**David Aman, Tonkon Torp, LLP Sends Cease and Desist to Blogger Crystal L. Cox after 16 Months**.

David Aman, Tonkon Torp Attorney Representing Attorney Kevin Padrick Obsidian Finance LLP has Finally Sent Me a Cease and Desist.  I am Telling the TRUTH and Indeed [sic] to Prove Every Little Detail.  Stay Tuned and if you have a Legal Tip, a Law, or issue for me to point out.. email me a [sic] Crystal@CrystalCox.com - the Summit 1031 Bankruptcy will Continue to Be the Most Transparent Bankruptcy Ever in the U.S. Bankruptcy Courts...

..**and The .. LIE  will NOT
Stand as the TRUTH
on My Watch.**

Id. at p. 23.

Wednesday, December 22, 2010

**Why Investigative Blogger Crystal L. Cox Says Kevin Padrick, Obsidian Finance LLC Stole Money from the U.S. Government**

Coming Soon.

Id. at p. 34

12 - SUPPLEMENTAL OPINION & ORDER

Wednesday, December 22, 2010

**Why Investigative Blogger Crystal L. Cox Says Kevin Padrick, Obsidian Finance LLC has engaged in "illegal" and "fraudulent "activity.**

Coming Soon.

Id. at p. 35.

Wednesday, December 22, 2010

**Why Investigative Blogger Crystal L. Cox Says Kevin Padrick, Obsidian Finance LLC has Committed Tax Fraud.**

Id. at p. 36.

Wednesday, December 22, 2010

**Why Investigative Blogger Crystal L. Cox Says Kevin Padrick, Obsidian Finance LLC is a "Thug and a Thief"**

Coming Soon

Id. at p. 37.

Wednesday, December 22, 2010

**Why Investigative Blogger Crystal L. Cox Says Kevin Padrick, Obsidian Finance LLC BROKE many U.S. Bankruptcy Codes and Laws**

**Coming SOON**

Id. at p. 38.

Wednesday, December 22, 2010

**Why Investigative Blogger Crystal L. Cox Says Kevin Padrick, Obsidian Finance LLC "ys [sic] off the media and politicians."**

Coming Soon

Id. at p. 39.

13 - SUPPLEMENTAL OPINION & ORDER

Saturday, December 25, 2010

**December 2008 Letter to Summit 1031 Creditors From Summit Principals. Bend Oregon Bankruptcy Case.**

**David Aman**, Oregon Attorney with Oregon Law Firm **Tonkon Torp LLP** has accused me of Defamation in my saying that Kevin Padrick - Obsidian Finance LLP is a Liar, Thug and Theif [sic] and that Kevin Padrick - Obsidian Finance LLP committed fraud against the courts, the United States Bankruptcy Courts.. thing is he did.. so I am showing you Fact after Fact over.. well the Next 2 years on just all little lies and law breaking activities that the THUG, Liar and Thief Kevin Padrick of Obsidian Finance LLP really did participate in.

More Reasons that I Call Kevin Padrick, Obsidian Finance A Liar, Thug and a Thief.

The **Chapter 11 Trustee** Terry Vance Hired Obsidian Finance as Financial Consulting? And then Corrupt Kevin Padrick of Obsidian Finance took over as the Chapter 11 Trustee AFTER Kevin Padrick of Obsidian Finance had meetings about the private financial and business details of the Summit 1031 Principals.. ??? Gee I sure was off base calling Kevin Padrick of Obsidian Finance a LIAR, Thug and Thief... NOT..

**Summit 1031 Bankruptcy Bend Oregon**

"SUMMIT 1031 EXCHANGE

**December, 19, 2008**

To All Customers of Summit 1031 Exchange:

In a prior website posting dated **December 15, 2008**, Summit Accommodators, Inc. ("SAI") reported it was experiencing significant financial issues, had ceased funding open exchanges, and had curtailed its daily operations until those issues could be addressed.

This letter will provide you with updated information and report the actions SAI has taken to address and resolve its financial issues.

**SAI currently has approximately $27,831,363.00** in open exchanges for customers of Summit 1031 Exchange ("Summit Customers").

However, the total cash in SAI's exchange funds related accounts is

14 - SUPPLEMENTAL OPINION & ORDER

$13,600,212.88, which is a cash shortfall of approximately **$14,231,151.00**.

Although SAI has other assets that it hopes will be sufficient to pay all Summit Customers, those assets are unfortunately illiquid at this time and not immediately available to fund open exchanges.

