IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

OBSIDIAN FINANCE GROUP, LLC, and
KEVIN D. PADRICK,                                        No. CV-11-57-HZ

                Plaintiffs,

      v.                                                   OPINION

CRYSTAL COX,

                Defendant.

Steven M Wilker
David S. Aman
TONKON TORP LLP
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, Oregon 97204

      Attorneys for Plaintiffs


/ / /

/ / /


1 - OPINION

Crystal L. Cox
P.O. Box 1610
Eureka, Montana 59917

     Defendant Pro Se

HERNANDEZ, District Judge:

     Plaintiffs Obsidian Finance Group, LLC and Kevin Padrick bring a claim of defamation against defendant Crystal Cox.  Trial in this case was conducted on Tuesday, November 29, 2011.  On November 28, 2011, the day before trial, I orally ruled on several legal issues involved in the case.  This Opinion contains the reasoning supporting those rulings.

I.  Oregon's Retraction Statutes

     Oregon Revised Statutes §§ (O.R.S.) 31-200 - 31.225 preclude a plaintiff from obtaining general damages on account of a defamatory statement being published in certain forms unless a correction or retraction is demanded, but not published as provided in O.R.S. 31.215.  Defendant contends that because plaintiffs did not seek a correction or retraction, they may not obtained general damages.

     These statutes apply, however, only to actions for damages on account of a defamatory statement published or broadcast in a newspaper, magazine, other printed periodical, or by radio, television, or motion picture.  O.R.S. 31.205, 31. 210.  The Oregon Legislature has not expanded the list of publications or broadcasts to include Internet blogs.  Because the statements at issue in this case were posted on an Internet blog, they do not fall under Oregon's retraction statutes.

II.  Oregon's Shield Laws

     O.R.S. 44.510 - 44.540 provide certain protections to "Media Persons as Witnesses." O.R.S. 44.520 provides that

2 - OPINION

> [n]o person connected with, employed by or engaged in any medium of
> communication to the public shall be required by . . . a judicial officer . . . to
> disclose, by subpoena or otherwise . . . [t]he source of any published or
> unpublished information obtained by the person in the course of gathering,
> receiving or processing information for any medium of communication to the
> public[.]

O.R.S. 44.520(1).  "Medium of communication" is broadly defined as including, but not limited

to, "any newspaper, magazine or other periodical, book, pamphlet, news service, wire service,

news or feature syndicate, broadcast station or network, or cable television system."  O.R.S.

44.510(2).

Defendant contends that she does not have to provide the "source" of her blog post

because of the protections afforded to her by Oregon's Shield Laws.  I disagree.  First, although

defendant is a self-proclaimed "investigative blogger" and defines herself as "media," the record

fails to show that she is affiliated with any newspaper, magazine, periodical, book, pamphlet,

news service, wire service, news or feature syndicate, broadcast station or network, or cable

television system.  Thus, she is not entitled to the protections of the law in the first instance.

Second, even if she were otherwise entitled to those protections, O.R.S. 44.530(3)

specifically provides that "[t]he provisions of O.R.S. 44.520(1) do not apply with respect to the

content or source of allegedly defamatory information, in [a] civil action for defamation wherein

the defendant asserts a defense based on the content or source of such information."  Because this

case is a civil action for defamation, defendant cannot rely on the media shield law.

III.  Anti-SLAPP Statutes

Defendant contends that the claim against her must be dismissed under Oregon's Anti-

SLAPP (Strategic Lawsuit Against Public Participation) statute, O.R.S. 31.150.  That statute

provides that a defendant may make a special motion to strike a claim in a civil action that arises

out of a written statement presented in a place open to the public or a public forum in connection

with an issue of public interest.  O.R.S. 31.150(2)(c).  Procedurally, the moving defendant must

make the motion within sixty days after the service of the complaint.  O.R.S. 31.152(1).  The

motion must be denied if the court determines there is a probability that the plaintiff will prevail

on the claim.  O.R.S. 31.150(1), (3).

    As previously explained in the July 7, 2011 summary judgment Opinion, defendant failed

to timely move to strike under the Anti-SLAPP statute.  July 7, 2011 Op. & Ord. at p. 15 n.3

(citing Horton v. Western Protector Ins. Co., 217 Or. App 443, 448-51, 176 F.3d 419, 422-24

(2008) (a special motion to strike under the Anti-SLAPP statute in O.R.S. 31.150 must be filed

as part of a defendant's first appearance in the case)).  Moreover, even if I allowed her to make

such a motion now, it would be futile because I have already determined on summary judgment

that plaintiffs are entitled to proceed to trial on one of the subject blog posts, effectively

disposing of any argument that the claim could be dismissed under O.R.S. 31.150.

