**BENJAMIN N. SOUEDE**, OSB. No. 081775
benjamin@angelilaw.com
Angeli Law Group LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 954-2232
Facsimile:  (503) 227-0880

**EUGENE VOLOKH**
volokh@law.ucla.edu
Mayer Brown, LLP
UCLA School of Law
405 Hilgard Ave.
Los Angeles, CA 90095
Telephone: (310) 206-3926
Motion for *pro hac vice* appearance pending

Attorneys for Crystal Cox

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| Obsidian Finance Group, LLC, et al., | CASE NO. 3:11-cv-00057-HZ |
| Plaintiffs, | **MEMORANDUM IN SUPPORT OF** |
| v. | **DEFENDANT CRYSTAL COX'S** |
| | **MOTION FOR NEW TRIAL AND IN** |
| Crystal Cox, | **THE ALTERNATIVE FOR** |
| | **REMITTUR** |
| Defendant. | |
| | Request for Oral Argument |

PAGE 1 —    MEMORANDUM IN SUPPORT OF DEFENDANT CRYSTAL COX'S
MOTION FOR NEW TRIAL AND IN THE ALTERNATIVE FOR
REMITTUR

# TABLE OF CONTENTS

Table of Contents ................................................................................................. 2

Table of Authorities ............................................................................................ 3

Introduction ......................................................................................................... 6

Statement of the Case .......................................................................................... 7

Argument .............................................................................................................. 8

I.    Defendant Is Entitled to a New Trial Under *Gertz v. Robert Welch, Inc.* ............................ 8

    A.    *Gertz* Applies Equally to All Who Speak to the Public, Regardless of Whether They Are Members of the Institutional Press ................................................... 9

    B.    Defendant's Allegations Constituted Speech on Matters of Public Concern ................ 14

    C.    Ninth Circuit Precedent Establishes That the *Gertz* Requirement of a    Showing of Negligence Applies Even in Private Concern Cases .................................. 17

II.   Defendant Is Entitled to a New Trial Under *New York Times Co. v. Sullivan* .................. 19

III.  The Defendant is Entitled to a New Trial, or at Least to Remittitur, Because the Damages Award Was Not Supported by the Evidence ........................................ 22

Conclusion .......................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600 (6th Cir. 2005) 18

*Avins v. White*, 627 F.2d 637 (3d Cir. 1980)....................................................................... 10

*Bandelin v. Pietsch*, 563 P.2d 395 (Idaho 1977)............................................................ 20, 21

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ................................................................... 10, 13

*Boule v. Hutton*, 328 F.3d 84 (2d Cir. 2003) .................................................................... 14

*Brandenburg v. Ohio*, 395 U.S. 444 (1969)...................................................................... 18

*Brueggemeyer v. Krut*, 684 F. Supp. 471 (N.D. Tex. 1988) ............................................. 14

*Citizens United v. FEC*, 130 S. Ct. 876 (2010).............................................................. 9, 13

*Cohen v. Cowles Media, Inc.*, 501 U.S. 663 (1991) ......................................................... 10

*Davis v. Schuchat*, 510 F.2d 731 (D.C. Cir. 1975) ......................................................... 11

*Dun & Bradstreet, Inc.* v. *Greenmoss Builders, Inc.*, 472 U.S. 749 (1985) ...................... 9, 15, 16

*First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978)........................................... 10, 13

*Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144 (2d Cir. 2000) ................................. 10, 11

*Garcia v. Bd. of Educ.*, 777 F.2d 1403 (10th Cir. 1985).................................................. 11

*Gardner v. Martino*, 563 F.3d 981 (9th Cir. 2009)......................................................... 14, 15

*Garrison v. Louisiana*, 379 U.S. 64 (1964) .................................................................. 10, 13, 21

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ............................................................ passim

*HBO v. Harrison*, 983 S.W.2d 31 (Tex. Ct. App. 1998) ................................................... 20

*Henry v. Collins*, 158 So.2d 28 (Miss. 1963) .................................................................. 10

*Henry v. Collins*, 380 U.S. 356 (1965) .......................................................................... 10, 13, 21

*Hutchinson v. Proxmire*, 443 U.S. 111 (1979) ................................................................ 15

*In re IBP Confidential Bus. Documents Litig.*, 797 F.2d 632 (8th Cir. 1986) ............................ 11

*In re Kids Creek Partners, L.P.*, 248 B.R. 554 (Bankr. N.D. Ill.), *aff'd*, 2000 WL 1761020 (N.D. Ill. Nov. 30, 2000)......................................................................................................... 20

*Lerman v. Flynt Distrib. Co., Inc.*, 745 F.2d 123 (2d Cir. 1984).......................................... 18, 19

*Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096 (9th Cir. 1986) ........................................ 20

*Lovell v. City of Griffin*, 303 U.S. 444 (1938) ...................................................................... 9, 12

*Manual Enters., Inc. v. Day*, 370 U.S. 478 (1962) (opinion of Harlan, J.)........................... 18, 19

