Richard D. Mc Leod (SBN 022346)
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Ste. 1600
Portland, OR  97204
Telephone:  (503) 595-5300
Facsimile:  (503) 595-5301
richard.mcleod@klarquist.com

Matthew J. Zimmerman, Esq. (*pro hac vice pending*)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone:  (415) 436-9333
Facsimile:   (415) 436-9993
mattz@eff.org

Attorneys for *Amicus Curiae*
Electronic Frontier Foundation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| Obsidian Finance Group, LLC, *et al*.,<br><br>                              Plaintiffs,<br><br>     v.<br><br>Crystal Cox,<br><br>                              Defendant. | CASE NO. 3:11-cv-00057-HZ<br><br>***AMICUS CURIAE* BRIEF OF THE ELECTRONIC FRONTIER FOUNDATION IN SUPPORT OF DEFENDANT CRYSTAL COX'S MOTION FOR NEW TRIAL AND IN THE ALTERNATIVE FOR REMITTUR** |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   INTEREST OF *AMICUS* ............................................................................................ 1

III.  BACKGROUND ........................................................................................................ 1

IV.   ARGUMENT .............................................................................................................. 3

    A.    The Court Failed to Instruct the Jury that It Must Find the Defendant at Least Negligent In Order to Find Her Liable for Defamation. ..........................................3

    B.    The Jury's Award Was Excessive and Lacked an Evidentiary Foundation. ...........5

    C.    The Court's Additional Erroneous Findings Regarding the Defendant's Media Status Amplified the Impact of the Improper Jury Instruction and Threatens to Further Chill Speech. .........................................................................7

V.    CONCLUSION........................................................................................................... 9

i

# TABLE OF AUTORITIES

## Federal Cases

*Citizens United v. Fed. Election Comm'n*,
    130 S. Ct. 876 (2010) .................................................................................................. 4

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
    472 U.S. 749 (1985) .................................................................................................... 4

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ......................................................................................... 3, 4, 5, 9

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998) ....................................................................................... 5

*Schiavone Const. Co. v. Time, Inc.*,
    847 F.2d 1069 (3d Cir. 1988) ...................................................................................... 5

*Siebrand v. Gossnell*,
    234 F.2d 81 (9th Cir. 1956) ......................................................................................... 6

*Southern Pacific Co. v. Guthrie*,
    186 F.2d 926 (9th Cir. 1951) ....................................................................................... 6

## State Cases

*Oliver v. Burlington Northern*,
    271 Or. 214 (Ore. 1975) .............................................................................................. 5

*Rosa v. Burlington Northern*,
    277 Or. 683 (Ore. 1977) .............................................................................................. 5

*Wheeler v. Green*,
    286 Or. 99 (Ore. 1979) ................................................................................................ 7

## State Statutes

O.R.S. § 31.215 ................................................................................................................... 7

O.R.S. § 44.510(2) .............................................................................................................. 8

O.R.S. § 44.520 ................................................................................................................... 8

O.R.S. § 44.530(3) .............................................................................................................. 8

ii

## I.   INTRODUCTION

The jury's verdict of November 29, 2011, finding the Defendant Crystal Cox liable for $2.5 million in defamation damages, is troubling not only because of the erroneous defamation standard applied and because of the excessively high award but also because of the speech-chilling message it sends to the broader Internet community.  The First Amendment protects all speakers, not just the press, from strict defamation liability.  Moreover, protected-though-critical speech cannot be the basis for a verdict reached by a sympathetic jury.  Especially when read in light of the Court's (unnecessary and erroneous) additional rulings regarding if and how online speakers can earn an elevated "media" or "press" status, these findings paint an unnecessarily risky legal landscape for such speakers in the district, one at odds with the First Amendment and Oregon law.  Accordingly, the jury's verdict should be overturned and a new trial granted.  Moreover, *amicus* urges the Court to additionally reconsider its rulings denying the Defendant the protections of Oregon's retraction and shield law statutes.

