**BENJAMIN N. SOUEDE**, OSB. No. 081775
benjamin@angelilaw.com
Angeli Law Group LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

**EUGENE VOLOKH** (admitted *pro hac vice*)
volokh@law.ucla.edu
Mayer Brown, LLP
UCLA School of Law
405 Hilgard Ave.
Los Angeles, CA 90095
Telephone: (310) 206-3926

Attorneys for Defendant Crystal Cox

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| Obsidian Finance Group, LLC, et al, | CASE NO. 3:11-cv-00057 |
| Plaintiffs, | **DEFENDANT CRYSTAL COX'S** |
| v. | **REPLY IN SUPPORT OF** |
| | **MOTION FOR NEW TRIAL AND IN** |
| Crystal Cox, | **THE ALTERNATIVE FOR** |
| | **REMITTITUR** |
| Defendant. | |
| | Request for Oral Argument |

## <u>TABLE OF CONTENTS</u>

Table of Contents ............................................................................................................ ii

Table of Authorities ....................................................................................................... iii

Introduction ..................................................................................................................... 1

Argument .......................................................................................................................... 2

I.   Defendant's First Amendment Arguments Have Been Adequately Preserved for Review ........................................................................................................................ 2

II.  *Gertz v. Robert Welch, Inc.* Applies Equally to All Who Use Mass Communications Media, Regardless of Whether They Are Members of the Institutional Press ...................... 5

III.  Defendant's Allegations Constituted Speech on Matters of Public Concern ......................... 7

IV.  Plaintiffs Should Be Treated as Tantamount to Public Officials, for Purposes of Applying the *New York Times Co. v. Sullivan* Rule ............................................. 11

V.  Liability Ought Not Be Imposed on Defendant Absent a Jury Finding of "Actual Malice" ................................................................................................................. 13

VI.  The Defendant Is Entitled to a New Trial, or at Least to Remittitur, Because the Damages Award Was Not Supported by the Evidence ........................................ 14

Conclusion ..................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290 (11th Cir. 2008) .................................. 10

*Austin v. Michigan Chamber of Commerce*, 494 U.S. 652 (1990) ............................................ 6, 7

*Bandelin v. Pietsch*, 563 P.2d 395 (Idaho 1977)................................................................. 11, 12, 13

*Brown v. Avemco Inv. Corp.*, 603 F.2d 1367 (9th Cir. 1979) ...................................................... 2

*Brown v. Kelly Broadcasting Co.*, 771 P.2d 406 (Cal. 1989) ..................................................... 13

*Card v. Pipes*, 398 F. Supp. 2d 1126 (D. Or. 2004) .................................................................. 8

*Carver v. Bonds*, 135 Cal. App. 4th 328 (2005) ........................................................................ 9

*Citizens United v. FEC*, 130 S. Ct. 876 (2010)............................................................... 5, 6, 7, 11

*Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183 (9th Cir. 2005) ................................. 1, 2

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985) ............................. 5, 6

*First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978)........................................................ 7

*Flamm v. American Ass'n of Univ. Women*, 201 F.3d 144 (2d Cir. 2000) .................................. 10

*Gardner v. Martino*, 2005 WL 3465349 (D. Or. Sept. 19, 2005)............................................. 8, 9

*Gardner v. Martino*, 563 F.3d 981 (9th Cir. 2009)............................................................... 7, 8, 9

*Garrison v. Louisiana*, 379 U.S. 64 (1964) ............................................................................. 6

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) .............................................................. passim

*HBO v. Harrison*, 983 S.W.2d 31 (Tex. Ct. App. 1998) ...................................................... 11, 12

*Henry v. Collins*, 380 U.S. 356 (1965) .................................................................................... 6

*Loya v. Desert Sands Unified School Dist.*, 721 F.2d 279 (9th Cir. 1983)................................. 2, 3

*Manufactured Home Communities, Inc. v. County of San Diego*, 544 F.3d 959 (9th Cir. 2008)... 9

*Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003) ..................................................................................................... 2, 3

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ........................................................ passim