On December 19, 2008, SAI did the following to address these issues:

1) SAI filed a petition under Chapter 11 of the United States Bankruptcy Code in the United States **Bankruptcy Court for the District of Oregon**, Case No. 08-37031-rid11. All of SAI's assets, including the exchange funds, will be preserved intact pending decisions to be made by the Court.

SAI's Chapter 11 bankruptcy attorneys are Susan S. Ford and Thomas W. Stilley at Sussman Shank LLP, located in Portland, Oregon. Summit Customers are listed as creditors in the case and are entitled to appear, be heard and file claims with the Court.

You will receive further notices regarding **SAI's Bankruptcy Case** in the mail. Should you desire or require bankruptcy advice to protect your rights, you should contact a qualified attorney to assist you with this process.

2) **SAI has replaced its existing management to provide transparency**, independent decision-making and control.

**Tyrell B. Vance LLC** ("Vance") has been retained as SAI's Chief Restructuring Officer ("CRO") for **all purposes in this Chapter 11 case**.

Vance is a recognized business crisis manager and court receiver in multiple jurisdictions with over 30 years of such experience.

Effective immediately, Vance has been given independent authority to investigate all transactions and to manage SAI and all of its assets for the exclusive benefit of SAI and its creditors, specifically including all Summit Customers, until all debts are paid in full or all assets have been appropriately liquidated and paid to creditors, subject to the direction of the United States Bankruptcy Court.

Vance will **take possession of and preserve all exchange fund accounts** maintained by SAI for Summit Customers. Vance will further assume control of SAI and all of its assets, books, and records, and will have the power as CRO to propose a plan for SAI to pay creditors, to bring claims against third parties, and to do all other acts as may be necessary in the interests of SAI and its creditors or as ordered by the Court.

15 - SUPPLEMENTAL OPINION & ORDER

**3) Vance as CRO of the Company has retained
Obsidian Finance Group, LLC**

("Obsidian") as **financial consultants** to **provide advice** with respect to all tax
issues affecting Summit Customers and a plan to mitigate damages to the
maximum extent possible of currently unfunded exchanges.

In addition, Obsidian has been retained to review substantial real estate
investments and recommend the best method to realize the value of such
investments to satisfy claims.

**Obsidian is a national financial consulting firm, which specializes in
distressed enterprises and assets**

This situation resulted from loans of exchange funds made by SAI over a period
of time ending in approximately the year 2006 to **Inland Capital Corporation**
("Inland"), which in turn loaned funds to various entities and individuals that were
involved in real estate investments located primarily in central Oregon.

Inland is owned by the same persons who own SAI.  The members of the entities
and the individuals to whom Inland made loans are in most cases one or more of
the owners of SAI.

Although liquidity was not an issue for many years and much of the outstanding
loan balance from Inland to SAI was repaid, the recent crisis and downturn in the
formerly profitable real estate market caused the entities and individuals who owe
Inland to be unable to repay loans in a timely manner, which in turn caused Inland
to be unable to repay SAI.

The current amount owing from Inland to SAI is approximately $13,706,557.21.
The existing real estate investments will be made available to repay the loan
balance and satisfy claims, in addition to any and all other available assets and
resources of SAI.

However, it will unfortunately take time to determine, realize and reduce the value
of such assets to cash to pay Summit Customers and creditors.

**SAI is hopeful that its assets will be sufficient to satisfy all customers' and
creditors' claims**, and is committed to doing so under the independent direction
and control of Vance, as CRO, and the **United States Bankruptcy Court**.

SAI deeply regrets the distress and detriment that Summit Customers are currently
experiencing.  The foregoing actions have been voluntarily taken by the existing

16 - SUPPLEMENTAL OPINION & ORDER

management to assure Summit Customers that SAI is committed to complete transparency regarding these issues, to ensure that all of its actions will be exclusively for the benefit of Summit Customers and creditors, and to eliminate any uncertainty that SAI's assets will be preserved."

**Source and Full Document**
http://www.docstoc.com./docs/67923257/Obsidian-Finance-Group---Kevin-Padrick

**Note:** To **David Aman - Tonkon Torp LLP** - Are you Sure you are Up for this ??? for Every Fact, Every Law Broke.. and all the "Knowledge" as well as ALL skeletons in your closet are going to roll out Daily NOW to Prove that I am not Defaming...But Telling the TRUTH??

Hope you Can Stomach All This.. you seem kind of Spineless to me..
Guess We Shall See... Wait til You see what one of your Ex's Sent Me..