IV.  "Absolute Privilege"

    In her trial memorandum, defendant argues that her statements in the subject blog post are

absolutely privileged because they are based on statements made in a judicial proceeding.  Deft's

Trial Mem. at pp. 6-7.  While it is true that statements made in a judicial proceeding are

absolutely privileged, Wallulis v. Dymowski, 323 Or. 337, 348, 918 P.2d 775, 761 (1996), a

person who republishes a defamatory statement may be liable even though the original

publication was privileged.  See Cushman v. Edgar, 44 Or. App. 297, 302-03, 605 P.2d 1210,

1212-13 (1980) (union official's letter to governor was absolutely privileged, but its republication

4 - OPINION

in union periodical was not).   Here, defendant's statements were not made in a judicial

proceeding.  Moreover, the statements in the subject blog post do not appear to be republications

of a statements previously published in a judicial proceeding.  That is, while defendant provides

links to other documents and discusses them in the post, the statements regarding Padrick's

failure to pay taxes on taxable gain obtained by the bankruptcy estate, are not simply

republications of statements that initially appeared in a judicial proceeding.  Regardless, the

statements posted on defendant's blog are not privileged.

IV.  First Amendment Issues

Defendant raises several issues implicating the First Amendment.

A.  "Actual Malice" Standard

Defendant argues that under New York Times Co. v. Sullivan, 376 U.S. 254 (1964),

plaintiffs are "public figures" and as such, they must prove by clear and convincing evidence that

defendant published the defamatory statements with "actual malice," meaning with knowledge

that the statements were false or with a reckless disregard of whether they were false or not.  See

Flowers v. Carville, 310 F.3d 1118, 1129-30 (9th Cir. 2002) ("A public figure plaintiff must

show that the defendant acted with 'actual malice'-that is, knowledge that a statement was false or

reckless disregard of whether it was false or not"; plaintiff can meet that burden by showing

either that defendant knew the statements were probably false or that he disregarded obvious

warning signs of falsity; burden must be satisfied by clear and convincing evidence) (internal

quotation and brackets omitted).

Whether a plaintiff is a public figure is a question of law for the court.  Wheeler v. Green,

286 Or. 99, 111 n.7, 593 P.2d 777, 785 n.7 (1979) (when the facts are not in dispute question of

whether the plaintiff is a public figure is a question for the court). It is defendant's burden to establish plaintiffs' status as public figures. Carr v. Forbes, Inc., 259 F.3d 273, 278 (4th Cir. 2001).

A plaintiff is a public figure in one of two ways: (1) as an "all-purpose" public figure, meaning a "public figure for all purposes and in all contexts[,]" Gertz v. Robert Welch, Inc., 418 U.S. 323, 351 (1974), or (2) by "thrust[ing] [himself] to the forefront of [a] particular public controvers[y] in order to influence the resolution of the issues involved." Id. at 345; see also Id. at 345, 351 ("[s]ome occupy positions of such persuasive power and influence that they are deemed public figures for all purposes[;] . . . [m]ore commonly, an individual voluntarily injects himself or is drawn into a particular controversy and thereby becomes a public figure for a limited range of issues.").

Neither plaintiff in this case is an "all purpose" public figure. The question is whether either plaintiff may be seen as a "limited" public figure. The leading cases make clear that they are not.

In Gertz, the plaintiff had served as an officer of professional organizations and had published several books on leading subjects. He was well known in certain legal circles but had achieved no general fame or notoriety in the community. Although he had been hired by the family of a murder victim to pursue a civil action against the police officer convicted of the murder, and although the murder and the officer's conviction had become a matter of public concern, the Supreme Court held that the plaintiff was not a limited public figure because he had not thrust himself into the "vortex of this public issue, nor did he engage the public's attention in an attempt to influence its outcome." 418 U.S. at 351. In Time, Inc. v. Firestone, 424 U.S. 448

6 - OPINION

(1976), the Court found that the plaintiff was not a limited public figure despite her social

prominence and despite her divorce having become a "cause celebre." Id. at 454-55. The

Supreme Court held that dissolution of marriage through judicial proceedings was not the sort of

public controversy referred to in Gertz. The plaintiff had not chosen to publicize issues as to the

propriety of her married life but was compelled to go to court regarding the divorce. Id.