*Manufactured Home Communities, Inc. v. County of San Diego*, 544 F.2d 959 (9th Cir. 2008). 14

*McKevitt v. Pallasch*, 339 F.3d 530 (7th Cir. 2003) ................................................................. 12

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ................................................................. 13

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ...................................................... passim

*New York v. Ferber*, 458 U.S. 747 (1982) .......................................................................... 18, 19

*Newcombe v. Adolf Coors Co.*, 157 F.3d 686 (9th Cir. 1998)...................................... 11, 17, 19

*Obsidian Finance Group, LLC v. Cox*, 2011 WL 3734457 (D. Or. Aug. 23, 2011) ............... 7, 22

*Obsidian Finance Group, LLC v. Cox*, 2011 WL 5999334 (D. Or. Nov. 30, 2011) ............... 7, 12

*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) ................................................ 14

*San Diego v. Roe*, 543 U.S. 77 (2004) .................................................................................... 19

*Schwartz v. Worrall Publications Inc.*, 610 A.2d 425 (N.J. Super. Ct. App. Div. 1992)............. 21

*Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ..................................................................... 11, 12

*Silvester v. ABC*, 839 F.2d 1491 (11th Cir. 1988) .................................................................... 14

*Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304 (11th Cir. 1990) .................................. 22

*Smith v. California*, 361 U.S. 147 (1959) ................................................................................ 18

*Snyder v. Phelps*, 580 F.3d 206 (4th Cir. 2009), *aff'd*, 131 S. Ct. 1207 (2011) ........................ 11

*Straw v. Chase Revel, Inc.*, 813 F.2d 356 (11th Cir. 1987) ...................................................... 15

*United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2011).......................................... 18

*United States v. United States District Court*, 858 F.2d 534 (9th Cir. 1988) ........................ 18, 19

*Virginia v. Black*, 538 U.S. 343 (2003).......................................... 18

*von Bulow v. von Bulow*, 811 F.2d 136 (2d Cir. 1987).......................................... 12

*Weeks v. Bayer*, 246 F.3d 1231 (9th Cir. 2001).......................................... 14

*Wheeler v. Green*, 593 P.2d 777 (Or. 1979) .......................................... 13, 21

*Winter v. G.P. Putnam's Sons*, 938 F.2d 1033 (9th Cir. 1991).......................................... 18, 19

**Statutes**

11 U.S.C. § 1106(a) .......................................... 20

11 U.S.C. § 704(a) .......................................... 20

**Treatises**

1 Rodney A. Smolla, Law of Defamation (2d ed. 2011).......................................... 15

**<u>INTRODUCTION</u>**

Pursuant to Federal Rule of Civil Procedure 59, Defendant moves the Court for a new trial, for three independently sufficient reasons.

First, even if plaintiffs are treated as private figures, the jury should have been instructed —consistent with *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)—

(1) that it could hold defendant liable for proven compensatory damages only if it found that defendant acted negligently, and

(2) that it could hold defendant liable for presumed damages only if it found that defendant acted with "actual malice."

*Gertz* applies equally to all defendants who speak to the public, regardless of whether they are members of the institutional press.  While the second *Gertz* requirement (that "actual malice" must be shown for presumed damages) applies only to speech on matters of public concern, allegations about criminal fraud against the government by a court-appointed bankruptcy trustee constitute speech on matters of public concern.  Further, the Ninth Circuit has stated that the first *Gertz* requirement (that negligence must be shown for compensatory damages) applies to speech on matters of private concern as well as to speech on matters of public concern.

Second, because plaintiff Kevin Padrick was a court-appointed bankruptcy trustee, he should be treated akin to a public official with regard to claims about his performance of his duties, and the firm in which he is one of two partners should likewise be treated as a public figure with regard to such claims.  The rule of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), therefore applies, and the jury should have been instructed consistent with *New York Times*.

PAGE 6 —    MEMORANDUM IN SUPPORT OF DEFENDANT CRYSTAL COX'S
            MOTION FOR NEW TRIAL AND IN THE ALTERNATIVE FOR
            REMITTUR

Third, a new trial—or at least remittitur—is required because the evidence presented to the jury did not support a conclusion that plaintiffs suffered $2.5 million in damages (whether proven or presumed) from the one post that this Court ruled could form the basis for plaintiffs' lawsuit.

## STATEMENT OF THE CASE

On August 23, 2011, this Court held that nearly all of defendant's Internet blog posts criticizing plaintiffs were constitutionally protected opinion, and that plaintiffs could proceed based only on the December 25, 2010 bankruptcycorruption.com post. *Obsidian Finance Group, LLC v. Cox*, 2011 WL 3734457, *17-*18 (D. Or. Aug. 23, 2011).