## II.   INTEREST OF *AMICUS*

The Electronic Frontier Foundation ("EFF") is a donor-supported membership organization working to protect fundamental rights regardless of technology; to educate the press, policymakers, and the general public about civil liberties issues related to technology; and to act as a defender of those liberties.  EFF currently has over 16,000 donating supporters worldwide, and over 150,000 subscribers to EFFector, its email newsletter, including over 1,300 subscribers in Oregon.  Among its various activities, EFF opposes misguided legislation, initiates and defends court cases preserving individuals' rights, launches global public campaigns, introduces leading edge proposals and papers, hosts frequent educational events, engages the press regularly, and publishes a comprehensive archive of digital civil liberties information on one of the most linked-to web sites in the world at www.eff.org.

## III.   BACKGROUND

On January 14, 2011, Plaintiffs Kevin D. Padrick and Obsidian Finance Group, LLC, filed a defamation suit against Crystal Cox, a self-described "Investigative Blogger," for

1

statements appearing on web sites operated by Cox such as www.obsidianfinancesucks.com. Compl. at ¶ 9. The allegedly defamatory statements attributed to Cox included ones accusing Padrick of all manner of misconduct such as committing "tax fraud," of being "corrupt," of paying off media and politicians, of "illegal activities," "deceit on the government," "money laundering," "defamation," and "harassment," even going so far as asking whether "Padrick hire[d] a hitman to kill" her. Compl. at ¶ 8. Plaintiffs alleged in their Complaint that "Defendant knowingly and intentionally published the false and defamatory statements alleged above with actual knowledge of their falsity or with actual malice or reckless disregard for the truth or falsity of the statement." Compl. at ¶ 10.

In orders issued on July 7, 2011 and August 23, 2011, the Court denied Plaintiffs' motion for summary judgment and granted in part Cox's own motion for summary judgment as to all blog posts other than to a December 25, 2010, blog post appearing on the "bankruptcycorruption.com" website in which the Court determined that Cox made statements that "contain or imply an assertion of objective facts" and thus capable of defamatory meaning. *See* Order of July 7, 2011, at 14 (Dkt. 26); Order of August 23, 2011, at 25-30 (Dkt. 31).

In a pre-trial hearing held on November 30, 2011, the Court rejected a series of defenses asserted by Cox, ruling that:

- "Because the statements at issue in this case were posted on an Internet blog, they do not fall under Oregon's retraction statutes." (Order of November 30, 2011, at 2) (Dkt. 95);

- Cox was not entitled to the protection of the Oregon shield law because she "fail[ed] to show that she is affiliated with any newspaper, magazine, periodical, book, pamphlet, news service, wire service, news or feature syndicate, broadcast station or network, or cable television system," and that even if she was a member of the "media" as described above, "[b]ecause this case is a civil action for defamation, defendant cannot rely on the media shield law." (*Id.* at 3); and

2

- Cox did not qualify for "media" status as a First Amendment matter since she "fail[ed] to bring forth any evidence suggestive of her status as a journalist" and thus "I decline to conclude that defendant in this case is 'media,' triggering the negligence standard." (*Id.* at 9).

On November 29, 2011, the jury returned a verdict in favor of the Plaintiff, finding Cox liable to Plaintiff Obsidian Finance Group LLC for damages of $1,000,000 and liable to Plaintiff Kevin Padrick for damages of $1,500,000. *See* Verdict of November 29, 2011 (Dkt. 93).

### IV.  ARGUMENT

Under the First Amendment, contrary to the Court's Order of November 30, 2011, a successful defamation action requires at least a showing of negligence, regardless of the "media" status of the defendant. As the jury found Cox liable for defamation pursuant to jury instructions that did not include such a limitation, the verdict must be overturned and a new trial granted. Moreover, the jury's award – $2.5 million based on a single blog post, undifferentiated from the myriad other allegedly defamatory posts that the Court eventually found to be protected speech under the First Amendment – was excessive and unsupported by sufficient evidence and thus cannot stand. Combined with the other overreaching rulings regarding Cox's media status, these errors will leave online speakers in the district unnecessarily and unconstitutionally chilled. Defendant's motion should be granted.