*Obsidian Finance Group, LLC v. Cox*, 2011 WL 3734457 (D. Or. Aug. 23, 2011) ................... 14

*Obsidian Finance Group, LLC v. Cox*, 2011 WL 5999334 (D. Or. Nov. 30, 2011) ..................... 3

*Press, Inc. v. Verran*, 569 S.W.2d 435 (Tenn. 1978) ............................................................. 11, 12

*St. Amant v. Thompson*, 390 U.S. 727 (1968) .............................................................................. 14

*Straw v. Chase Revel, Inc.*, 813 F.2d 356 (11th Cir. 1987) ................................................. 9, 10, 11

*Weeks v. Bayer*, 246 F.3d 1231 (9th Cir. 2001) .......................................................................... 7

## <u>INTRODUCTION</u>

Defendant Crystal Cox preserved the First Amendment arguments presented in her Motion for New Trial; on the record of this case, it is clear that "the district court was fully informed of [a party's] position on the jury instructions and any further objection would have been superfluous and futile." *Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1189 (9th Cir. 2005).

Moreover, those First Amendment arguments are substantively sound.  There should be a new trial in which the jury is instructed using the *New York Times Co. v. Sullivan* standards, under which Defendant would be held liable only if the jury finds, by clear and convincing evidence, that Defendant knew her statements were false or acted with reckless disregard of whether or not they were false.  Plaintiffs are mistaken in arguing that they should not be treated as public figures or public officials.  They are indeed tantamount to special-purpose public officials when it comes to commentary on Plaintiff Kevin Padrick's actions as court-appointed bankruptcy trustee.

Even if this Court disagrees as to the application of the *New York Times* rule, there should at least be a new trial in which the jury is instructed using the *Gertz v. Robert Welch, Inc.* standards, under which proven compensatory damages would be awarded only if the jury finds that Defendant spoke negligently, and presumed damages would be awarded only if the jury finds Defendant spoke with knowledge of or reckless disregard of falsehood.  Plaintiffs are mistaken in arguing that the speech in this case is on a matter of purely private concern, and that *Gertz* only protects the institutional press.  Allegations of criminal misconduct by a court-appointed bankruptcy trustee constitute speech on matters of public concern, and the First Amendment protections apply equally to all users of mass communications media, whether or

PAGE 1 –    DEFENDANT CRYSTAL COX'S REPLY IN SUPPORT OF MOTION FOR
NEW TRIAL AND IN THE ALTERNATIVE FOR REMITTITUR

not they are members of the institutional press.  And though it is possible that a jury *could* conclude that the *Gertz* or even the *New York Times* mental state requirements were satisfied, this jury *did not* so conclude, because it was not asked to make such a determination.

Finally, the jury verdict should be set aside because there was not a sufficient basis for the jury to reasonably conclude that the particular blog post at issue caused $2.5 million in damages—more than twice what Plaintiff's lawyer argued at trial was a reasonable damages estimate.

## ARGUMENT

### I.    Defendant's First Amendment Arguments Have Been Adequately Preserved for Review

Parties normally must specifically object to a court's proposed jury instructions. Fed. R. Civ. P. 51(c)(1).  Yet "when the trial court has rejected plaintiff's posted objection and is aware of the plaintiff's position, further objection by the plaintiff is unnecessary."  *Loya v. Desert Sands Unified School Dist.*, 721 F.2d 279, 282 (9th Cir. 1983) (citing *Brown v. Avemco Inv. Corp.*, 603 F.2d 1367, 1371 (9th Cir. 1979).  Thus, when a party has "made explicit objections" to a witness's testimony "in its motion in limine, which the district court denied," "[c]ontemporaneous objection is not required."  *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1062 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003).  This rule applies fully to rulings related to jury instructions as well as to decisions related to testimony.  *Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1189 (9th Cir. 2005).

As *Dorn* made clear, when "the district court was fully informed of [a party's] position on the jury instructions and any further objection would have been superfluous and futile," *id.*, the objection to the jury instructions has not been waived.  To be sure, in *Dorn* the District Judge also specifically told the party "that he was not inclined to 'rehash' the issue any further," *id.*, an

element that is absent here.  But no such element was present in *Mukhtar* or *Loya*, and the broader principle behind all three of these cases is that the question is adequately preserved for review when the court was "fully informed" of the party's position.