This Will NOT be Over Til **Kevin Padrick Obsidian Finance is indicted**, the Facts are the Facts ... the Laws Broke Were Broke and 2 years on Summit.. NOW Two years to GET Kevin Padrick to those Prison Gates as Well..oh and if you "Kill Me" well many will take over, so you may as well tell the Truth NOW..

Id. at pp. 24-25.

All of the above postings appear to have been made on the same "obsidianfinancesucks.com" website described in detail in the July 7, 2011 Opinion. July 7, 2011 Op. at pp. 6-7. These postings include the "introductory information" at the top of each post regarding the "broken" bankruptcy court system, and the "banner-like headline" regarding bankruptcy and trustee corruption. Id.

One additional entry submitted with plaintiffs' July 22, 2011 Opposition Memorandum also appears to have been posted on the "obsidianfinancesucks.com" website, but without the same introductory information or banner-like headline. It reads:

**Kevin D. Padrick - Obsidian Finance Oregon** [this is in fairly large font]

the Truth about Oregon Attorney Kevin Padrick and David Aman. Bankruptcy

17 - SUPPLEMENTAL OPINION & ORDER

Corruption Blog by Investigative Blogger Crystal L. Cox.
Crystal@CrystalCox.com

Tuesday, February 1, 2011

**I Say the Summit Investors, Summit Principles** [sic] **and Summit Investors Should Prosecute Bankruptcy Trustee.** [this is in larger type than the body of the post, but smaller than the above "headline"]

Obsidian Finance Group thought they had it made.  Evil, Greedy Summit 1031 Trustee Kevin Padrick, did not expect a Glitch Like Bankruptcy Insider Stephanie DeYoung and they certainly did not expect some righteous Real Estate Whistleblower to back her up...

2 Years Later, and tons of proof.. I say it is time to Prosecute Kevin Padrick for all the Bankruptcy Laws He Broke.. Read the Document Below Summit Insiders... Umpqua.. All ya ALL.. I think Fraud, Collusion, Conspiracy... and flat out theft are a Great Topic of Discussion.. and I Say that Kevin Padrick advised the Summit Principals flat out WRONG and then turned on them.

The Summit Principals Voluntarly came froward and Kevin Padrick made them out as the Evil Doers from the Start.. I am not defending Summit.. I am Defending Victims of Corrupt Bankruptcy Courts with NO Oversight or Accountability.

It was Wrong, and certainly must be against the law for Kevin D. Padrick, Obsidian Finance LLP to be advising the Summit Principals and then be in on their attack, their indictment, the media against them and the set ups to Control Assets and NOT in the best interest of the Creditors nor the Investors as there is proof that they ignored good deals on real estate assets ... there is tons of proof of corruption... SHOULD anyone Care.  Thing is the FBI Admits they know nothing of bankruptcy laws and are looking to "indict" - Are you kidding.. this kind of money.. and in the Blixseth case, and the San Diego Case.. below it is Hundreds of Millions, and the Tome Petter Bankruptcy FRAUD is worth Billions.. and the FBI can do nothing..if the Bankruptcy Trustee is not acting withing [sic] Bankruptcy Laws..**cuz.. uh.. gee.. GOLLY** the FBI just don't know these uh here Bankruptcy Laws..

Well FBI - Get a Clue... this is Big Money and the BIGGEST Criminal Ring in America - it is Called the U.S. Bankruptcy Courts.

ALL parties to the Summit Bankruptcy.. Look at the Pattern and History.. File a RICO Complaint, File Criminal Complaints against Kevin D. Padrick and Obsidian Finance LLP.

Kevin D. Padrick, Obsidian Finance LLP did not have a right to seize your assets, control your life and had NO RIGHT to seize the assets of the "Non-Debtor Spouse".. Time for Accountability - Kevin D. Padrick, Obsidian Finance LLP.

Id. at p. 40.

Another blog post appears to have been made at a different website found at

"bankruptcycorruption.com."  It reads:

by Crystal L. Cox ~ ~ ~ Investigative Blogger
**Industry Whistleblower**

I am Dedicated to **Networking Victims of Injustice,** Court Fraud, Attorney Corruption.  I want to **EXPOSE Court Corruption** from the JP, to the District Courts across the Land, to the Bankruptcy Courts, to the Supreme Courts in Every State and our **Highest Judicial Courts**.

Enough is ENOUGH....

**the TRUTH should be Relevant** in our Courts and **Corrupt Judges, Lawyers, and Fraud** on the Courts Should NOT be Tolerated.

I am **Dedicated to** EXPOSING Court Corruptions, EXPOSING Corrupt Attorneys - Judges and Law Enforcement - Exposing Corruption in the Supreme Court - the State Bar Association and the Fraud in the United States Patent Office.