In Wheeler, a professional racehorse trainer brought a defamation action against his

former employers for statements made after he had been discharged. The Oregon Supreme Court

concluded that the plaintiff was not a public figure:

> There was evidence that, because of his success as a trainer, he was very well
> known to that portion of the public which follows Appaloosa horse racing. There
> was also evidence that there was, among those engaged in and interested in that
> sport, a current controversy about the adequacy of the rules and practices
> governing that sport, and the potential for abuse and dishonest activity. There was,
> however, no evidence that plaintiff had attempted in any way to influence that
> controversy or that he had taken any public part in it whatsoever. Until the
> statements by defendants which are the subject of this case were made public, the
> only publicity which plaintiff had received, so far as the record shows, was
> attributable solely to and concerned only his success as a trainer. There was no
> showing that he had voluntarily engaged in any activities of the kind the Court
> indicated in Gertz and Firestone were significant, nor had he been drawn into any
> public controversy.

286 Or. at 116-17, 593 P.2d at 788-89.

In Bank of Oregon v. Independent News, Inc., 298 Or. 434, 693 P.2d 35 (1985), the bank

and its president brought an action against the defendant newspaper for publishing allegedly

defamatory statements about the manner in which the bank dealt with a certain customer. The

court examined the leading federal cases on the "public figure" issue and noted, inter alia, that the

public controversy into which the plaintiff may thrust his or her personality must preexist the

defamatory publication; it cannot be created by the publication. Id. at 443, 693 P.2d at 41 (citing

7 - OPINION

Hutchinson v. Proxmire, 443 U.S. 111 (1979)).  Additionally, merely because events involving a private individual attract public and media attention does not transform that private individual into a public figure.  Id. at 443, 693 P.2d at 41-42.

In regard to a business entity, the court explained that "[m]erely opening one's doors to the public, offering stock for public sale, advertising, etc. even if considered a thrusting of one's self into matters of public interest, is not sufficient to establish that a corporation is a public figure." Id. at 443, 693 P.2d at 42.   The court concluded that the Bank of Oregon was not a public figure because first, there was no public controversy in the case and second, the bank did not have general fame or notoriety in the community nor did it exhibit pervasive involvement in the affairs of society.  Id. at 443-44, 693 P.2d at 42.

The record does not support a conclusion that Obsidian Finance or Padrick are limited public figures.  While Summit Accommodators may have received attention by its failure and may have caused a controversy for its investors who lost money, the alleged defamatory statements concern Padrick's handling of the bankruptcy estate's taxes.  Even assuming Padrick volunteered for his position as the bankruptcy trustee, I do not view such an act as "injecting" or "thrusting" oneself into a controversy.  There is no evidence that the bankruptcy filing itself was controversial.  Additionally,  Summit Accommodators was not a public entity and its liquidation is primarily of interest to its creditors and others whose economic interests may be impacted by the trustee's work.  If the attorney plaintiff in Gertz was not a limited public figure based on his status as an attorney in a controversial civil case, Padrick's role as bankruptcy trustee would similarly not be a basis for finding him a limited public figure.  See Gertz, 418 U.S. at 351.  Finally, as Bank of Oregon noted, the public controversy into which the plaintiff may thrust him

or herself must preexist the defamatory publication.  The record here suggests that defendant created the controversy over Padrick's role as trustee and specifically, over the alleged tax fraud he committed.   Public figure status may not be manufactured this way.  The actual malice standard does not apply because neither Padrick nor Obsidian Finance are public figures.

B.  "Media" Defendant

Defendant next argues that she is "media" and thus, plaintiffs cannot recover damages without proof that defendant was at least negligent and may not recover presumed damages absent proof of "actual malice."  Gertz, 418 U.S. at 347; see also Bank of Oregon, 298 Or. at 445-46, 693 P.2d at 43-44 (when plaintiffs were not public figures, but defendant was "media," plaintiffs had to prove that defendants were negligent in publishing the challenged article).

Defendant cites no cases indicating that a self-proclaimed "investigative blogger" is considered "media" for the purposes of applying a negligence standard in a defamation claim. Without any controlling or persuasive authority on the issue, I decline to conclude that defendant in this case is "media," triggering the negligence standard.

Defendant fails to bring forth any evidence suggestive of her status as a journalist.  For example, there is no evidence of (1) any education in journalism; (2) any credentials or proof of any affiliation with any recognized news entity; (3) proof of adherence to journalistic standards such as editing, fact-checking, or disclosures of conflicts of interest; (4) keeping notes of conversations and interviews conducted; (5) mutual understanding or agreement of confidentiality between the defendant and his/her sources; (6) creation of an independent product rather than assembling writings and postings of others; or (7) contacting "the other side" to get both sides of a story.  Without evidence of this nature, defendant is not "media."