On November 28, 2011, this Court orally decided what legal rules would govern the trial, and would be reflected in the jury instructions, and on November 30, 2011, this Court filed its written decision.  Before trial, "Defendant argue[d] that under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), plaintiffs are 'public figures' and as such, they must prove by clear and convincing evidence that defendant published the defamatory statements with 'actual malice,' meaning with knowledge that the statements were false or with a reckless disregard of whether they were false or not." *Obsidian Finance Group, LLC v. Cox*, 2011 WL 5999334, *2 (D. Or. Nov. 30, 2011)."  Defendant also argued that "plaintiffs cannot recover damages without proof that defendant was at least negligent and may not recover presumed damages absent proof of 'actual malice.' *Gertz*, 418 U.S. at 347." *Id.* at *5.

This Court rejected both these arguments, and at trial instructed the jury in accord with its conclusions, thus allowing the jury to impose presumed damages without any showing of negligence or "actual malice." Trial Tr. 199:1-16 (instructing the jury about the elements of the

defamation cause of action, without including any requirement of a finding of negligence or "actual malice"); Trial Tr. 200:12-15 (instructing the jury that it may award presumed damages, without including any requirement of a finding of "actual malice"). The jury returned a verdict of $2.5 million against defendant.

## ARGUMENT

### I.    Defendant Is Entitled to a New Trial Under *Gertz v. Robert Welch, Inc.*

Even if plaintiffs are private figures, *Gertz v. Robert Welch, Inc.* requires at least that (a) defendant should not have been held liable without a jury finding that she was negligent, and (b) defendant should not have been held liable for presumed damages without a jury finding of "actual malice" on her part.

Yet the jury instructions did not require the jury to make such findings, and it is therefore impossible to tell from the verdict whether or not the jury concluded that defendant was negligent and whether or not it concluded that defendant wrote with "actual malice." It is likewise impossible to tell from the verdict form whether the $2.5 million award consisted entirely of proven compensatory damages or included presumed damages—though it seems likely that presumed damages were indeed included, given that even plaintiffs' lawyer argued that "reasonable compensation . . . for the false and defamatory statements that were made" was just "the million dollars that [a witness] referred to," Trial Tr. 192:9-13. A new trial should therefore be granted, at which the jury would be properly instructed about the mental state that they would have to find for an award of compensatory damages and for an award of presumed damages.

A.      *Gertz* **Applies Equally to All Who Speak to the Public, Regardless of Whether They Are Members of the Institutional Press**

Even if plaintiffs were not public figures, defendant was still entitled to the protections of *Gertz v. Robert Welch, Inc.*

The Supreme Court has held that the First Amendment applies equally to the institutional press and to others who speak to the public: "We have consistently rejected the proposition that the institutional press has any constitutional privilege beyond that of other speakers." *Citizens United v. FEC*, 130 S. Ct. 876, 905 (2010) (internal quotation marks omitted).  In support of this holding, the Court favorably quoted five Justices' opinions in a libel case—*Dun & Bradstreet, Inc.* v. *Greenmoss Builders, Inc.*, 472 U.S. 749, 784 (1985) (Brennan, J., joined by Marshall, Blackmun, and Stevens, JJ., dissenting), and *id.* at 773 (White, J., concurring in judgment)—which expressly concluded that "in the context of defamation law, the rights of the institutional media are no greater and no less than those enjoyed by other individuals or organizations engaged in the same activities," *id.* at 784 (a view expressly approved by Justice White, *id.* at 773). And the Court in *Citizens United* went on to specifically mention that its "'reject[ion]'" of any greater protection for the institutional press over other speakers stemmed partly from the realities of the Internet age: "With the advent of the Internet and the decline of print and broadcast media, moreover, the line between the media and others who wish to comment on political and social  issues becomes far more blurred." 130 S. Ct. at 905-06.

Indeed, the principle that the institutional press and others who speak to the public have the same First Amendment rights has been applied by the Court in case after case since the 1930s.  *See, e.g.*, *Lovell v. City of Griffin*, 303 U.S. 444, 452 (1938) (stating that the freedom of the press "embraces pamphlets and leaflets" as well as "newspapers and periodicals," and indeed

"comprehends every sort of publication which affords a vehicle of information and opinion"); *New York Times Co. v. Sullivan*, 376 U.S. 254, 265-66 (1964) (applying the same First Amendment protection to the newspaper defendant and to the non-media defendants who placed an advertisement in the newspaper); *Garrison v. Louisiana*, 379 U.S. 64 (1964) (applying the rule of *New York Times Co. v. Sullivan* to a speaker who was not a member of the institutional press); *Henry v. Collins*, 380 U.S. 356, 357-58 (1965) (same, where the speaker was an arrestee who conveyed statements to the sheriff and to wire services alleging that his arrest stemmed from a "diabolical plot," *Henry v. Collins*, 158 So.2d 28, 31 (Miss. 1963)); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 782 n.18 (1978) (rejecting the "suggestion that communication by corporate members of the institutional press is entitled to greater constitutional protection than the same communication by [non-institutional-press businesses]"); *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669-70 (1991) (concluding that the press gets no special immunity from laws that apply to others, including laws—such as copyright law—that target communication); *Bartnicki v. Vopper*, 532 U.S. 514, 525 & n.8 (2001) (concluding that, in deciding whether defendants could be held liable under statutes banning the redistribution of illegally intercepted telephone conversations, "we draw no distinction between the media respondents and [the non-institutional-media respondent]," and citing *New York Times* and *First Nat'l Bank of Boston* as support for that conclusion).