**A.  The Court Failed to Instruct the Jury that It Must Find the Defendant at Least Negligent In Order to Find Her Liable for Defamation.**

In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), the Supreme Court identified a constitutional floor regarding the intent requirement in defamation claims, holding that "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." *Gertz* at 347. Noting that "erroneous statement of fact" is "inevitable in free debate," and that "punishment of error runs the risk of inducing a cautious and restrictive exercise of the constitutionally guaranteed freedoms of speech and press," the Court gave States

3

broad latitude to achieve their legitimate objectives of protecting private individuals but drew a firm line barring strict liability statutes because of the inevitable chilling effect: "Our decisions recognize that a rule of strict liability that compels a publisher or broadcaster to guarantee the accuracy of his factual assertions may lead to intolerable self-censorship." *Id*. at 340. Fashioned in a pre-Internet context (addressing a defamation claim concerning a traditional magazine publisher), and couched in terms of "media," "press," "broadcasters," and "publishers," the *Gertz* Court nonetheless did not limit its ruling to the "media" per se. Rather, the Court addressed a factual claim before it that involved the (then relatively expensive and limited) ability to "broadcast" a message to a sizable audience, an ability that is now not just commonplace but ubiquitous.

If *Gertz* left doubt as to whether the rule precluding strict defamation liability applied to all defendants and was not limited to the institutional press, the Supreme Court subsequently backed off any suggestion to the contrary. *See*, *e.g.*, *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 773 (1985) ("[T]he First Amendment gives no more protection to the press in defamation suits than it does to others exercising their freedom of speech. None of our cases affords such a distinction; to the contrary, the Court has rejected it at every turn.") (White, J., concurring); *id*. at 783 (Brennan, Marshall, Blackmun, and Stevens, JJ., dissenting) ("[T]he argument that *Gertz* should be limited to the media misapprehends our cases. We protect the press to ensure the vitality of First Amendment guarantees. This solicitude implies no endorsement of the principle that speakers other than the press deserve lesser First Amendment protection."). Indeed, in its 2010 *Citizens United v. FEC* decision, the Supreme Court strongly reaffirmed that it has "consistently rejected the proposition that the institutional press has any constitutional privilege beyond that of other speakers," explicitly noting how the emergence of the Internet has all but eroded any basis to support such an untenable distinction. *Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876, 905 (2010). *See also id*. at 905-06 ("With the advent of the Internet and the decline of print and broadcast media, moreover, the line between the media and others who wish to comment on political and social issues becomes far more blurred.").

While agreement is not uniform across all circuits, the Ninth Circuit has plainly interpreted *Gertz* to require at least a showing of negligence as an element of any defamation claim. *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 695 n.4 (9th Cir. 1998) ("A private person who is allegedly defamed concerning a matter that is not of public concern need only prove, in addition to the requirements set out by the local jurisdiction, that the defamation was due to the negligence of the defendant.") (citing *Gertz*). *Accord, e.g., Schiavone Const. Co. v. Time, Inc.*, 847 F.2d 1069, 1077 n.5 (3d Cir. 1988) ("[S]tates may not impose liability without fault, even if the injured party is a private figure and does not involve a matter of public concern.") (citing *Gertz*). Without a constitutional basis for enforcing the artificial distinction between media and non-media defendants, this Court should have recognized the negligence "floor" and instructed the jury in this case accordingly. As the Court explicitly refused to do so (*see* Order of November 30, 2011, at p.9) and allowed the jury to return a verdict without such an element, the verdict must be overturned and a new trial ordered.

### B.   The Jury's Award Was Excessive and Lacked an Evidentiary Foundation.

EFF also agrees with the Defendant that the jury's damages award was unsupported by the evidence, providing a separate basis requiring the Court to grant a new trial. Trial courts may grant remittitur if a jury award "is so unreasonably high as to 'exceed any rational appraisal,'" is "outrageous, shocking or monstrous," or "so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate." *Rosa v. Burlington Northern*, 277 Or. 683, 687 (Ore. 1977) (citing *Oliver v. Burlington Northern*, 271 Or. 214 (Ore. 1975)). Such is the case here.