The trial in this case took place on Nov. 29, 2011, the day after the Nov. 28, 2011 pretrial conference.  At that conference, the Court expressly rejected Defendant's argument that she was entitled to First Amendment defenses to Plaintiffs' libel claim.  (Tr. of Nov. 28, 2011 Hearing 7:3–10.)  Indeed, on Nov. 30, 2011, the Court released a detailed opinion specifically rejecting Defendant's First Amendment argument (Docket #95).  The opinion noted:

> Defendant argues that under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), plaintiffs are "public figures" and as such, they must prove by clear and convincing evidence that defendant published the defamatory statements with "actual malice," meaning with knowledge that the statements were false or with a reckless disregard of whether they were false or not.

*Obsidian Finance Group, LLC v. Cox*, No. CV-11-57-HZ, 2011 WL 5999334, at *2 (D. Or. Nov. 30, 2011).  The Court then discussed that argument in some detail and rejected it.  Likewise, the opinion noted that "Defendant next argues that she is 'media' and thus, plaintiffs cannot recover damages without proof that defendant was at least negligent and may not recover presumed damages absent proof of 'actual malice.'"  *Id.* at *5 (citing "*Gertz*, 418 U.S. at 347").  The Court discussed that argument, too, but expressly rejected it as well.

It seems reasonable to assume that the opinion had been drafted in the days shortly before Nov. 30, especially since Defendant's written arguments were not presented until Nov. 22, and since the oral pretrial discussion was not until Nov. 28.  Thus, when the Court was composing and giving the instructions, it was surely "fully informed of" Defendant's position that the jury should be instructed about the First Amendment, and "any further objection would have been superfluous and futile."

PAGE 3 –    DEFENDANT CRYSTAL COX'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL AND IN THE ALTERNATIVE FOR REMITTITUR

Indeed, a *pro se* litigant might well assume (albeit mistakenly) that it is more proper not to tax the court's patience by rehashing an argument that the court had expressly rejected at the hearing the day before.  To be sure, *pro se* litigants, like other litigants, bear the burden of informing the court about their position, so that the court can consider their arguments.  But in this instance, the litigant had done that in the days immediately before trial.  The Court was in the process of writing a detailed response to those arguments.  Any additional formal objection would not have helped the Court, or changed the course of the proceedings.

Plaintiffs argue that Defendant is trying "to inject 'new elements' in the case after trial," (Pls.' Opp'n to Mot. for New Trial 6 n.2 (citing ex. 1).) and that Defendant is now raising a new argument by saying that "the First Amendment effectively applies to all speakers whether they are media or not," as opposed to the earlier argument "that [defendant] is 'media' and that, therefore, the First Amendment applies to her statements."  (Pls.' Opp'n 7.)  But this is not so. Defendant's argument remains that she is at least protected by *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), because the First Amendment protects bloggers who use the media of mass communications, whether or not they are members of the "institutional press."  (Mem. in Support of Def. Crystal Cox's Mot. for New Trial and in the Alternative for Remittitur ["Memorandum"] 9–10.)

Moreover, the quote from Defendant that Plaintiffs reproduce in exhibit 1 claims simply that a pro se defendant is able to introduce "more elements" *at trial*, presumably because the case is at that point run by the defendant and not by a lawyer.  The relevant passage reads, "I recommend that everyone go pro se and lawyer up for the appeal, this way you get to introduce more elements into the case and others pick up the case."  The assertion that "you get to introduce more elements into the case" refers to what happens at trial (when "you," the pro se

defendant, are doing the introducing).  It says nothing about what Defendant intended to happen

when "others [the lawyers] pick up the case" for appeal.