Exposing the Media that Covers up Court Corruption while Victims Suffer in Silence - NOT Believed or Heard.

**Time to STOP Fraud on the Court** of the United States of America.  Time for your RIGHTS to be upHeld and **the TRUTH to Really Be a REAL Defense** in a United States Court Room.  You Should not have TO Give your Life, your Quality of Life to Feed their Greed, Corruption, Side Deals, Cover Ups and Flat Out Lies.

**Expose the Court Corruption.**
**Crystal L. Cox ~ Industry Whistleblower**

19 - SUPPLEMENTAL OPINION & ORDER

Id. a p. 27.[2]

As indicated above, under the first prong of the three-part test, the court examines the broad context in which the statements were made, including the general tenor of the entire work, the subject of the statements, the setting, and the format.  Here, all but one of the blog postings listed above were made on the obviously critical website "obsidianfinancesucks.com."  The remaining one was made on a website which also clearly communicates its position: "bankruptcycorruption.com."  By virtue of the websites' titles, the reader of the statements is predisposed to view them with a certain amount of skepticism and with an understanding that they will likely present one-sided viewpoints rather than assertions of provable facts.  The cases cited above regarding postings on online blogs or message boards make clear that the setting and format of these communication tools create a "looser, more relaxed communication style," which is less likely to be understood as containing statements of fact or implying factual assertions.

Moreover, the subject matter of the posts concerns the handling of the bankruptcy of Summit Accommodators, Inc.  The blog posts do not reveal defendant's role, if any, in that litigation, but the discharge of large amounts of debt in a bankruptcy proceeding in which ordinary investors may lose significant amounts of money can be the topic of "heated debate." Defendant's blog posts have not, based on the submissions filed here, generated comments from readers, but she certainly invites them and thus, the posts are reasonably viewed as creating a forum for discussion on a topic expected to generate some controversy.

---

[2]  This post is undated.  Additionally, none of the statements in this post refer to plaintiffs, making them not actionable by Padrick or Obsidian Finance.  See Strappini v. Sideras No. CV-08-1393-AC, 2011 WL 1261332, at *9 (D. Or. Jan. 13, 2011) (to establish claim for defamation, plaintiff must show that statement was "of and concerning" plaintiff), adopted in pertinent part by J. Haggerty, 2011 WL 1261330 (D. Or. Mar. 11, 2011).

Additionally, the general tenor of the blog posts suggests that defendant has some sort of personal vendetta against plaintiffs. The frequency of the posts, the language, discussed more specifically below, the tone, and the occasional and somewhat run-on almost "stream of consciousness"-like sentences read more like a journal or diary entry revealing defendant's feelings rather than assertions of fact. Defendant's addition of attacks on plaintiffs' counsel David Aman further suggests that she has a personal feud with plaintiffs as Aman's only connection to the controversy appears to be his representation of plaintiffs in <u>this</u> litigation. This further undermines the reader's expectations that defendant's statements are to be understood as assertions of provable fact.

The second part of the three-part test examines the context and content of the specific statements, including the use of figurative and hyperbolic language, and the reasonable expectations of the audience. Defendant regularly invokes language which is figurative, hyperbolic, imaginative, or suggestive. <u>E.g.</u>, Ex. 1 to July 22, 2011 Padrick Decl. at p. 15 ("corrupt," "immoral," "really bad," "jackass," "thugs,"); p. 16 ("hired a hitman," "pompous ass," "death threat," "fishy circumstances"); p. 17 ("corrupt," "thug," "thief," "dirty lawyer"); p. 18 ("Montana Death Threat Stalker"); p. 22 ("wrong," "immoral," "dirty, illegal tactics"); p. 24 ("THUG, Liar and Thief"); p. 25 ("spineless"); p. 37 ("thug," "thief"), p. 40 ("evil," "greedy," "evil doers", "wrong").[3]

She also criticizes the Bend District Attorney's Office and calls the "Bend[,] Oregon

---

[3] The blog posts submitted by plaintiffs with their original motion contain similar references: July 7, 2011 Op. at pp. 7-11 ("corrupt, "crookedest," "dirty deal," "every tangle in sheets," "dirty, corrupt act," "cruel, evil, discriminating liar," "abusive," "controlling," "flat out lie," "back alley deal," "sexapades," "illegal," "immoral," "criminals," "side deals," "cold hearted evil asshole," "hire a hit man," "thug," "thief").