9 - OPINION

C.  Issue/Matter of Public Concern

Defendant contends that the blog post referred to a matter or issue of public concern, further implicating First Amendment protections.  "[W]hether speech addresses a matter of public concern must be determined by the expression's content, form, and context as revealed by the whole record."  Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 761 (1985) (internal quotation, ellipses, and brackets omitted).  In Dun & Bradstreet, the plaintiff, a construction contractor, brought a defamation action against a credit reporting agency which issued a false credit report to the contractor's creditors.  The Court concluded that the credit reports concerned no public issue.  Rather, the reports were speech solely in the individual interest of the speaker and its specific business audience.  Id. at 761-62.

In contrast, in a Ninth Circuit case, the court analyzed statements made in a letter to the county by a physician protesting physician layoffs at a county hospital.  Ulrich v. City & County of San Francisco, 308 F.3d 968, 978 (9th Cir. 2002).  The court concluded that the plaintiff's challenges to the allocation of budgetary resources by questioning the ability of the hospital to care effectively for patients in the face of physician layoffs fell within the line of cases recognizing that "public import in evaluating the performance of a public agency to assess the efficient performance of its duties" was speech on a matter of public concern.  Id. (internal quotation omitted).  In another Ninth Circuit case, the court found certain statements by celebrity George Michael regarding an officer who had previously arrested him, to be in regard to a matter of public concern because the statements alleged an act of misconduct by a police officer and because Michael's status as a celebrity had already drawn significant public attention to and interest in the details of his arrest.  Rodriguez v. Panayiotou, 314 F.3d 979, 985 n.7 (9th Cir.

10 - OPINION

2002).

The Ninth Circuit has also recognized that statements made about the safety or effectiveness of products readily available to consumers may be statements related to issues of public concern. See Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 840 (9th Cir. 2001) (statements made regarding the safety of products intended for human consumption were statements related to a matter of public concern); Unelko Corp. v. Rooney, 912 F.2d 1049, 1056 (9th Cir. 1990) (statements about a product's effectiveness were on matter of public concern because they were of general interest and made available to the general public).

In Oregon, a leading case on the issue held that statements made by the defendant's manager to the plaintiff's employer, which was a contractor of defendant's hired to provide maintenance at a nuclear power plant, regarding plaintiff's ineligibility for clearance to work at the power plant, were not statements made on matter of public concern. Cooper v. PGE, 110 Or. App. 581, 587-88, 824 P.2d 1152 (1992). The court explained that while security at the power plant was generally a matter of public safety and welfare, the statements involved a question of personnel management, not a publicly debatable question concerning security policies at the power plant, the statements were not published in a way that made them available to the general public, and they were not a subject for public discussion or comment.

Here, although the statements were available to the public at large by being posted on the Internet, the content of the statements does not implicate a matter of public concern. Similarly to the plaintiff's status as a lawyer in Gertz, Padrick's status as a bankruptcy trustee does not make statements about his actions in that role a matter of public concern. See Gertz, 418 U.S. at 351 (Court rejected the argument that the plaintiff's status as a lawyer made him a public official

11 - OPINION

because that would "sweep all lawyers" under the <u>New York Times</u> standard simply by being an officer of the court).  Padrick was not a public employee or a public official.  Summit Accommodators was not a public body or public corporation.  Thus, in contrast to the statements made in <u>Ulrich</u>, the statements here did not relate to the evaluation of the performance of a public agency or official.  In contrast to <u>Rodriguez</u>, the handling of the bankruptcy of Summit Accommodators had not, at least on the record in this case, generated public concern, controversy, or interest.  Additionally, the subject matter did not, in contrast to <u>Metabolife</u> and <u>Unelko</u>, affect or relate to products available to the public at large.

Again, while presumably Summit's collapse generated news stories, the content of the statements at issue here concern Padrick's role as a bankruptcy trustee.  There is no evidence that any public attention was paid to the Summit bankruptcy proceedings other than the attention defendant gave to the issue.  Thus, although defendant made her statements in a forum available to the general public, without more, her statements regarding Padrick's conduct in his role as a bankruptcy trustee in the bankruptcy proceedings of a private corporation, are not statements made on a matter of public concern.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

12 - OPINION

CONCLUSION

Based on the evidence presented at the time of trial, I conclude that plaintiffs are not

public figures, defendant is not "media," and the statements at issue were not made on an issue of

public concern.  Thus, there are no First Amendment implications.  Defendant's other defenses of

absolute privilege, Oregon's Shield Law, Oregon's Anti-SLAPP statute, and Oregon's retraction

statutes, are not applicable.

IT IS SO ORDERED.

Dated this __30th_____ day of ___November_____, 2011


_/s/ Marco A. Hernandez_____
Marco A. Hernandez
United States District Judge

13 - OPINION