All the federal circuits that have considered the question have likewise held that the First Amendment defamation rules apply equally to the institutional press and to others who speak to the public. *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 149 (2d Cir. 2000); *Avins v. White*, 627 F.2d 637, 649 (3d Cir. 1980); *Snyder v. Phelps*, 580 F.3d 206, 219 n.13 (4th Cir.

2009), *aff'd*, 131 S. Ct. 1207 (2011); *In re IBP Confidential Bus. Documents Litig.*, 797 F.2d 632, 642 (8th Cir. 1986); *Garcia v. Bd. of Educ.*, 777 F.2d 1403, 1410 (10th Cir. 1985); *Davis v. Schuchat*, 510 F.2d 731, 734 n.3 (D.C. Cir. 1975).  As the Second Circuit put it in *Flamm*, "a distinction drawn according to whether the defendant is a member of the media or not is untenable," even in private-figure cases. 201 F.3d at 149.  And while the Ninth Circuit has not specifically discussed the question, it has indeed cited *Gertz* even where a non-institutional-press speaker was involved.  *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 694 n.4 (9th Cir. 1998) (citing *Gertz* for the proposition that a "private person who is allegedly defamed" must show "that the defamation was due to the negligence of the defendant," in a case where the defendant was not a media organization).

Moreover, the Ninth Circuit's reasoning with regard to the First Amendment newsgatherer's privilege is instructive for First Amendment cases more generally.  In *Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993), the Ninth Circuit confronted the question whether the newsgatherer's privilege applies only to the institutional press or also extends to book authors.  Plaintiffs argued that a person who was writing a book "has no standing to invoke the journalist's privilege because book authors are not members of the institutionalized print or broadcast media." *Id.* at 1293.

But the Ninth Circuit expressly rejected that view.  It found "persuasive" "the Second Circuit's reasoning" that "it makes no difference whether '[t]he intended manner of dissemination [was] by newspaper, magazine, book, public or private broadcast medium, [or] handbill' because '"[t]he press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion."'" *Id.* (alterations in original) (quoting *von*

PAGE 11 —    MEMORANDUM IN SUPPORT OF DEFENDANT CRYSTAL COX'S
MOTION FOR NEW TRIAL AND IN THE ALTERNATIVE FOR
REMITTUR

*Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987), which in turn quoted *Lovell v. City of Griffin*, 303 U.S. 444, 452 (1938)).  And the Ninth Circuit concluded that "[h]ence, the critical question for deciding whether a person may invoke the journalist's privilege is whether she is gathering news for dissemination to the public," *id.*, not whether she is working for the institutional media.

The same reasoning applies to the First Amendment defamation law rules, which are even more clearly secured by First Amendment precedents than are the First Amendment journalist privilege rules.  *See, e.g., McKevitt v. Pallasch*, 339 F.3d 530, 531-32 (7th Cir. 2003) (taking the view that the Supreme Court's First Amendment precedents do not in fact recognize a newsgatherer's privilege).  Anyone who—like defendant—is disseminating material to the public is fully protected by the First Amendment precedents, whether or not she is a "member[] of the institutionalized print or broadcast media."

Moreover, the Supreme Court cases cited above did not turn on whether the defendants were trained as journalists, were affiliated with news entities, engaged in fact-checking or editing, disclosed conflicts of interest, kept careful notes, promised confidentiality, went beyond just assembling others' writings, or tried to get both sides of a story.  *But see Obsidian Finance Group, LLC v. Cox*, 2011 WL 5999334, *5 (D. Or. Nov. 30, 2011) (concluding that the defendant was not protected by *Gertz* because "[d]efendant fails to bring forth any evidence suggestive of her status as a journalist," and that, "[f]or example, there is no evidence of (1) any education in journalism; (2) any credentials or proof of any affiliation with any recognized news entity; (3) proof of adherence to journalistic standards such as editing, fact-checking, or disclosures of conflicts of interest; (4) keeping notes of conversations and interviews conducted;

PAGE 12 —　MEMORANDUM IN SUPPORT OF DEFENDANT CRYSTAL COX'S MOTION FOR NEW TRIAL AND IN THE ALTERNATIVE FOR REMITTUR

(5) mutual understanding or agreement of confidentiality between the defendant and his/her sources; (6) creation of an independent product rather than assembling writings and postings of others; or (7) contacting 'the other side' to get both sides of a story").  The First Amendment fully protects the partisan polemicists in *Citizens United v. FEC*, the political activist in *Bartnicki v. Vopper*, the self-interested bank in *First Nat'l Bank of Boston v. Bellotti*, the disgruntled defendant in *Henry v. Collins*, the elected district attorney in *Garrison*, the activists in *New York Times Co. v. Sullivan*, and the Jehovah's Witness pamphleteers in *Lovell v. City of Griffin*.  It equally fully protects defendant.