Plaintiffs assert that the harm inflicted by the Defendant was the result of hundreds of disparaging blog posts made across a multitude of time and across dozens of sites: "Every time someone gets on the Internet and uses a search engine such as Google to research Kevin Padrick or Obsidian Finance, what they immediately find is that Padrick and Obsidian are being accused of serious criminal and civil misconduct on literally dozens of websites." Plaintiffs'

5

Memorandum In Opposition to *Sua Sponte* Motion for Summary Judgment filed July 22, 2011, at p.2 (Dkt. 27). *See also id.* at p.13 ("Defendant Cox has falsely stated to potentially millions of Internet users that Padrick and Obsidian have engaged in criminal and civil misconduct."). However, the Court granted Cox's motion for summary judgment as to all blog posts (and web sites) save one: a single post from December 25, 2010, that appeared on the www.bankruptcycorruption.com web site. *See* Supplemental Opinion & Order of August 23, 2011, at 24-31 (Dkt. 31). While recognizing the highly critical and caustic nature of many of the allegedly defamatory statements, the Court ultimately found that all but one of the posts amounted to, at worst, hyperbolic expression that a reasonable fact-finder could not interpret as provably false assertions (and thus protected speech).

No evidence in the record supports a finding that Plaintiffs suffered $2.5 million in damages due exclusively to the single blog post of December 25, 2010. Rather, the evidence appears only to indicate that the reputational harm alleged by Plaintiffs was exclusively or primarily the result of protected speech. That search engines such as Google may highlight and prioritize the Defendant's protected though critical statements in a manner the Plaintiffs may (understandably) find to be unfortunate or unfair is of no legal consequence to a defamation award. Indeed, that the jury appears to have shared the Plaintiffs' aversion to Cox's writings similarly cannot excuse an award that is contradicted by the evidence. *See*, *e.g.*, *Siebrand v. Gossnell*, 234 F.2d 81, 94 (9th Cir. 1956) (trial court may "grant a new trial when he is of opinion the verdict is against the weight of evidence …") (citing *Southern Pacific Co. v. Guthrie*, 186 F.2d 926, 932 (9th Cir. 1951), *Bradley Mining Co. v. Boice*, 194 F.2d 80, 83 (9th Cir. 1951)). The excessiveness of and lack of an evidentiary for the jury's award warrants a new trial.

6

### C. The Court's Additional Erroneous Findings Regarding the Defendant's Media Status Amplifies the Impact of the Improper Jury Instruction and Threatens to Further Chill Speech.

*Amicus* is concerned not only with the improper application of First Amendment standards to the Internet speaker in the immediate case but also with the message that the Court's rulings will send to the broader Internet community. Combined with the pre-trial rulings filed by the Court on November 30, 2011, they together threaten to chill speech in contravention of the First Amendment. Therefore, in addition to granting Defendant's motion for a new trial, *amicus* strongly urge the Court to reconsider two of its previous First Amendment decisions regarding the Defendant's "media" status.

First, contrary to the Court's decision, Oregon's retraction statute should be interpreted to extend to Internet periodicals such as Defendant's blogs. O.R.S. § 31.215 prohibits the recovery of general damages absent a demand for a retraction (that is subsequently ignored) for "defamatory statement[s] published or broadcast in a newspaper, magazine, other printed periodical, or by radio, television or motion pictures." Passed decades before the advent of the public Internet, this statutory list appears to reflect the legislature's desire to identify and encompass all manner of publication channels, not a desire to pick and choose communications made pursuant to certain technologies per se. Rather, the legislature's public policy goal was to encourage the publication of retractions of defamatory statements and to therefore reduce litigation and preserve judicial economy by reducing lawsuits. As the Oregon Supreme Court has noted, the retraction statute is "loosely drafted" and that the "legislature probably intended" that the protections be afforded "to those involved in the process of publishing or broadcasting." *Wheeler v. Green*, 286 Or. 99, 123 (Ore. 1979). That is, "publishers" are afforded the statutory opportunity for retraction as "[i]t is the 'publisher' in that sense who has the power to determine whether or not a correction or retraction shall be printed or broadcast. *Id*. As Internet publication is no different in this sense than the broad publication methods identified the statute, it too should be afforded the same opportunities and protections. Applying the statute to Cox's

7

Internet posts, as a retraction demand was not issued by the Plaintiffs, the ability to seek general damages should have been precluded.