## II.  *Gertz v. Robert Welch, Inc.* Applies Equally to All Who Use Mass Communications Media, Regardless of Whether They Are Members of the Institutional Press

The Supreme Court's decision in *Citizens United v. FEC*, 130 S. Ct. 876, 905 (2010),

stated:

> "We have consistently rejected the proposition that the institutional press has any constitutional privilege beyond that of other speakers." [*Austin v. Michigan Chamber of Commerce*, 494 U.S. 652], 691, 110 S.Ct. 1391 (SCALIA, J., dissenting) (citing [*First Nat'l Bank v.*] *Bellotti,* 435 U.S. [765], 782, 98 S.Ct. 1407); see *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 784, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) (Brennan, J., joined by Marshall, Blackmun, and STEVENS, JJ., dissenting); *id.,* at 773, 105 S.Ct. 2939 (White, J., concurring in judgment).

This is binding precedent, which establishes a general rule that the First Amendment

treats the institutional press and other publishers the same way.  And it is also binding precedent

endorsing, more specifically, the view of five Justices in *Dun & Bradstreet* that "in the context of

defamation law, the rights of the institutional media are no greater and no less than those enjoyed

by other individuals or organizations engaged in the same activities," 472 U.S. 749, 784 (1985)

(Brennan, J., dissenting), and "the First Amendment gives no more protection to the press in

defamation suits than it does to others exercising their freedom of speech," *id.* at 773 (White, J.,

concurring in the judgment).

Plaintiffs reject these conclusions, for two reasons.  First, they argue that this case, unlike

*Citizens United*, is a libel case and not a case involving a federal statute restricting political

speech.  (Pls.' Opp'n 15.)  But *Citizens United* expressly endorsed the five Justices' position in

*Dun & Bradstreet*, a libel case; and that position, in Plaintiffs' own words (Pls.' Opp'n 11), was

that "media defendants and other speakers should be subject to the same rules." This decision by the *Citizens United* Court applies directly to the question in this libel case.

Second, Plaintiffs argue that "the Court's apparent historical statement is . . . incorrect in light of the Court's own precedents and descriptions of the state of the law in *Hepps* and *Milkovich*." (Pls.' Opp'n 15.) But the Court's discussion—besides being binding precedent—is quite correct.

*Gertz*, as *Citizens United* implicitly recognized, spoke of "media" simply because the facts of that case involved the media, not in order to limit the scope of the rule to the media. Just as *New York Times Co. v. Sullivan* spoke of "newspaper[s]," 376 U.S. 254, 278 (1964) ("Whether or not a newspaper can survive a succession of such judgments, the pall of fear and timidity imposed upon those who would give voice to public criticism is an atmosphere in which the First Amendment freedoms cannot survive."), but created a rule that applies equally to all speakers, *Garrison v. Louisiana*, 379 U.S. 64, 64–67 (1964); *Henry v. Collins*, 380 U.S. 356 (1965), so *Citizens United* rightly treated the Court's libel precedents as enunciating a general rule applicable to all speakers. Any uncertainty about the subject that was flagged in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 n.6 (1990), and similar earlier cases has now been cleared up by *Citizens United*, and by the *Citizens United* endorsement of the five Justices' views in *Dun & Bradstreet*.

There is also nothing "puzzling" (Pls.' Opp'n 15) about the *Citizens United* citation to Justice Scalia's similar views in *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 691 (1990) (Scalia, J., dissenting). Though Justice Scalia's views about whether corporate speech should be as protected as individual speech did not win a majority in *Austin*, his views in *Austin* about the equal treatment of institutional media speech and other speech were not controversial.

PAGE 6 –    DEFENDANT CRYSTAL COX'S REPLY IN SUPPORT OF MOTION FOR
NEW TRIAL AND IN THE ALTERNATIVE FOR REMITTITUR

Even the *Austin* majority noted that "the press' unique societal role may not entitle the press to greater protection under the Constitution." 494 U.S. at 668. And in *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 782 n.18 (1978), on which Justice Scalia was relying and which *Citizens United* parenthetically cited, a majority endorsed precisely the same view—a view that was endorsed even by three of the dissenters, 435 U.S. at 808 n.8 (White, J., dissenting).