21 - SUPPLEMENTAL OPINION & ORDER

Judges" corrupt. Ex. 1 to July 22, 2011 Padrick Decl. at pp. 15, 17. She contends Padrick hired

a "hit man" to kill her. Id. at pp. 16, 18. She suggests that the entire bankruptcy court system is

corrupt. Ex. 1 to July 22, 2011 Padrick Decl. at pp. 15-18, 22-24, 27, 34-39. These types of

allegations diminish the reader's expectations that statements posted by defendant on her blog are

to be taken as provable assertions of fact. A reasonable reader would understand that defendant's

postings generally consist of a fanciful diatribe, fueled by her subjective belief of pervasive

corruption throughout the bankruptcy court system and exemplified by the Summit

Accommodators bankruptcy.

As to the third prong of the three-part test, the postings contain several statements that

when considered in isolation might imply or state provable assertions of fact. For example,

defendant states, essentially, in a post made December 21, 2010, that Padrick lied when he told

investors he would help keep Summit Accommodators "afloat" during its restructuring and that

he actually "jumped the fence" with secret information, stole the job as bankruptcy trustee, and

made millions for himself as a result. Id. at p. 15. In another post, she states he has "broken

many laws" in the last two years in regard to the Summit Accommodators bankruptcy. Id. at p.

17. She accuses Padrick of participating in "illegal activity," and states that he acted "illegally

and unethically" and used "illegal tactics." Id. at p. 22. She contends he "committed fraud

against the courts" and asserts that "the Laws Broke Were Broke." Id. at p. 24-25. She alleges

that he stole money from the United States government, engaged in fraudulent activity, and

committed tax fraud. Id. at pp. 34-36. She further alleges that Padrick broke bankruptcy laws

and engaged in theft. Id. at p. 40. She states it was "wrong," and "must be against the law," for

Padrick to have advised the Summit Accommodators principals and then, apparently, to have

made decisions, presumably as the bankruptcy trustee, that were not in the best interests of the creditors or investors.  Id. at p. 40.

But, while these statements appear at first glance to imply provable assertions, they lose the ability to be characterized and understood as assertions of fact when the content and context of the surrounding statements are considered.[4]   As explained in Art of Living and other cases, statements that might be considered factual assertions of wrongdoing or "bad acts" if considered in isolation, must be analyzed in the context in which they are made which may well negate the reader's impression that the statements are provable fact assertions.  E.g., Gardner, 563 F.3d at 988 (when statements that the plaintiffs had lied were considered in context, they were not assertions of fact); Knieval v. ESPN, 393 F.3d 1068, 1078 (9th Cir. 2005) (taken in isolation, the defendant's statement that the plaintiff was a pimp could be actionable, but when assessed "in the context in which it was used" the assertion could not be taken literally); Art of Living, 2011 WL 2441898, at *7 (statements including words such as "embezzle," "fraud," and "abuse," accompanied by allegations that the plaintiff obtained money by using false and deceitful declarations, did not "amount to factual accusations of criminal activity" when considered in the specific context in which they were made).

The majority of the statements made by defendant are not sufficiently factual to be proved true or false.  The statements accusing  plaintiffs of being "thugs," or "evil," or "greedy," are evaluative, subjective expressions not subject to proof.  As to those statements that might suggest

---

[4]  Additionally, defendant's repeated references to Padrick having "stolen" the bankruptcy trustee job cannot be understood as provable factual assertions that Padrick committed the crime of theft because jobs are not "stolen" in the literal sense of the word.  Her references in this regard are figurative and not actionable.

a sufficient factual basis to be provable, for the reasons explained in the preceding paragraph, the context in which those statements were made dispels a reader's understanding that they are assertions of fact.   Additionally, while, as noted above, the use of a question mark is not an absolute protection from liability as a provable statement of fact, it is a commonly recognized rhetorical device which can create an impression for the reader that the author is supposing facts rather than stating provable facts.   Moreover, defendant regularly states she "will" prove her allegations or that information and facts are "coming soon."  While this might suggest that she actually possesses facts but simply has not posted them yet, in this case any reasonable reader would view the promise of future proof and defendant's failure to contemporaneously post the relevant facts as one more reason why the posts do not constitute provable assertions of fact.

I recognize that simply because statements are posted on the Internet, or contain a question mark, does not immunize the statements from being actionable in a defamation claim. But, here, none of the statements quoted above create liability for defamation because when the totality of the circumstances are considered, no reasonable juror could conclude that the statements contain provable assertions of fact.   Instead, they are protected by the First Amendment.   Thus, as to these posts, I deny plaintiffs' supplemental motion for summary judgment and I grant summary judgment to defendant.