In footnotes from a few cases from 1979 to 1990, the Court did leave open the possibility that some of its First Amendment defamation rules would only apply to the institutional press.  *See, e.g.*, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 n.6 (1990).  And a few other courts, including the Oregon Supreme Court, expressly held that such First Amendment defamation rules, and especially the *Gertz v. Robert Welch* protections, apply only to the institutional press.  *See, e.g.*, *Wheeler v. Green*, 593 P.2d 777, 784-85 (Or. 1979).

But while the Oregon Supreme Court's decision establishes what Oregon state libel law is, it is the judgments of the United States Supreme Court that are controlling on the First Amendment question.  The United States Supreme Court has never held that the institutional press enjoys such extra rights.  All the federal courts of appeals that have considered this question have specifically held that the institutional press lacks any such extra rights.  And the Supreme Court's decision in *Citizens United* expressly closed the door that the earlier footnotes left open, making clear that a speaker's First Amendment rights do not turn on whether she is a member of the institutional press.

PAGE 13 —   MEMORANDUM IN SUPPORT OF DEFENDANT CRYSTAL COX'S MOTION FOR NEW TRIAL AND IN THE ALTERNATIVE FOR REMITTUR

**B.      Defendant's Allegations Constituted Speech on Matters of Public Concern**

Publicly made allegations that a person or organization is connected to crime constitute speech on matters of public concern.  *See, e.g.*, *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986) (allegation that a private figure is connected to organized crime relates to a matter of public concern).  Naturally, this is true of allegations of criminal fraud. *See, e.g.*, *Boule v. Hutton*, 328 F.3d 84, 91 (2d Cir. 2003) ("fraud in the art market" is "a matter of public concern"); *Silvester v. ABC*, 839 F.2d 1491, 1493 (11th Cir. 1988) ("allegations of corruption in the American jai alai industry" "clearly address[] matters with which the public has a legitimate concern"; *Brueggemeyer v. Krut*, 684 F. Supp. 471, 473 & n.3 (N.D. Tex. 1988) (accusation of financial fraud by bulk meat operator relates to a matter of public concern).  Likewise, the Ninth Circuit has stated that "allegations of . . . fraud" within a government program are one of the "indicia of public concern."  *Weeks v. Bayer*, 246 F.3d 1231, 1233 (9th Cir. 2001).  That would surely apply to allegations of tax fraud against the government, and to allegations of fraud by a court-appointed bankruptcy trustee.

Indeed, the Ninth Circuit has even applied *Gertz* to a consumer complaint about the owners of a small business refusing to give a refund to a customer who had bought an allegedly defective product.  *Gardner v. Martino*, 563 F.3d 981, 989 (9th Cir. 2009) (treating such speech as a matter of public concern "even assuming [plaintiffs] are private figures").  Similarly, the Ninth Circuit treated speech alleging supposedly excessive rent charged by a mobile home park operator as part of "'public debate,'" *Manufactured Home Communities, Inc. v. County of San Diego*, 544 F.3d 959, 963 (9th Cir. 2008), and as being on a matter of public concern, *id.* at 966 (Callahan, J., dissenting) ("agree[ing] with the majority" that the claims of defendant's "rent

PAGE 14 —     MEMORANDUM IN SUPPORT OF DEFENDANT CRYSTAL COX'S
MOTION FOR NEW TRIAL AND IN THE ALTERNATIVE FOR
REMITTUR

increases and operation of the mobile home park were issues of public concern").   *A fortiori*, allegations of outright criminal fraud would be still more a matter of public concern.

All this remains so even if there is no public controversy yet on the subject, and the author is only trying to get the public interested.  The absence of an existing controversy may be relevant to whether the plaintiff is a *public figure*, *see Hutchinson v. Proxmire*, 443 U.S. 111, 134-35 (1979), but not to whether the speech is on a matter of *public concern*.  *See, e.g.*, *Gardner*, 563 F.3d at 989 (applying *Gertz* even in the absence of any preexisting public controversy); *Straw v. Chase Revel, Inc.*, 813 F.2d 356, 361-62 (11th Cir. 1987) (holding that defendant's speech was on a matter of public concern, even though the plaintiff was not a public figure, and even though defendant's speech did not address a preexisting public controversy). "It is extremely important to keep the 'matters of public concern' standard articulated in *Dun & Bradstreet* separate from the term of art 'public controversy' used as part of the vortex public figure test in *Gertz*.  By definition, any person who is a private figure plaintiff *has already failed to voluntarily thrust himself into a public controversy*; otherwise, that plaintiff would be deemed a public figure."  1 RODNEY A. SMOLLA, LAW OF DEFAMATION § 3:20, at 3-38.5 (2d ed. 2011). The private figure/public concern speech category thus consists largely of cases where there has not yet been enough of a public controversy to make plaintiff a limited purpose public figure, but the subject is a topic—such as fraud—with which the public could reasonably become concerned.