Second, the Court's finding that Cox was not "affiliated with any newspaper, magazine, periodical, book, pamphlet, news service, wire service, news or feature syndicate, broadcast station or network, or cable television system" and "thus, she is not entitled to the protections of the [shield] law in the first instance" was unnecessary to reach and erroneous as a matter of law. Order of November 30, 2011, at p.3 (Dkt. 95). O.R.S. § 44.520 states that "[n]o person … engaged in any medium of communication to the public shall be required by a … judicial officer or body … to disclose … [t]he source of any published or unpublished information obtained by the person in the course of gathering, receiving or processing information for any medium of communication to the public." By gathering information and directing her analysis and commentary to the public – even if it contained factual assertions that were incorrect, and even if some statements were defamatory – Cox was certainly "engaged in [a] medium of communication to the public" and thus afforded the protection. The definition of "medium of communication" was left deliberately broad (and non-exclusive) by the Oregon legislature: "'[m]edium of communication' is broadly defined as including, but not limited to, any newspaper, magazine or other periodical, book, pamphlet, news service, wire service, news or feature syndicate, broadcast station or network, or cable television system." O.R.S. § 44.510(2). There can be no question that Internet publication qualifies for protection under the statute, and that individuals engaged in such publication directed at the public should be afforded the statute's protections.

The Court ultimately should not have ruled on the question, and thus should have refrained from issuing its controversial dicta regarding whether Cox's status as an Internet publisher precluded her from the shield law's protection, because the source of Cox's statements were not at issue. In her Objection to Plaintiff's FRCP 37 Motion to Compel, filed November 14, 2011 (Dkt. 66), for example, Cox disclaims a proper reliance on the shield law, identifying and explaining the source of her statements and noting that that source "has nothing to do with

8

the blog post I am on trial for." *Id*. at p.3.[1]  Accordingly, the question of the scope of the shield law's protection should have been left for another day and for a situation in which a true controversy exists.

Taken together with the Court's ruling regarding the appropriate intent requirement and the jury's excessive verdict, these findings paint an increasingly and unnecessarily hostile landscape for online speech, one that may discourage such speakers or lead them to engage in the type of "intolerable self-censorship" decried by the Supreme Court in *Gertz*.  Not only may they be subject to strict defamation liability and disproportionate damages awards based on search engine placement, independent online publishers may be denied the opportunity to limit their damages (pursuant to the retraction statute) and compelled to produce their sources even though they fall within the letter and spirit of the shield law.  In addition to granting a new trial, *amicus* urges the Court to reconsider the broader holdings discussed above in order to ensure that speech is not unduly restrained in this new medium.

## V.    CONCLUSION

While the scope of the First Amendment protections afforded to Internet journalists is a salient and important question, here the primary question was not whether "a self-proclaimed 'investigative blogger' is considered 'media' for the purposes of applying a negligence standard in a defamation claim" but whether *all* speakers enjoy the same affirmative First Amendment protections regardless of media status.  Order of November 30, 2011, at p.9.  *Amicus* supports Defendant's motion for a new trial because the proper defamation standard was not applied below and because the jury verdict was excessive.  Moreover, *amicus* believes that the question of Defendant's "media" status unfortunately and improperly emerged to overshadow the merits

---

[1] The Court found a separate (erroneous) ground on which it held that O.R.S. § 44.520 did not apply, asserting that O.R.S. § 44.530(3) precluded the application of the shield law in defamation actions.  This provision is only invoked, however, when a defendant "asserts a defense based on the content or source of such information."  As Cox effectively disavowed the defense, however, and as her source had been identified, the question was moot.  Or put another way, Cox "[could] not rely on the media shield law" but for a different reason:  the shield law protects sources and does not immunize speakers from liability.

of the case to the detriment of both the Defendant and of Internet publishers generally. Accordingly, *amicus* respectfully asks the Court to grant Defendant's motion for a new trial and to reconsider its rulings of November 30, 2011, as to the applicability of Oregon's retraction statute and shield law.

Respectfully submitted,

Dated:  January 11, 2012          By:  /s/ *Richard D. Mc Leod*

Richard D. Mc Leod (SBN 022346)
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Ste. 1600
Portland, OR  97204
Telephone:  (503) 595-5300
Facsimile:  (503) 595-5301
richard.mcleod@klarquist.com

Matthew J. Zimmerman, Esq. (*pro hac vice pending*)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone:  (415) 436-9333
Facsimile:   (415) 436-9993
mattz@eff.org

Attorneys for *Amicus Curiae*
Electronic Frontier Foundation