So there is nothing "puzzling," "historical[ly] . . . incorrect," or inconsistent with prior precedent about the Supreme Court's conclusion in *Citizens United* that "the institutional press has [no] constitutional privilege beyond that of other speakers," including in libel cases. And in any event, whether its reasoning is puzzling or not, the Supreme Court's conclusion is applicable to this case.

## III.    Defendant's Allegations Constituted Speech on Matters of Public Concern

Allegations of tax fraud by a court-appointed official are a matter of public concern for the purposes of *Gertz.* The Plaintiffs try to distinguish "alleged fraud in the operation of a government program" (which the Ninth Circuit has described as being one of the "indicia of public concern," *Weeks v. Bayer*, 246 F.3d 1231, 1233 (9th Cir. 2001)) from "an assertion of tax fraud related to the liquidation of assets in a bankruptcy," (Pls' Opp'n 16) but such a distinction does not make sense. The system of tax collection is a government program. The bankruptcy system is a government program. There is no First Amendment difference between this case and the case contemplated by *Weeks*.

Indeed, as *Gardner v. Martino*, 563 F.3d 981 (9th Cir. 2009), makes clear, even allegations of two businesspeople's alleged mistreatment of consumers qualify as speech on a matter of public concern. *A fortiori*, allegations of a businessperson's alleged tax fraud in the discharge of his duties as a court-appointed bankruptcy trustee would likewise qualify.

Plaintiffs try to limit *Gardner* on the grounds that the plaintiffs there chose not to contest the threshold applicability of an Oregon anti-SLAPP statute that covers speech on matters of "public interest." (Pls' Opp'n 17.) But because state law rules often differ from federal constitutional rules, even when they are articulated in similar terms, there is no reason to assume that the Ninth Circuit would treat such a state law concession as disposing of the federal law issue. So the Ninth Circuit's decision to expressly treat the case as being subject to *Gertz*'s federal constitutional rule, and as involving a matter of public concern, *Gardner*, 563 F.3d at 989, appears to be a deliberate judgment by the court itself, rather than a silent acceptance of a party's concession. The *Gardner* opinion nowhere suggests that its First Amendment conclusion (in part II.B, "Defamation Claim," *id.* at 986–90) was based on the plaintiff's decision not to contest a question of state law (in part II.A, "Oregon's Anti-SLAPP Statutes," *id.* at 986).

Moreover, the only way that the Ninth Circuit could have treated the *Gardner* plaintiffs' state law concession as bearing on the federal law question is if the Court of Appeals had viewed the federal law definition of "public concern" as equivalent to the state law definition of "public interest." Yet if that were so, it still would not help Plaintiffs Obsidian and Padrick. The Oregon anti-SLAPP definition of "public interest" is very broad: it includes even consumer complaints about alleged mistreatment of consumers, and *a fortiori* would cover accusations of outright criminal misconduct in the operation of the bankruptcy system. *See Gardner v. Martino*, No. CV-05-769-HU, 2005 WL 3465349, at *5, *7 (D. Or. Sept. 19, 2005) (noting that "courts have generally given Oregon's 'public issue' or 'public interest' concept a broad interpretation," which covers consumer complaints, and that the speech in *Gardner* itself was of "public interest" under the Oregon statute); *see also Card v. Pipes*, 398 F. Supp. 2d 1126, 1136 (D. Or. 2004) (concluding that accusations that a professor had made anti-Israel statements in the classroom

PAGE 8 –    DEFENDANT CRYSTAL COX'S REPLY IN SUPPORT OF MOTION FOR
            NEW TRIAL AND IN THE ALTERNATIVE FOR REMITTITUR

were covered by the Oregon "public interest" language).   Moreover, the district court in *Gardner*, 2005 WL 3465349, at \*5–\*6, concluded that the Oregon standard was similar to the California standard, and the California cases treat consumer complaints as being on a matter of "public concern."   *See, e.g.*, *Carver v. Bonds*, 135 Cal. App. 4th 328, 344 (2005) (treating as a matter of public concern consumer complaints about a local podiatrist's supposed exaggeration to patients of his connection with a professional sports team).