In contrast to the above posts, I conclude that as to one post, reasonable readers could reach differing conclusions about whether the statements contain or imply an assertion of objective facts and thus, I deny plaintiffs' supplemental motion as to this post, but I also do not grant summary judgment to defendant.

The post in question appeared on the "bankruptcycorruption.com" website and reads as

24 - SUPPLEMENTAL OPINION & ORDER

follows:

Saturday, December 25, 2010

Kevin Padrick of Obsidian Finance Group LLC - Chapter 11 Trustee Summit 1031 Exchange Bankruptcy [this appears in a font size larger than the body of the text]

_____

Why Investigative Blogger Crystal L. Cox Says Kevin Padrick, Obsidian Finance LLC is a Liar.

There are Many Reasons Why I Claim that Kevin Padrick Obsidian Finance LLC is a Thug, Thief and a Liar.. Many More Will Continue to Post.. in Detail .. as Oregon Attorney David Aman of Tonkon Torp LLP Law Firm sent me a Cease and Desist Requesting that I Stop saying such Facts about his Client Oregon Attorney Kevin Padrick for Obsidian Finance Portland Oregon.

In the Summit 1031 press Release, it was announced that Summit would be declaring Chapter 11 bankruptcy, Terry Vance - Oregon Attorney was the **Chief Restructuring Officer** who then, at the advisement of **Sussman Shank, Summit Accommodators, Inc.'s attorneys,** hired **Obsidian Finance Group, LLC** as their financial consultants to provide advice on all tax issues affecting Summit Customers and a plan to mitigate damages to the maximum extent possible of currently unfunded exchanges.

It is also my understanding that **Obsidian Finance Group, LLC** was retained to review substantial real estate investments and to recommend the best method to realize value of such investments to satisfy outstanding claims. **Obsidian Finance Group, LLC** is a national financial consulting firm, which specializes in distressed enterprises and assets.

Kevin Padrick, Obsidian Finance Group, LLC, who is 50% owner of Obsidian Finance Group, LLC, presented to the Summit Shareholders that he had friends with deep pockets who would help fund their short-term liquidity crisis. (Did Kevin Padrick Lie?_

Kevin Padrick, Obsidian Finance Group, LLC never mentioned Ponzi Scheme; he just keep calling it a short-term liquidity crisis. Then later it was a Ponzi Scheme? Double Talk? Lies? Greed..?:

The Summit Shareholders of course wanted this our short term liquidity crisis Solution, it would benefit all and get them out of hot water. But Of Course Kevin

25 - SUPPLEMENTAL OPINION & ORDER

Padrick, Obsidian Finance Group, LLC Flat Out LIED..

Kevin Padrick, Obsidian Finance Group, LLC, did none of these things in this agreement and the press release. **Kevin Padrick of Obsidian Finance Group** came in immediately and took all of the information then used this privileged information Against their Client and STOLE the Job of the LUCRATIVE position of **Chapter 11 Trustee** in a 40 Million Dollar Oregon Bankruptcy.. (Hence Liar and Thief)

Click Here for Lies, Agreement from Kevin Padrick Obsidian Finance Group, LLC

Click Here for Press Release, Information to Summit 1031 Creditors

**Kevin Padrick of Obsidian Finance Group** told the Summit Principals they would be back in two weeks with a proposal.  Instead, they took the privileged financial information and Summit spreadsheet on the properties the Summit Principals were always from day one going to turn over to the bankruptcy estate to the Creditor's Committee.

Who Was **Kevin Padrick of Obsidian Finance Group really working for when he illegally, unethically, corruptly got this financial information and used it to make himself TONS of money?**

**Was Kevin Padrick of Obsidian Finance Group working for** the Creditor's Committee or Terry Vance, CRO of Summit?  Looks like Kevin Padrick of Obsidian Finance had no intention on completing his contract with Terry Vance and Summit because they did not receive any proposals or any word from Kevin Padrick after **Kevin Padrick of Obsidian Finance got what he needed to steal the Chapter 11 Trustee Job.**

**Kevin Padrick of Obsidian Finance Group** took this privileged information to the other side and sold them something else.  Something like we will sue Umpqua, we will take away interests' [sic] from innocent people by suing them, we will sue every attorney who ever did work for Summit.  **Kevin Padrick of Obsidian Finance Group** probably never mentioned how much assets the Summit Principals were handing over already.  This way he could get more MONEY for him and cheat the Creditors.., oh in my opinion..