Indeed, a publication that is the first to try to alert the public to alleged misconduct may often contribute more to public debate than publications that come out after the controversy has arisen, and the public is already interested. To be sure, either kind of publication, if false, could

lead to libel liability under the proper First Amendment standards. But there is no reason for treating the first allegation—which is trying to break the story—as being any less protected by the First Amendment than subsequent allegations that are published after the story has broken.

Moreover, the reasons the *Dun & Bradstreet* Court gave for treating a statement as being on a purely private matter do not apply in this case. Defendant's speech here was not "solely in the individual interest of the speaker and its specific business audience," 472 U.S. at 762. Unlike the credit report in *Dun & Bradstreet*, the speech was not focused on conveying financially valuable information. The speech was spoken to the public at large, rather than, as in *Dun & Bradstreet*, being "available to only five subscribers, who, under the terms of the subscription agreement, could not disseminate it further," *id.* Indeed, the premise of plaintiffs' claims of damage was precisely that the speech was widely available.

The speech at issue in this case was not, "like advertising," "solely motivated by the desire for profit," *id.*, or "hardy and unlikely to be deterred by incidental state regulation," *id.* Blog posts such as defendant's do not generally stem from a profit motive, and are indeed quite likely to be deterred by the threat of $2.5 million in damages. The *Dun & Bradstreet* opinion noted that the "incremental 'chilling' effect of libel suits would be of decreased significance," *id.* at 763, when it comes to credit reports. But the chilling effect of libel suits would be of great significance to bloggers who are posting about what they believe to be tax fraud by others. Nor are statements about possible fraud by third parties as "objectively verifiable," *id.* at 762, as are claims about whether a company has filed for bankruptcy (the false statement in *Dun & Bradstreet* itself).

PAGE 16 —    MEMORANDUM IN SUPPORT OF DEFENDANT CRYSTAL COX'S
MOTION FOR NEW TRIAL AND IN THE ALTERNATIVE FOR
REMITTUR

C.    **Ninth Circuit Precedent Establishes That the *Gertz* Requirement of a Showing of Negligence Applies Even in Private Concern Cases**

Even if plaintiffs were properly found to be private figures, and defendant was properly found to have spoken on a matter of purely private concern, the jury should have been instructed that it could only hold defendant liable if she was negligent.  As the Ninth Circuit stated in *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 694 n.4 (9th Cir. 1998), "when a publication involves a private person and matters of private concern," *Gertz* provides that "[a] private person who is allegedly defamed concerning a matter that is not of public concern need only prove, in addition to the requirements set out by the local jurisdiction, that the defamation was due to the negligence of the defendant."

*Newcombe* is a post-*Dun & Bradstreet* case, and is consistent with *Dun & Bradstreet*. *Dun & Bradstreet* held only that "permitting recovery of presumed and punitive damages in defamation cases absent a showing of 'actual malice' does not violate the First Amendment when the defamatory statements do not involve matters of public concern." 472 U.S. at 763 (opinion of Powell, J.). *Dun & Bradstreet* did not deal with the other half of *Gertz*—the Court's ruling "against strict liability" in requiring that states "not impose liability without fault." 418 U.S. at 347 & n.10.

And this continued rejection by the Ninth Circuit of strict liability even in private concern/private figure defamation cases is also consistent with broader First Amendment precedents. *Gertz*'s limitation on presumed and punitive damages—the matter at issue in *Dun & Bradstreet*—is an exception to the usual First Amendment principle that the type of liability (criminal liability, punitive damages, presumed damages, or compensatory damages) usually does not affect whether imposing liability for speech is constitutional.  *See, e.g., Smith v. United*

PAGE 17 —    MEMORANDUM IN SUPPORT OF DEFENDANT CRYSTAL COX'S MOTION FOR NEW TRIAL AND IN THE ALTERNATIVE FOR REMITTUR

*States*, 431 U.S. 291 (1977) (upholding criminal liability in an obscenity case, despite Justice Stevens' argument in dissent that obscene material should be subject only to civil constraints and not criminal punishment). *Dun & Bradstreet* simply narrowed the scope of this unusual limitation on liability.

But *Gertz*'s prohibition on strict liability in libel cases is not an exception; rather, it is the application of a consistent and broadly applicable First Amendment rule. *See, e.g.*, *Smith v. California*, 361 U.S. 147, 152 (1959) (holding that strict liability is forbidden in criminal obscenity cases); *Manual Enters., Inc. v. Day*, 370 U.S. 478, 492-93 (1962) (opinion of Harlan, J.) (interpreting civil obscenity statute as forbidding strict liability because such strict liability would pose serious constitutional problems); *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (requiring a highly culpable *mens rea* in incitement cases); *New York v. Ferber*, 458 U.S. 747, 764-65 (1982) (holding that strict liability is forbidden in child pornography distribution cases); *Virginia v. Black*, 538 U.S. 343, 359 (2003) (requiring a highly culpable *mens rea* in threat cases, as interpreted by *United States v. Bagdasarian*, 652 F.3d 1113, 1116-18 (9th Cir. 2011)); *United States v. United States District Court*, 858 F.2d 534, 540-41 (9th Cir. 1988) (holding that strict liability is forbidden even in child pornography production cases); *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1035, 1037 (9th Cir. 1991) (rejecting strict liability and even negligence liability for physical injuries caused by incorrect information in a mushroom encyclopedia because of a concern that such liability would be inconsistent with the First Amendment); *Lerman v. Flynt Distrib. Co., Inc.*, 745 F.2d 123, 138 (2d Cir. 1984) (holding that imposing strict liability under the false light invasion of privacy tort would be unconstitutional); *American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 611 (6th Cir. 2005) (rejecting