Under either understanding, then, consumer complaints were treated by the Ninth Circuit in *Gardner* as being on a matter of public concern for First Amendment purposes.   This is true if (as Defendant primarily argues) the *Gardner* court reached this conclusion on its own, uninfluenced by the plaintiffs' litigation tactics on the state law question.   It is equally true if (as Defendant argues in the alternative) the *Gardner* court treated the federal law "public concern" rule as identical to the state law "public interest" rule, given that the state law rule is broad enough to cover such consumer complaints.   And in either case, Defendant Cox's allegations of criminal misconduct—rather than mere mistreatment of consumers—constituted speech on a matter of public concern for purposes of applying *Gertz*.

Nor should the "public concern" inquiry turn on whether an article deals with a preexisting controversy or is the first to alert the public to what the author sees as misconduct.   As discussed in the Memorandum (at 14–16), such a distinction would not be consistent with basic First Amendment principles or with past cases.   The Memorandum cites *Straw v. Chase Revel, Inc.*, 813 F.2d 356, 362 (11th Cir. 1987), and *Gardner v. Martino* and *Manufactured Home Communities, Inc. v. County of San Diego*, 544 F.3d 959, 963 (9th Cir. 2008), on this point, but these are hardly the only such cases.

For example, the Eleventh Circuit in *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1298–99 (11th Cir. 2008), concluded that accusations of "alleged violations of federal gun laws" by gun stores were on "a matter of public concern," though these were apparently the first airings of such allegations against plaintiffs.  Likewise, *Flamm v. American Ass'n of University Women*, 201 F.3d 144, 147, 150 (2d Cir. 2000), held that allegations of a lawyer's supposedly being "an 'ambulance chaser' with interest only in 'slam dunk cases'" were on "a matter of public concern," though there was no mention of any prior controversy involving this lawyer.  Of course, the broader discussions of the violation of federal gun laws by people in general, and of unethical conduct by lawyers in general, have been in the news on and off for years.  Yet that too does not distinguish the precedents we cite from the case at bar—broader discussions of tax fraud by people in general are likewise intermittently in the news.

Plaintiffs argue that *Straw v. Chase Revel, Inc.* "includes no analysis of the issue regarding whether the defamatory statements involved a matter of public concern; the court merely concludes that [they] did."  (Pls' Opp'n 18 n.5.)  But the most likely reason for this is simply that the *Straw* court concluded that the matter was clear: discussion of the supposedly poor quality of a business newsletter author's advice is a matter of public concern, 813 F.2d at 362, without any need to show a preexisting controversy about that author's advice.  Likewise, discussion of alleged criminal tax fraud by a court-appointed bankruptcy trustee is a matter of public concern without any need to show a preexisting controversy about that trustee's actions.

Plaintiffs also argue that "[d]efendant's reliance on *Straw* is curious" because "the Eleventh Circuit expressly recognized that there are categories of defamation claims and defamation defendants for which the First Amendment imposes no limits on state law. 813 F.2d 362."  (Pls' Opp'n 18 n.5.)  But the statement in *Straw* that "these constitutional restrictions on

state defamation law are justified only where a defamation action is brought against a 'media defendant,'" 813 F.2d at 362, is not good law after *Citizens United*. *See supra* Part II.  And while *Straw* correctly concluded that, when defamatory speech is on matters of purely private concern, "punitive damages may be awarded absent a showing of actual malice," 813 F.2d at 362, *Straw* shows that the absence of a preexisting controversy does not transform allegations of impropriety into matters of purely private concern.

## IV.    Plaintiffs Should Be Treated as Tantamount to Public Officials, for Purposes of Applying the *New York Times Co. v. Sullivan* Rule

Plaintiff Padrick's actions on which Defendant commented took place in the course of his being a court-appointed trustee with the power to exercise court-delegated authority.  This made him similar to a special-purpose public official, such as the court-appointed psychologist in *HBO v. Harrison*, 983 S.W.2d 31, 37–38 (Tex. Ct. App. 1998), and the court-appointed guardian in *Bandelin v. Pietsch*, 563 P.2d 395, 398 (Idaho 1977).