**Cash $14 Million**
**Bond $10 Million**
**E&O $3 Million**
**Note Receivable - Steve White $1.2 Million**

26 - SUPPLEMENTAL OPINION & ORDER

**Property Investments - $11.5 Million**
**Business Interests - $1 Million**

The Initial Amount being handed over voluntarily by the Summit Shareholders was $40.7 Million.  Summit only owed $28 Million.

Since the beginning **Kevin Padrick of Obsidian Finance Group**, and Tonkon Torp have taken interests' [sic] in property from innocent investors, they passed on sales that would've brought more money to the bankruptcy estate, either because they weren't going to get their 15% commission at the time or because they were trying **to squash innocent investor's** [sic] who were in their way. (Thug and Thief? You Bet)

**Kevin Padrick of Obsidian Finance Group** also got a settlement of $16.8 Million from the Summit Shareholders, they got an unknown settlement from Umpqua Bank, and just the other day they are suing every attorney Summit ever used.  Not to mention that **Kevin Padrick of Obsidian Finance Group** already collected the Bond of $10 Million, the E&O of $3 Million, the business interest of $1 Million and Several Million in Property Investments.

So **Kevin Padrick of Obsidian Finance Group made money hand over fist for 2 years and counting, and he wants me to SHUT Up so he can keep making money.**

It would be impossible to get an exact amount of what **Kevin Padrick of Obsidian Finance Group** and Tonkon Torp has received and disbursed.  They have jumbled the books I'll bet, and taken a piece of every dirty deal.. above the law and with no oversight or transparency what so ever.

It would seem that they don't have to report what type of money came in and what type of payments went out and to whom.. No one is monitoring this money and they are dealing with Millions upon Millions.

**Kevin Padrick of Obsidian Finance Group - Tax Fraud? Fraud Against the Government? Gee ya Think?**

The Summit Principals also did their own 1031 Exchanges during the past years as they purchased and sold properties.  When you do an exchange you have deferred gain that you don't pay tax on until you sell the property.

When Kevin Padrick as Chapter 11 trustee did a turnover of all the assets to his liquidating trust, these deferred gains became tax liabilities to the liquidating trust. However, Obsidian Finance's accounting staff is **conveniently leaving these**

27 - SUPPLEMENTAL OPINION & ORDER

**deferred gains out of their tax returns**.
They make plugs to the capital accounts of the Summit Shareholders to get rid of
the deferred gain upon the sale or disposition of the property. For an example,
Kevin Padrick just gave away the Summit Shareholders' interest in Century Drive
Mobile Home Park to another owner named Jim Hull.

Upon Diposition, the trust should have recognized around $600,000 of **taxable
gain** on behalf of the interest owned by **Mark Neuman and Brian Stevens.**

No such gain was reported on this tax return and the **tax of $174,000 (20% to
IRS and 9% to Oregon) was never paid by the liquidating trust.**

Why would **Kevin Padrick of Obsidian Finance Group** pay the tax when no
one is monitoring his work?

**Kevin Padrick of Obsidian Finance Group** would rather keep this MONEY and
file more lawsuits to help pad his pockets some more.

There are many more properties with large amounts of deferred gain and **related
tax liability** that are probably not being reported. **I**, you can file a Whistleblower
Lawsuit and get 30% of recovery of what **Kevin Padrick of Obsidian Finance
Group has frauded the U.S. Government.**

The IRS and the Oregon Department of Revenue should really look at this,
because it means there is **a lot of missing tax dollars to our federal and state
governments.**

When will be enough money for Kevin Padrick of Obsidian Finance?

**Kevin Padrick of Obsidian Finance Group - Thug and Thief** will run this
score out for as long as he can because he has and can get much, much more
money than what is due to the creditors. He will be paying this attorneys, Tonkon
Torp for cease and desist orders and lawsuits, while Obsidian Finance Group LLC
gets 15% commissions on all sales and **Kevin Padrick of Obsidian Finance
Group** spends oodles of hours working so very hard to pad his own pockets that
paying back the creditors will be the very last thing he does.