PAGE 18 —   MEMORANDUM IN SUPPORT OF DEFENDANT CRYSTAL COX'S
MOTION FOR NEW TRIAL AND IN THE ALTERNATIVE FOR
REMITTUR

strict liability under a city ordinance making it a misdemeanor to participate in a march for which the proper permits have not been gotten).

Moreover, the prohibition on strict liability applies in civil cases, *see, e.g.*, *Manual Enters., Inc. v. Day*; *Gertz v. Robert Welch, Inc.*; *Winter v. G.P. Putnam's Sons*; *Lerman v. Flynt Distrib. Co.*, and in cases that involve speech that is not on matters of public concern.  The Supreme Court in *New York v. Ferber* and the Ninth Circuit in *United States v. United States District Court* concluded that the bar on strict liability applies even to mistakes of age in child pornography cases, despite the likelihood that strict liability in such cases would only chill adult pornography—hardly speech on "matters of public concern."  *See San Diego v. Roe*, 543 U.S. 77, 83-84 (2004) (treating pornographic videos as not being speech on "a matter of public concern").  Likewise, the Ninth Circuit in *Newcombe* was correct in stating that the bar on strict liability is applicable even to libel claims based on allegations on matters of purely private concern. 157 F.3d at 694 n.4.  The undue chill on true allegations that would be imposed by strict liability in such libel cases is at least as unconstitutional as the undue chill on adult pornography that would be imposed by strict liability in child pornography cases.

## II.  Defendant Is Entitled to a New Trial Under *New York Times Co. v. Sullivan*

A new trial should also be granted because plaintiffs were tantamount to public officials with respect to plaintiff Padrick's activity as bankruptcy trustee, and *New York Times Co. v. Sullivan* therefore mandates that the defendant could be held liable only based on a jury finding of "actual malice."  Because the jury instructions did not require the jury to make such findings, a new trial should be granted.

PAGE 19 —    MEMORANDUM IN SUPPORT OF DEFENDANT CRYSTAL COX'S
MOTION FOR NEW TRIAL AND IN THE ALTERNATIVE FOR
REMITTUR

Plaintiff Padrick, a partner in plaintiff Obsidian Finance Group, was not just a lawyer or a businessperson. He was a court-appointed trustee who had the power to exercise court-delegated governmental authority. Bankruptcy trustees perform such "an integral part of the judicial process" that they are even "entitled to derived judicial immunity," *Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir. 1986); and this reflects the fact that they "serve an important function as officers of the court," *In re Kids Creek Partners, L.P.*, 248 B.R. 554, 559 (Bankr. N.D. Ill.), *aff'd*, 2000 WL 1761020 (N.D. Ill. Nov. 30, 2000), and have extensive powers and responsibilities stemming from their governmental appointment. *See, e.g.*, 11 U.S.C. §§ 704(a), 1106(a).

Plaintiff Padrick was thus in effect akin to a special-purpose public official, and such court-appointed decisionmakers are treated the same as public figures for purposes of commentary on their behavior. For instance, in *HBO v. Harrison*, 983 S.W.2d 31, 37-38 (Tex. Ct. App. 1998) (italics omitted), the court held that the *New York Times Co. v. Sullivan* standard applied in a defamation case brought by a "court-appointed psychologist" who had "the power to determine visitation" between a parent and her child.

Similarly, in *Bandelin v. Pietsch*, 563 P.2d 395, 398 (Idaho 1977), the court held that the *New York Times Co. v. Sullivan* standard applied in a defamation case brought by a "court-appointed guardian" who was "a pivotal figure" in the accounting of an estate. The court recognized "that a citizen's participation in community and professional affairs" (such as Elmer Gertz's participation in civic affairs, discussed in *Gertz*) does not alone make him a public figure. And the court recognized that even a person's past holding of a political office does not alone make him a public figure after he has given up that office (which is what had happened in

PAGE 20 —    MEMORANDUM IN SUPPORT OF DEFENDANT CRYSTAL COX'S
MOTION FOR NEW TRIAL AND IN THE ALTERNATIVE FOR
REMITTUR

*Bandelin*).    But the court concluded that when the defendant became a "court-appointed guardian," he became tantamount to a public official for *New York Times Co. v. Sullivan* purposes with respect to allegations based on his exercise of his court-appointed position.