Plaintiffs argue that the *HBO v. Harrison* "reasoning and conclusion are unpersuasive." (Pls' Opp'n 19–20.)  But it makes perfect sense to conclude here, as in *HBO v. Harrison*, that court-appointed officials exercising court-delegated authority are tantamount to public officials for purposes of statements about their actions in the court-appointed role.  In the words of *Press, Inc. v. Verran*, 569 S.W.2d 435, 441 (Tenn. 1978), on which *HBO v. Harrison* relied,

> Any position of employment that carries with it duties and responsibilities affecting the lives, liberty, money or property of a citizen or that may enhance or disrupt his enjoyment of life, his peace and tranquility, or that of his family, is a public official within the meaning of the constitutional privilege.

This reasoning applies fully to the case at bar. A court-appointed bankruptcy trustee has government-delegated "duties and responsibilities affecting the . . . money or property" both of the bankrupt and the creditors.  The analysis should not be affected by the trusteeship's being

focused on one company and being paid for out of the court-administered estate, rather than covering more companies and being paid for out of general tax funds.

Plaintiffs also try to distinguish *HBO v. Harrison* on the grounds that Plaintiff Padrick's "work [was] subject to oversight by the U.S. Trustee and oversight and approval by the Bankruptcy Court." (Pls' Opp'n 20.) But of course a court-appointed psychologist, even one "delegated . . . the power to determine . . . visitation rights," (Pls' Opp'n 19) is also subject to oversight by the appointing court. And while the court-appointed psychologist's decisions "affect[] the . . . liberty . . . of a citizen," *Press, Inc. v. Verran*, 569 S.W.2d at 441, despite the court oversight, so a court-appointed bankruptcy trustee's decisions "affect[] the . . . money or property of a citizen" despite the court and United States Trustee oversight.

Finally, Plaintiffs try to distinguish *Bandelin v. Pietsch* on the ground that "[t]he Idaho court's public figure holding was based both on the plaintiff's general prominence in the community and on his involvement in the controversy regarding the administration of the estate at issue." (Pls' Opp'n 20.) But the Idaho Supreme Court in *Bandelin* heavily relied on Bandelin's being a court-appointed guardian:

> [W]e do not affirm the district court's decision exclusively on the prominence that Bandelin enjoyed in the local community. We are sensitive to the consequences of being a public figure and *we do not assume that a citizen's participation in community and professional affairs automatically renders him a public figure*. We follow the approach of the Supreme Court in *Gertz*:
>
>> "It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an *individual's participation in the particular controversy* giving rise to the defamation (or invasion of privacy)." 418 U.S. at 352, 94 S.Ct. at 3013.
>
> In the present case, Bandelin as the guardian of the estate of Muriel I. Talbot was the center of the controversy that gave rise to the Sandpoint News-Bulletin's publications. The [defendant] Sandpoint News-Bulletin initiated its coverage of the Talbot case when it became aware of the trial judge's criticism of Bandelin's handling of the Talbot guardianship. Under such

PAGE 12 –    DEFENDANT CRYSTAL COX'S REPLY IN SUPPORT OF MOTION FOR
            NEW TRIAL AND IN THE ALTERNATIVE FOR REMITTITUR

circumstances, Bandelin cannot maintain that he is not a public figure and was just an attorney handling the probate affairs of a client. He was rather the *court appointed guardian, a pivotal figure in the controversy regarding the accounting of the estate* that gave rise to the defamation and invasion of privacy actions.

563 P.2d at 398 (emphases added).  It was thus Bandelin's status as court-appointed guardian that primarily led to the court's treating Bandelin as a "public figure," a status that has the same consequences as public official status for *New York Times Co. v. Sullivan* purposes.  The same reasoning applies to Plaintiff Padrick.