Much More Coming Soon.. as David Aman, for the Corrupt Oregon Attorney
**Kevin Padrick of Obsidian Finance Group - has sent me a Cease and Desist
so I must prove the LIES and Illegal Activity on the Summit 1031
Bankruptcy out of Bend Oregon... So stay Tuned..**

I Sure am Going be Busy Proving that **Kevin Padrick of Obsidian Finance**

28 - SUPPLEMENTAL OPINION & ORDER

**Group** Oregon Lies, Commits Fraud, Breaks the Law and is a THUG and a Thief.
Id. at pp. 28-30.[5]

Because this post appears on the "bankruptcycorruption.com" website, the reader is unable to view it in the context of the dozens of serial posts defendant has placed on the "obsidianfinancesucks.com" website. Thus, although the website title "bankruptcycorruption.com" suggests a certain bias, it is not as strong or specific as the title of the "obsidianfinancesucks.com" website.[6] And while the setting and format of a blog tend to reduce a reader's expectation that provable assertions of fact will be found there, the use of a blog does not, as I noted earlier, automatically insulate the poster from liability. Moreover, on this record, with plaintiffs having submitted only two postings from "bankruptcycorruption.com" into the record, a full assessment of the flavor and tenor of the website is not possible. In contrast, the several postings from "obsidianfinancesucks.com" which are in the record show the broad context in which the statements on that website are made.

The December 25, 2010 posting does contain several non-provable, figurative, or subjective-type words which tend to negate the impression that defendant asserts provable statements of fact. For example, defendant refers to Padrick as a "thug," a "liar" and a "thief";

_____

[5] Defendant included links to primary source documents in her blog post, but plaintiffs failed to include those in their filing. The disclosure of relevant, historical, or other background facts to a dispute may provide a factual basis for a challenged statement such that the challenged statement may be read as the author's "personal conclusion about the information presented, not as a statement of fact." Partington, 56 F.3d at 1156 (internal quotation and emphasis omitted). Plaintiffs' omission of the linked documents precludes, on this record, an informed analysis of this issue

[6] As noted above, although one of the posts I found not actionable was from the "bankruptcycorruption.com" website, it failed to contain any statements about plaintiffs and thus, for that reason, summary judgment in favor of defendant is appropriate as to that post.

she accuses him of "double talk" and "greed"; she suggests he was "unethical"; and she accuses him of "stealing" the trustee's job.  Id. at pp. 28-30.  However, this is a fairly long post and overall, these words do not dominate the statements made there.  Additionally, in contrast to the posts from "obsidianfinancesucks.com," I cannot, for the reasons explained in the preceding paragraph, collectively examine the surrounding posts to determine the frequency with which defendant uses these words.

This post contains no references to "corrupt" Oregon judges or to a "corrupt" Bend, Oregon District Attorney, facts which suggested that the collective posts on "obsidianfinancesucks.com" would be viewed less seriously.  And, while the post is somewhat confusing and uses some unclear terms such as "liquidating trust," it reads more like a factual narrative than the posts made on the "obsidianfinancesucks.com" website, particularly in regard to the allegations regarding a failure to pay taxes.

The last one-third of the post, following defendant's question of whether Padrick and Obsidian Finance committed tax fraud, contains several statements which contain or imply provable assertions of fact.  Notably, defendant alleges that as trustee, Padrick engaged in certain transactions on behalf of the "liquidating trust," which I understand to mean the bankruptcy estate for Summit Accommodators, which should have generated a $174,000 tax liability which Padrick did not pay.  She asserts that there are "missing tax dollars" as a result.  Given that these are fairly specific allegations, a reasonable reader could understand them to imply a provable fact assertion.

In contrast to the statements made on the "obsidianfinancesucks.com" website and discussed above, the broader and surrounding context of this post does not necessarily negate the

30 - SUPPLEMENTAL OPINION & ORDER

impression that the statements are incapable of being proved true or false.  On the one hand, a reasonable reader may view the title of the website, the fact that the statements appear on a blog, and the use of loose, figurative language, as dispelling such an impression.  However, as to this post, and in particular as to the statements made regarding tax fraud, a different reader could reasonably understand the statements to imply provable assertions of fact.  As such, summary judgment to either plaintiffs or defendant is inappropriate as to the December 25, 2010 post appearing on the "bankruptcycorruption.com" website.

## CONCLUSION

Plaintiffs' July 22, 2011 Opposition Memorandum [#27] is construed as a supplemental motion for summary judgment as to the blog posts not previously submitted with plaintiffs' original summary judgment motion, and as so construed, is denied.

Summary judgment independent of the motion pursuant to Federal Rule of Civil Procedure 56(f), is granted to defendant as to all blog posts other than the December 25, 2010 blog post appearing on the "bankruptcycorruption.com" website.

The Court will promptly set a telephone scheduling conference to establish a case schedule for trial.

IT IS SO ORDERED.

Dated this _23rd_ day of _August_____, 2011

_/s/ Marco A. Hernandez_____
Marco A. Hernandez
United States District Judge

31 - SUPPLEMENTAL OPINION & ORDER