Defendant should have likewise been entitled to the protections of *New York Times Co. v. Sullivan* with regard to her allegations about the actions of plaintiff Padrick in his capacity as court-appointed trustee.    And those protections extend without regard to whether defendant was a member of the media: The Supreme Court has repeatedly applied the *New York Times* rule to non-media speakers, including to the authors of the advertisement in *New York Times Co. v. Sullivan* itself, to the elected district attorney in *Garrison v. Louisiana*, and to the arrestee in *Henry v. Collins.  See also Wheeler*, 593 P.2d at 785 ("We conclude that all defendants, not only those associated with the media, continue to be protected by the *New York Times* rule in cases involving comment upon public officials and public figures.").

Moreover, plaintiff Obsidian Finance, the company in which Kevin Padrick was one of two partners and which served as the springboard for Padrick's appointment, should have the same First Amendment status as Kevin Padrick has.  Commentary on Padrick's performance and qualities would necessarily implicate Obsidian's qualities; to the extent that First Amendment law protects criticism of Padrick, it should likewise protect criticism of Obsidian.  *See Schwartz v. Worrall Publications Inc.*, 610 A.2d 425, 426, 432 (N.J. Super. Ct. App. Div. 1992) (concluding, in a case involving a lawsuit brought by a lawyer and the firm in which he was one of at least three partners, "that the status of Schwartz as a public figure extends to his law firm in these circumstances, and therefore the reasons why [plaintiff was entitled to a particular First Amendment rule as to Schwartz] apply equally to his law firm").

PAGE 21 —    MEMORANDUM IN SUPPORT OF DEFENDANT CRYSTAL COX'S
                    MOTION FOR NEW TRIAL AND IN THE ALTERNATIVE FOR
                    REMITTUR

**III.    The Defendant is Entitled to a New Trial, or at Least to Remittitur, Because the Damages Award Was Not Supported by the Evidence**

Finally, a new trial—or, at least, remittitur—is also necessary because there is no evidence in the record to support a conclusion that plaintiffs suffered $2.5 million in damages from the blog post that formed the basis of this lawsuit, or even that they could be presumed to have suffered such damages. *See Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1319 (11th Cir. 1990) (reducing a presumed damages awards in light of the fact that the injury to the plaintiff's reputation came in part from sources other than defendant's actionable statements); *Oliver v. Burlington Northern, Inc.*, 531 P.2d 272, 274 (Or. 1975) (approving a trial court's decision to order remittitur, and, in the alternative, a new trial, when the judge concluded that there was no "rational basis for the verdict returned").

As this court correctly held, *Obsidian Finance Group, LLC v. Cox*, 2011 WL 3734457 (D. Or. Aug. 23, 2011), the great majority of defendant's blog posts critical of plaintiffs were protected by the First Amendment; none of the posts other than the December 25, 2010 bankruptcycorruption.com post could form the basis of this defamation lawsuit. But plaintiffs never established that any damage flowed from that potentially constitutionally unprotected post, as opposed to the opinion posts or the copy of that post that appeared on the obsidianfinancesucks.com site. *See id.* at *17 (noting that the placement of the post on bankruptcycorruption.com, as opposed to obsidianfinancesucks.com, was part of the basis for the conclusion that the post was not simply constitutionally protected opinion).

Indeed, plaintiffs' witness Patricia Whittington expressly said that she did not know whether any of the damage flowed from that particular post. *See, e.g.*, Trial Tr. 109:9-11, 110:24-111:5, 119:16-21. Likewise, plaintiffs' most specific evidence of a lost business

PAGE 22 —    MEMORANDUM IN SUPPORT OF DEFENDANT CRYSTAL COX'S MOTION FOR NEW TRIAL AND IN THE ALTERNATIVE FOR REMITTUR

opportunity—the inability to get a $10 million bank loan—expressly pointed to a bank employee's reading many posts, which must have included at least some of the constitutional protected opinion: David Brown testified that the bank employee said he was concerned about "various blog postings that he had come across." Trial Tr. 161:20-25.  And plaintiffs' inference that the decline in the advisory business was caused by defendant's speech specifically rested on posts on multiple Web sites, not limited to bankruptcycorruption.com. Trial Tr. 186:5 (closing argument) ("She posted on numerous websites.").

Thus, even if there is a basis for concluding that defendant's posts criticizing plaintiffs inflicted $2.5 million in damages, there is no basis for the jury's conclusion that this entire sum stemmed from the one post that this Court found to be potentially constitutionally unprotected, as opposed to the many posts that this Court found to be constitutionally protected.

## CONCLUSION

For each of the reasons given above, a new trial should be ordered.

DATED this 4th day of January, 2012.

Respectfully submitted,

s/ Benjamin N. Souede
BENJAMIN N. SOUEDE, OSB No. 081775
(503) 954-2232

EUGENE VOLOKH
Motion for *pro hac vice* appearance pending
(310) 206-3926

Attorneys for Defendant Crystal Cox