**V.    Liability Ought Not Be Imposed on Defendant Absent a Jury Finding of "Actual Malice"**

Defendant is entitled to the First Amendment protections provided by *New York Times Co. v. Sullivan*: she cannot be held liable without a showing, by clear and convincing evidence, *Gertz*, 418 U.S. at 342, of "actual malice."  And even if Defendant is only entitled to the First Amendment protections provided by *Gertz*, she cannot be held liable for presumed damages without a showing of "actual malice"—which might likewise have to be shown by clear and convincing evidence, *see, e.g.*, *Brown v. Kelly Broad. Co.*, 771 P.2d 406, 429 (Cal. 1989)—and she cannot be held liable for proven compensatory damages without a showing of negligence.

Plaintiffs appear to suggest that having a jury apply the correct legal standards in this case is unnecessary because, in their view, "there was and is overwhelming evidence that [Defendant] acted negligently and with malice."  (Pls' Opp'n 2.)  And it is possible that a jury, instructed to determine whether Defendant acted with the requisite mental state, might find that Defendant was indeed culpable.  But the jury in this case was never asked to determine this, and a reasonable jury might well conclude, for instance, that there was not clear and convincing proof of actual malice, and that Defendant probably sincerely believed her allegations.  Even "proof of failure to investigate" does not itself "establish reckless disregard for the truth" for

PAGE 13 –    DEFENDANT CRYSTAL COX'S REPLY IN SUPPORT OF MOTION FOR
NEW TRIAL AND IN THE ALTERNATIVE FOR REMITTITUR

purposes of the "actual malice" standard; only proof that Defendant consciously had "a 'high degree of awareness of . . . probable falsity'" would suffice. *Gertz*, 418 U.S. at 332 (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). Perhaps a jury would find actual malice. Perhaps it would not. But Defendant is entitled to a verdict rendered by a jury that is asked to make this determination.

**VI.    The Defendant Is Entitled to a New Trial, or at Least to Remittitur, Because the Damages Award Was Not Supported by the Evidence**

This Court correctly held, *Obsidian Finance Group, LLC v. Cox*, 2011 WL 3734457 (D. Or. Aug. 23, 2011), that nearly all of Defendant's blog posts critical of Plaintiffs were opinion protected by the First Amendment. Only the December 25, 2010, bankruptcycorruption.com post could form the basis of this defamation lawsuit. To be valid, the damages award must thus rest on adequate evidence from which a jury could reasonably conclude that any loss of business to plaintiffs stemmed from the one post that the jury was permitted to consider—not from the many posts that the Court found to be constitutionally protected opinion.

The evidence that plaintiffs point to (Pls' Opp'n 21–22) does not suffice to show this causal link. Indeed, the evidence suggests that the jury likely did not and could not have identified such a link. Even Plaintiffs' witness Patricia Whittington expressly said she did not know whether any of the damage flowed from the potentially actionable post. (*See, e.g.*, Trial Tr. 109:9–11, 110:24–111:5, 119:16–21.) Plaintiffs' most specific evidence of a lost business opportunity—the inability to get a $10 million bank loan—expressly pointed to a bank employee's "various blog postings." (Trial Tr. 161:20–25.) Plaintiffs' closing argument that the decline in their advisory business stemmed from Defendant's speech specifically rested on Defendant's having "posted on numerous websites." (Trial Tr. 186:5.) And the jury award is

more than twice what even Plaintiffs' lawyer argued to the jury was "reasonable compensation": "we'd submit that a reasonable number here is [one] million dollars."  (Trial Tr. 192:9–13.)

## <u>CONCLUSION</u>

For the reasons given above and in the Motion and Memorandum, a new trial should be ordered.  In the alternative, remittitur should be ordered with respect to the jury's damages award.

Dated:  February 16, 2012

Respectfully submitted,

s/ Benjamin N. Souede
BENJAMIN N. SOUEDE, OSB. No. 081775
benjamin@angelilaw.com
Angeli Law Group LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

EUGENE VOLOKH (admitted *pro hac vice*)
volokh@law.ucla.edu
Mayer Brown, LLP
UCLA School of Law
405 Hilgard Ave.
Los Angeles, CA 90095
Telephone: (310) 206-3926

Attorneys for Defendant Crystal Cox