UNITED STATES DISTRICT COURT
DISTRICT OF OREGON - Portland Division

Obsidian Finance Group
v.
Crystal Cox, Defendant
Eliot Bernstein, Defendant                                    Civil No. CV 11-0057 HZ

Memorandum of Law
in Support of Defendant's
Motion for Summary Judgment

## INTRODUCTION

Plaintiff has not yet responded to Cox's motion for summary judgment, nor has the case changed, therefore this supplemental brief is appropriate and timely.

### Defendant Crystal Cox alleges that there are numerous reasons justifying a Summary Judgment in favor of defendant Crystal Cox.

First of all Plaintiff cannot as a matter of law prove that Cox had malice regarding a blog post of December 25the 2014, nor that this exact blog post that is material evidence in this case caused Plaintiff any harm whatsoever as of January 14th, 2011, 21 days later when Plaintiff filed suit against Cox for 10 million dollars, alleging the EXACT same non-descript issues as the vague, confusing, cease and desist sent to Cox on Dec. 22d 2010, which was BEFORE the blog post that Plaintiff is claiming caused them harm.

Cox had been reporting on the Summit Bankruptcy since **December of 2008**, Plaintiff deposed Cox's source Stephanie DeYoung in **August of 2009** and asked her of Cox's motive, intentions, (state of mind). Aman took this deposition, which clearly and convincingly shows that Cox had no malice and that her source and insiders of the Summit bankruptcy were alleging the fraud and Cox was and is reporting on this suspected fraud.

**On Dec. 22nd 2010**, Aman sent a cease and desist demanding Cox remove thousands of blog posts and hundreds of blogs, with no particular blog or post of issue. Cox could not do this, it was impossible and she had no blog post to try and remedy. Cox had no way to remedy the issues of the Plaintiff.

Cox forwarded this email and cease and desist letter to one of her sources Oregon CPA and Summit insider, whistleblower Stephanie Studebaker DeYoung.

1

On **Dec. 23rd 2010**, Stephanie Studebaker DeYoung responded to Defendant Cox with the email shown in **Exhibit One**, which is almost the **Dec. 25th 2011** blog post, posted by Cox word for word. As Cox copy and pasted this email to show proof that Padrick was guilty of what she had been alleging for years. This post that is now a material factor in this case, was essentially in response to the cease and desist from Aman to Cox (Exhibit 2), to prove why Cox had been reporting those allegations.

**On January 14th, 2011,** Aman, on behalf of his client Obsidian Finance Group, file a 10 million dollar lawsuit against Cox stating the same reasons, word for word, as the cease and desist of Dec. 22nd 2010.

The blog post Cox is on trial for is dated December 25th 2010, which is 3 days after the cease and desist, after Stephanie's email response to the allegations and before Cox was sued.

**On January 19th, 2011,** after having been sued for 10 Million dollars, being homeless, as of just losing her lifetime home, being stressed from years of attack and getting word that Summit was in jail, her source had moved on with her life and Cox had just been sued for information that they all gave her. Wanting her life back and to avoid years and years of litigation, Cox emailed Aman, acting as her own attorney, in her pro se capacity and offered a settlement of $2500 a month, which was VERY reasonable, in order to end the legal action and try and negotiate a remedy of some kind.

Between January 19th 2011, and today, Plaintiff has made Cox approx. 15 settlement offers which taken out of context would certainly look to be extortion and coercion. That is the nature of a settlement offer, a settlement communication or negotiation.

Clearly, Cox had already been sued, clearly Cox was pro se, yet Aman took one email out of 5 in a settlement negotiation email thread and convinced this court that Cox had extorted his client and this case became one of alleged extortion.

**<u>Plaintiff continues to allege extortion but files no criminal complaint in this regard.</u>**

Plaintiff will use this as allegations of malice, however this is not based in law or adjudicated fact nor in authenticated evidence of any kind.

Secondly, Plaintiff did not allow Defendant a remedy of any kind, as a matter of law, before they filed a 10 million dollar lawsuit against Cox.

The facts clearly show that Cox was not even given a cease and desist or any kind of retraction request whatsoever for the blog post dated Dec. 25th, 2010. The cease and desist

from Aman to Cox, that is a matter of record and material evidence in this case, Exhibit 2, was sent to Cox 3 days befor the blog post Plaintiff now claims has caused damage to them.

Plaintiff did not ask for a retraction and under Oregon Retraction Laws cannot legally sue Cox for defamation without having first asked Cox for a retraction of that exact blog post of Dec. 25th 2010.

Thirdly, under Anti-Slapp Laws, Cox alleges she had and has a right for this case to be dismissed, or summary judgment as Cox did claim Anti-Slapp as a defense within 60 days, as a matter of law, after she knew what blog post she was being sued for.

Fourthly, Cox alleges that she is a Real Estate Broker, a professional in the Real Estate industry and that under Oregon Real Estate law and professional standards, she had a duty, as a matter of law and professional standards to report on, disclose, and warn the public of what was happening to the money of the Summit 1031.

And lastly, Plaintiff has unclean hands and cannot make a claim against Cox.


## Cox clearly did not have actual malice.

To this day Cox fully believes that Plaintiff has committed fraud, crimes that violate bankruptcy code, and this particular blog post's details are directly from one of Cox's source, as Plaintiff CLEARLY knows.

Cox's blog posts come from massive online information, internal documents and emails, court hearings and motions and Stephanie DeYoung's blog regarding the Summit Bankruptcy. Cox did not create the information, she reported the NEWS.

Cox did not have malice and still FULLY believes the blog post to be true, as per her source and has no clear reason to this day to believe the entire blog post is untrue. Cox certainly did not post anything to ask for a pay off in the future or to maliciously harm Plaintiff's reputation. Cox has gave what she knew to be her life to this cause.


## Even if Plaintiff could somehow manipulate this court into thinking Cox had malice, Plaintiff cannot prove damages, and therefore Cox should be granted a Summary Judgement.

3

## ARGUMENT

### 1.)  Summary Judgment based on the Actual Malice Standard

Defendant Crystal Cox, pro se, move this court to grant Summary judgement based on Plaintiff being unable to prove malice, negligence or that Cox knew that the information was false in anyway on the date of the blog post that is of material evidence in this case, then posted this information knowing full well it was false, and to deliberately harm Plaintiff. This is not factual, cannot be proven and as no evidence to back it up, as a matter of law.

Malice' usually indicates a wrongful act which is done intentionally to cause harm to a person, such as Plaintiff.

Cox's intention is clear and convincing as she is determined, and has been for 5 years and counting, to report on, expose, and seek investigations from authorities on Plaintiff and his attorney's actions in the Summit Bankruptcy, which to this day, 5 years later Defendant Cox continues to allege are illegal, unethical, conflicted and unconstitutional.

'Actual malice' is mostly applicable for the defamation cases, when a person is found to have made a false statement, either being unaware or negligent about the untruth.

One cannot be held liable for defamation unless there is a reason to believe that it has been caused with actual malice.

Plaintiff will certainly attempt to claim that Cox has or had malice as she continues to allege Plaintiff and his attorney have violated tax laws and bankruptcy laws.

However, Plaintiff must prove that Cox had actual malice on December 25th, 2010, here state of mind on that exact day, and not bring in other blog posts, hearsay, rumors and unadjudicated, unauthenticated facts and evidence

Cox alleges that this is impossible, as a matter of law, as Exhibits show, this post is 95% from an email at that very time sent to Cox by insider, whistleblower, source, Oregon CPA Stephanie Studebaker Deyoung.

Also the blog post comes from a 200 page legal filing that was an Objection to the Fees of Kevin Padrick, Obsidian Finance Group, David Aman and Tonkon Torp law firm filed by 5 Summit insiders, investors, creditors. In this court motion, there are exhibits of internal emails between attorneys and the DOJ that state foul play, no need for trustee and other proof that may inside the bankruptcy had issue with the legal and ethical actions of Kevin Padrick, Obsidian Finance Group and Tonkon Torp Law Firm and this did not originate from Defendant Cox. Cox simply saw an injustice and has, ever since tried to shout it from the rooftops, to the best of her ability.

**Plaintiff has to prove without a doubt that Defendant Cox made false statements** "with knowledge" that they were false or "with reckless disregard" of whether they were false or not. Cox alleges that defendant cannot do this, as a matter of law and that it is a waste of court time and resources to continue pursuing Cox in this matter.

**It is clear as Exhibits show that Cox had sources, credible sources for her theories of which she continues to believe to this day. Therefore Cox did not have malice, as a matter of law.**

Such as the Sussman Shank law firm's press release stating that Obsidian had been hired by summit in Dec. of 2008 (**Exhibit 3**) - which shows Cox had no malice stating that Obsidian violated bankruptcy law, as it violated bankruptcy code and IRS code to be an insider having worked for the debtor.

Such as the Objection to the Fees, (**Exhibit 4**), shows that all of Cox's allegations came from those inside the Summit Bankruptcy such as Susan Ford of Sussman Shank Law firm representing the Debtor, billing documents, court hearings, emails with the DOJ and attorneys for both the creditors and debtor. This court filing is the substance of Cox's belief that Padrick and Aman, Obsidian Finance Group and Tonkon Torp law firm have acted unethically and even unlawful.

Such as **Exhibit 5** showing that David Aman knew that attorney Robert Opera had stated and is a matter of record that there were concerns with the liquidating trust and tax issues due to IRS code and the 1031 Exchanges.

### Malice Case Law

Plaintiff cannot adduce legally sufficient evidence of actual malice.

Plaintiff can only convince this court of Cox's malice if he lies, manipulates or claims injury from other posts or future action, which is not legally relevant in this case on its merits. Reesman v. Highfill 942 P.2d 891 (1997); 149 Or. App. 374

Due to Cox's prior reporting on the Summit 1031, and her 11 years at that time as an industry expert owning her own real estate company, once Cox was given this information it was her duty under law to report on these matters, Cox was a

real estate Broker / Owner of Ten Lakes Realty in Idaho, Oregon and montana of which were 3 of 5 states affected by the Summit 1031 bankruptcy.

"the `public interest' privilege, involves communications made to those who may be expected to take official action of some kind for the protection of some interest of the public. * * *" Prosser, Torts 791 (4th ed. 1971)."


**Plaintiff must prove actual malice by clear and convincing evidence, rather than a mere preponderance, and it is impossible for Plaintiff to do this therefore this court should grant Defendant Crystal Cox a summary judgement in this case, in her favor.**

Cox alleges that the negligence standard cannot be met by Plaintiff as a matter of law and therefore this court should grant Cox a summary judgment.


**The relevant Oregon constitutional provisions are Article I, sections 8 and 10.**

Section 8 provides:
"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right. —"

Cox alleges that under the Oregon constitution she has a right to free expression.


Section 10 of the Oregon Constitution provides:
"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation. —"

Cox alleges that under the Oregon Constitution she had a right and a duty to report on what was going on in the Oregon Bankruptcy courts, that was violating the rights of the creditors, which in the Summit Bankruptcy were real estate consumers of which Cox had a professional duty, a matter of law to protect as a real estate broker and owner of her own real estate brokerage.

**Defendant Crystal Cox alleges that under the Oregon Constitution**
Plaintiff cannot prove a negligence standard that  is utterly untenable

"Accordingly, where the First Amendment requires at least negligence in a defamation action against a media defendant, and where the Oregon Constitution has been held to provide a greater degree of protection than the First Amendment, the claim by Plaintiffs that the Oregon Constitution requires a negligence standard is utterly untenable. Instead, Article I, section 8 supports a higher standard than the minimum standard of negligence required by Gertz."

**Plaintiff cannot prove they lost actual money or reputation of any kind due to a blog post on December 25th 2010, by the time they filed a 10 million dollar lawsuit against Cox on January 19th 2011, Cox alleges it is impossible to do this in a legal, logical, ethical, unbiased, constitutional court proceeding.**

Deras and Robertson and  Wheeler v. Green, supra, or Hall v. The May Dept. Stores, supra. In Wheeler, the court held that Article I, section 10 does not require the availability of punitive damages in defamation cases, and that their recoverability would violate Article I, section 8 because they
* * * can easily inhibit the exercise of freedom of constitutionally protected expression, as well as its abuse. * * *" 286 Or. at 119, 593 P.2d 777. However, Wheeler also holds that the remedy of compensatory damages for injury to reputation is not proscribed by Article I, section 8 and is protected by Article I, section 10. 286 Or. at 118, 593 P.2d 777. The court later explained in May:
"* * * The principle of the holding [in Wheeler], as stated above, was that punitive damages by definition go beyond whatever financial recompense is proper to compensate a plaintiff for the injury suffered by the plaintiff personally. Where such damages beyond any actual injury are allowable, the plaintiff collects them as a form of public punishment, not by virtue of a personal entitlement to compensation. When the cause of defendant's liability is his `abuse' of speech and expression, as in the case of defamation, Wheeler v. Green holds that the `responsibility for the abuse' is confined to civil liability for compensation only. * * *" 292 Or. at 146, 637 P.2d 126.

**There is no way as a matter of law for Plaintiff to prove Cox's state of mind or mental attitude at the time of this exact blog post, therefore**

**Plaintiff cannot prove malice and this court should grant Cox a Summary Judgment.**

**The nationwide "If You See Something, Say Something"** public awareness campaign is a call for all to tell what they know, as it is the right thing to do. Defendant Cox has been doing this since December of 2008 regarding the Summit Bankruptcy.

## Cox had no Malice

Cox has reported on the Summit Bankruptcy since December of 2008, she has alleged Kevin Padrick's illegal actions, his violation of IRS Code and Bankruptcy Code, his bullying and overreaching, his violation of contract law, his violation of HIPAA, and reported on her sources of these allegations with as much documented proof and resources as possible.

Cox has been dedicated to this and gave her life to this, Cox certainly did not expose corruption within the real estate industry,with any malice of a measly $2500 a month 4 years and a million dollars later. Cox was a millionaire with an 8000 sq. ft home before she started reported on the Summit bankruptcy and Plaintiff.

Cox LOST everything she knew to be her life and has been under constant hate, attacks and duress ever since. Because of the extreme prejudice and retaliation for reporting on this story, that involves Portland's biggest law firms, judges, utility companies, DOJ trustees and even the Whitefish Credit Union in Montana whom seized Cox's home in 2011, due to her reporting on the Summit Bankruptcy.

Cox was making over $10,000 a month in real estate and marketing before all this. $2500 was "not" a tasty fee, and not even of fair market for the service she was offering as a settlement negotiation.

Actual malice,  is proven by showing that, subjectively, the publisher of the statement had a "serious concern about whether the statement was true," not by her "lack of effort to determine the truth" or by her feelings about the subject of the publication. Cox has no such concern and still believes 100% 6 years later,

8

that Plaintiff is guilty of corrupt, unethical, unconstitutional and illegal actions in their role as the trustee of the Summit bankruptcy.

## The only way Plaintiff can win is if they flat out lie and perjure themselves again

Plaintiff makes millions a year, they did then and they do now. Cox only seemed to alert a bank VP to a situation of mistrust. As Plaintiff clearly violated their contract with Summit 1031. The bank VP read the facts and refused a loan for 10 million that Obsidian wanted against their free 10 million in Oregon Tax Credits. When the loan was denied they retaliated on me, Defendant Cox and even claimed I was the only one reporting on their behavior and alleging crimes. Which is flat out false and they perjured themselves.

### 2.)  Summary Judgment based on Oregon Retraction Laws

Cox alleges that Plaintiff has no valid claim for defamation based on Oregon Retraction Laws and their total lack of asking Cox or notifying Cox in ANY way of the blog post of Dec. 25th 2010 of which is a material factor in this case.

Even if this court deems the cease and desist sent to Cox from Aman stating no blog post was a request, this court cannot deny as exhibit 2 shows, the cease and desist was emailed DAYS before Defendant Cox posted the blog post that is a material factor in this case.

## Oregon's right-of-retraction statute, ORS 31.200-225 applies to blogger Crystal Cox, Defendant and therefore this could should grant Cox a Summary Judgment.

ORS 31.220-225, "Tort Actions, Rules Governing Particular Claims for Relief," precludes a plaintiff from obtaining general damages for defamation unless the plaintiff has demanded a correction or retraction and the defendant has failed to correct or retract the statement.

In this case, Cox claims that because the plaintiffs did not seek a correction or retraction, the cannot obtain damages of any kind.

Blogs are magazines, newpapers and periodicals in this day and age as a matter of fact and law.

The Retraction statutes of Oregon do apply to blogs. All Oregon newspapers have blogs, therefore they are one in the same in the State of Oregon.

Therefore Cox cannot be sued unless Plaintiff asked for a retraction and they did not as a matter of law.

This court cannot legally claim that blogs are not newspapers in this day and age, nor can the court say blogs are not magazines or periodicals by definition because they are.

The Internet is most certainly protected by retraction statutes. How can it not be as matter of definition. Cox's blogs as the record shows, consumed this marketplace, this medium of communication and reached mass public. Cox's blog had illustrations, videos, commentary, documents, public interaction, and is a source of information, a periodical, a magazine, a "news" "paper".

Therefore this court should grant Cox a summary judgement.

Internet periodicals such as Defendant's blogs are covered under Oregon Retraction Statutes therefore Plaintiff has no case and Cox should be granted a summary judgement.

**"Oregon's retraction statutes provide protection from defamation lawsuits if the publisher retracts the allegedly defamatory statement according to the prescribed guidelines.**

The publisher has two weeks after receiving a demand for retraction to investigate the demand and determine whether to publish a correction or retraction.

The retraction must appear in the first issue published, or first broadcast made, after the expiration of the two-week deadline.

The content of the retraction should substantially state that the defamatory statements previously made are not factually supported, and that the publisher regrets their original publication. Finally, the correction or retraction must be published in substantially as conspicuous manner as was the defamatory statement.

Oregon courts have held that the retraction statute does not violate the Oregon constitution and that it applies only to publishers and broadcasters, and not to individual defendants whose statements happened to be published or broadcast.

**Oregon's retraction statute should be interpreted to extend to Internet periodicals such as Defendant's blogs.**

O.R.S. § 31.215 prohibits the recovery of damages absent a demand for a retraction for "defamatory statement[s] published or broadcast in a newspaper, magazine, other printed periodical, or by radio, television or motion pictures."

Passed decades before the advent of the public Internet, this statutory list appears to reflect the legislature's desire to identify and encompass all manner of publication channels, not a desire to pick and choose communications made pursuant to certain technologies per se.

Rather, the legislature's public policy goal was to encourage the publication of retractions of defamatory statements and to therefore reduce litigation and preserve judicial economy by reducing lawsuits.

As the Oregon Supreme Court has noted, the retraction statute is "loosely drafted" and that the "legislature probably intended" that the protections be afforded "to those involved in the process of publishing or broadcasting." Wheeler v. Green, 286 Or. 99, 123 (Ore. 1979). That is, "publishers" are afforded the statutory opportunity for retraction as "[i]t is the 'publisher' in that sense who has the power to determine whether or not a correction or retraction shall be printed or broadcast. Id.

As Internet publication is no different in this sense than the broad publication methods identified the statute, it too should be afforded the same opportunities and protections. Therefore retraction laws should apply to Cox and Cox should be granted a summary judgment.

A retraction demand was not issued by the Plaintiffs, the ability to seek damages should be precluded and Cox should be granted Summary Judgement.

**Judge Lent, joined by one other judge, dissented in Davidson.**

Judge Linde, also joined by one other judge, concurred. He disagreed with the conclusion of the lead opinion that the retraction statute provided a "substitute legal remedy." 281 Or. at 224, 574 P.2d 624. He stated, however:

"* * * [T]he validity of ORS 30.160 does not rest on the contingency of a retraction. The statute does not withdraw the common-law action for defamation. It limits the financial scope of the remedy, at least for unintentional defamation, to a measure of damages that corresponds to injuries measurable in money.
[670 P.2d 626]

"We need not pursue here the question how far the legislature must retain money damages as a constitutionally required remedy for noneconomic injuries when they existed at common law. Defamation is a special case, addressed by more than one provision of article I, Oregon's Bill of Rights.

The focus of section 10 is on assuring a remedy to one whose reputation has been injured. At the same time, article I, section 8, forbids all laws `restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever,' with the proviso that `every person shall be responsible for the abuse of this right.' The two sections must be construed together. They yield a coherent view of freedom and responsibility. The responsibility prescribed in section 8 is responsibility to others for injuries done to them, such as the injury to reputation accorded constitutional stature in section 10.

Laws limited to remedying such injuries alone are not laws restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever. Laws that in terms impose sanctions on speech or writing beyond the needs of remedying such injuries, whether statutory or common law, are restraints and restrictions forbidden by section 8. See Deras v. Myers, 272 Or. 47, 535 P.2d 541 (1975).

Given the interrelation of our two explicit sections on freedom of speech and press and the right to a remedy for injury to reputation, a statute that matches financial compensation for unintentional defamation to demonstrable injuries measurable in money arguably exhausts the scope of that remedy under article I, section 8. In any event, it satisfies article I, section 10." 281 Or. at 224-25, 574 P.2d 624.

The negligence standard is not the only protection available to media defamation defendants in Oregon. As noted earlier, see n. 3, supra, punitive damages for libel are proscribed by Article I, section 8, even if the defendant acts with actual malice. In addition, media defendants are insulated by the retraction statute. Under ORS 30.160, see n 7, supra, a publisher or broadcaster of an unintentional defamation is subject only to special damages unless a retraction is demanded and is not published or broadcast at the end of a two-week investigatory period following demand. See ORS 30.165(2). Thus, in a very real sense, the negligence standard leaves a media defendant immune from general damages unless it is

negligent twice — first, in making a defamatory false statement and, second, in failing to retract the statement after a demand and investigation.

## Court should grant Summary Judgement to Cox based on Oregon Retraction Statutes

Blogs are clearly covered by Oregon Retraction Laws. Blogs are a medium of communication. Blogs have video, illustration and are certainly periodicals.

This court should grant Cox a summary judgment based on Oregon Retraction Law, and the fact that Plaintiff did not ask Cox to remove the post nor did Plaintiff warn Cox of a legal action regarding this ONE, Exact blog post that is of material evidence in this case.

## 3.)  Summary Judgment based on Anti-Slapp Laws

Just as in **Darm v. Craig,** Cox is entitled to the protection of the Oregon anti-slapp laws as protection against frivolous and expansive lawsuits such as this one against bloggers speaking on public issues. Jerry Darm, Darm v. Craig, In July 2011, medical spa doctor Jerrold "Jerry" Darm sued blogger Tiffany Craig . ( Multnomah County Circuit Court, Oregon State, Case Number:1107-08823 )

Cox is allowed Anti-Slapp protection just a in this case; Ancer Haggerty - Quantum Future Group Case, Higher Balance, LLC v. Quantum Future Group, Inc. et Civil No. 08-233-HA)

Cox is protected under the same legal case as defendant in; Pastor Charles O'Neal's Church, Beaverton Grace Bible Church vs. Julie Ann Smith, Judge Jim Fun Oregon Circuit Court.

A minister who sought 500 thousand dollars in damages for defamation against a former church member who blogged about her experience with his church, will be paying the former members court costs and legal fees.

Also note in all cases the defendants were granted legal fees. Though Cox is pro se she is entitled to legal fees paid to her by Plaintiff and moves this court to award her attorney fees.

Pro Se Litigants are allowed to have attorney fees paid. It has been 3 years.

13

**4.) Summary Judgment based on Oregon Real Estate law and professional standards**

Under Oregon Real Estate Law, as a an Oregon real estate broker, it was Cox's duty to report industry allegations, suspected wrong doings and possible infractions of law that affected the real estate industry.

It was Cox's duty under Oregon consumer protection laws as a real estate broker to report on any possible illegal actions in the Oregon real estate industry.

**The Oregon Department of Justice is deeply committed to ensuring a safe and fair marketplace in Oregon.**

Therefore as an Oregon Real Estate Broker Cox was duty bound to report on things that affected her real estate marketplace.

It was Cox's duty, as a matter of ethics and Oregon Real Estate Law, as well as professional standards to report on Unfair and Deceptive Acts in the real estate marketplace.

Starting on Sussman Shank Press Release on December 19, 2008, Cox began reporting on this story as a Real Estate Broker, this was in our newsletters, and reported on in Idaho, Montana and Oregon of which I, Crystal Cox, owned my own real estate company.

Following the email from insider, dated, July 12, 2009 began to post more, not with malice but with a duty to report on unethical or illegal actions within the real estate industry and warn the public at large.

**Cox Alleges it was her duty under Oregon Real Estate Law and professional standards to report on the Summit bankruptcy.**

It was Defendant Cox's duty under Oregon law, OR statutes 696, Oregon Real Estate Law, to report on / to report Oregon Real Estate consumer issues and potential pitfalls.

14

As Cox had been an Oregon Real Estate Broker ( Crystal L. Cox, license number 200410356) and owned her own real estate company ( Ten Lakes Realty) in the state of Oregon for 6 years.

Summit was a 1031 Exchange company. So another words the money that Cox alleged was held up by Plaintiff, was money that belonged to real estate consumers of which she had sworn duty under oath and Oregon Real Estate Law to protect to the best of her ability.

It would have been unethical, immoral, unconstitutional and unlawful for Defendant Cox not to report what she had learned, been told, read, and discovered in court motions, hearings and documents.

Cox alleges that she was obligated under Oregon law as an Oregon Real Estate professional to shout what she knew from the rooftop and get the information out any way she could, especially using her massive online anti-corruption, real estate, marketing and information network.

Cox alleges that under her Oregon "required" professional E and O insurance, she had duty to disclose any fraud in real estate that she may know about, be it mortgage and lending, disclosure liabilities, 1031 exchange companies or other real estate infractions, be it ethics or a matter of law.

**Duties Of Real Estate Property Managers - § 696.890. Duties of real estate property managers.**

3) A real estate property manager owes the property owner the following affirmative duties:
(a) To deal honestly and in good faith;
(b) To disclose material facts known by the property manager and not apparent or readily ascertainable to the owner;
(c) To exercise reasonable care and diligence;

Under Oregon Real Estate statutes and professional standards Defendant Cox had a duty and obligation to report, therefore Plaintiff has no case against Cox of malice allegations, as Cox had no malice and in fact had a duty to disclose in good faith, care and diligence, and to deal honestly to the best of her ability as an Oregon Real Estate professional under Oregon Law.

**The IRS encourages the reporting of fraud.**

Cox has reported what she feels is a violation of the IRS 1031 Exchange laws. Cox still fully believes that Plaintiff did not have a legal right to be the Trustee of the Summit Bankruptcy and has violated IRS Codes and Bankruptcy Law.

Cox also alleges that the Oregon Attorney General may be working with Plaintiff as they recently received 32 million in restitution over the Summit Bankruptcy.

**Oregon Real Estate Statute 696, discusses,** "Intentionally interfered with the contractual relations of others concerning real estate or professional real estate activity", Cox had a duty to report on Padrick's interference in Oregon Contract Law, real estate transactions, 1031 Exchanges and violating the legal rights of his clients, Summit.

**Cox had no Negligence** and in fact acted with a standard of care of reasonable members of their profession in her community, as her duty was to the real estate consumer who by law, she had sworn to protect.

**Under the Consumer Protection Act Cox was bound** to do all she could, to the best of her ability to protect the real estate consumer.

**Cox, not only had no malice in Dec. of 2010 but still fully believes those same allegation.**

As the David Aman cease and desist of Dec. 22nd 2010 discusses; Aman alleges the following to be false and defamatory and uses this in his original complaint.

"Padrick has committed fraud against the government.

Padrick "stole [money] from the US Government."

Padrick has engaged in "illegal" and "fraudulent" activity.

 Padrick is "corrupt" and has engaged in "Corruption, Fraud, Tax Crimes, Solar Tax Credit Crimes."

 Padrick is a liar.

16

Padrick pays off the media and politicians.

"Did Oregon Attorney Kevin Padrick hire a hitman to kill me?"
Padrick has committed tax fraud. Ms. Crystal Cox

Padrick is "guilty of Fraud, Deceit on the Government, Illegal Activity,
Money Laundering, Defamation, Harassment"

"Kevin Padrick of Obsidian Finance LLC is a Criminal, he has broken many
laws in the last 2 years to do with the Summit 1031 case and regardless of the
guilt of the Summit 1031 principals, Kevin Padrick is a THUG and a Thief
hiding behind the Skirt tails of a corrupt un-monitored bankruptcy court
system and protected by Corrupt Bend DA and Corrupt Bend Oregon Judges.
And I will Expose every detail of every law he broke, every secret hand shake
and back alley deal.. every solar credit fraud.. every sale to a friend or cronie
of real estate consumer money and every indiscretion[.]" ~

**As of today, June 28th 2014,** Defendant Cox continues to 100% believe all of the above
statements and all that she has posted regarding Tonkon Torp Law Firm, Kevin Padrick and
Obsidian Finance Group.


After this cease and desist, **December 22nd 2010**, with no blog post listed as an issue
and Cox literally having thousands upon thousands of posts discussing this massively
public issue, Cox emailed one of her sources, Stephanie DeYoung, to poke fun at Aman,
Deyoung emailed back, the email you see in **Exhibit One**. So days later, on December
25th 2010 Cox posted that email. This became the ONLY blog post left standing in the
Obsidian v. Cox case.

Aman sued Cox for 10 Million Dollars on January 14th of 2011.

Then AMAN told this court, the Jury that Cox did not agree to, the Seattle Weekly,
Forbes, the New york Times and the WORLD that Cox extorted him and his client, and
that the whole case was about Cox maliciously extorting him and his client. Though Cox
had been reporting on Aman and Summit for 3 years prior.

This was an email sent AFTER Plaintiff sued Cox. This was intentional, willful and
deliberate. Aman has superior knowledge of the Law as does Plaintiff who is a lawyer
and has a degree is Psychology. This was purposeful, unlawful, cruel, unethical and

unconstitutional.

Knowing full well this was a willful, negligent, flat out defamatory, slanderous lie that ruined Cox's life. Cox has a harassment, defamation and malpractice claim against David Aman, he has clearly violated Cox's rights to due process and ruined Cox's life simply to cover up the inner workings of Oregon's biggest bankruptcy case.

**On January 19th, 2011.** Cox emailed Aman in a REPLY to his Legal threat, **literally a REPLY** email to him. Yet he told the world and this court, Cox emailed him out of the blue to extort him.

Judge Hernandez believed Aman and prejudiced pro se litigant Cox and painted Cox out to be a criminal asking for a TASTY SUM, when the email that Judge Hernandez defamed, slammed and slandered Cox over in an denial for a new trial that hit all media, was an email that was NOT a material factor in the case, and was sent attorney to attorney PRIVILEGED, after Cox was sued. Judge Hernandez should never have allowed it in, as seen in the hearing transcripts the day before the trial.

Aman had this court, Big and small media and the ENTIRE world believe that Obsidian v. Cox was about an email that was sent from Crystal Cox, Defendant, Pro Se as her own attorney to opposing counsel, David Aman, AFTER she had been sued, in order to STOP the 3 years of litigation, court cost, and global chaos that ensued.

An email that was a month after the ONLY blog post Cox was on trial for, and was sent AFTER the cease and desist, SUDDENLY became the only issue in the case. It is as if this court has no regard for law, due process or rules of procedure and only wish to protect Portland's elite law firms such as Tonkon Torp and Perkins Coie ( Judge Micheal Simon, who was involved in the Summit Bankruptcy).

5.) **Summary Judgment based on the fact that Plaintiff has "unclean hands" as a matter of law and therefore has no legal case to win a defamation claim against defendant.**

As Exhibits show, it is clear that Kevin Padrick worked for the debtor, was in control of the debtor and was an insider as a matter of law, who was under contract with Summit, the debtor to restructure their debt.

The contracts with summit, press releases, billing documents, the later filing of debtor in possession and more clearly show that Padrick was, without a doubt working for and under contract with the debtor Summit.

Therefore as a matter of bankruptcy code and IRS code was not legal to be the trustee in the Summit Bankruptcy, therefore Padrick's clear and convincing, without a doubt violation of law gives him "unclean hands" as a matter of law and therefore he cannot bring a claim against defendant for reporting on these public and factual matters.

**The clean hands doctrine** is a rule of law that someone bringing a lawsuit or motion and asking the court for equitable relief must be innocent of wrongdoing or unfair conduct relating to the subject matter of his/her claim. It is an affirmative defense that the defendant may claim the plaintiff has "unclean hands".

Fraudulent conduct is unclean hands, and it is clear as a matter of law that Plaintiff has engaged in breach of contract, contract law violations, bankruptcy law violations, and IRS code violations, in the least. And therefore cannot bring suit against Cox on these matters.

A legal doctrine which is a defense to a complaint, which states that a party who is asking for a judgment cannot have the help of the court if he/she has done anything unethical in relation to the subject of the lawsuit.

Thus, if a defendant can show the plaintiff had "unclean hands," the plaintiff's complaint will be dismissed or the plaintiff will be denied judgment. It is clear and convincing that Plaintiff has acted unethical, in the very least, and in regard to the subject of the lawsuit, therefore Plaintiff has to be denied judgement as a matter of law.

**In tort law, "unclean hands" is a doctrine** that prevents one party to a lawsuit from receiving a particular outcome to a case because that party has engaged in bad behavior. Clearly there is evidence on the record of this court that in the very least Plaintiff has engaged in "bad behavior". Therefore Cox should be granted a summary judgment.


**6.) Clearly Plaintiff had no Loss over this ONE Blog Post, this is a statement of FACT.**

If Plaintiff proves to this court otherwise, then Plaintiff is again lying, committing fraud on the court and Defendant will not participate. And AGAIN urges this court to call for an FBI investigation, a DOJ trustee investigation, an Attorney General investigation. Cox is not the bad guy she is exposing the BAD GUY. It is the duty of this court to protect the general public from the illegal, unlawful, unethical and immoral actions of Plaintiff and of Tonkon Torp Law Firm.

**Per the trial transcripts of sworn testimony,** Obsidian's VP Patricia Whittington, and both Padrick and Brown, all claimed that they could not prove damages from that one blog post, to change testimony now would be fraud on the court.

Therefore this court should grant Cox a Summary Judgement.

Plaintiff cannot prove a loss and further litigation cost is futile.

**CONCLUSION**

For the foregoing reasons, and the original motion to dismiss and motion for Summary Judgment, Cox moves this court to grant her a summary judgment.

**Exhibits Explained**

**Exhibit One** is an email from Stephanie Studebaker Deyoung, dated Dec. 23rd 2010 showing that the blog post of Dec. 25th 2010 posted by Defendant Cox was the words of insider, whistleblower Stephanie DeYoung, therefore this is no way to prove Cox had malice. As Cox had no reason to doubt Oregon CPA, insider, Stephanie Deyoung.

**Exhibit Two** is the original cease and desist sent from David Aman to Cox BEFORE the blog post that is the only material factor of this case.

**Exhibit Three** is the Sussman Shank Press release that proves Obsidian worked for Summit before Dec. 2008, therefore they are in violation of bankruptcy codes and IRS codes for Padrick to have been trustee, thus proving Cox had no malice.

**Exhibit 4** is the Objection to the Fees of Tonkon Torp and Obsidian Finance, Kevin Padrick as filed by summit investors, creditors, CPA's and insiders which discusses the same things Cox was posting online, therefore Cox had no malice and Plaintiff cannot prove malice as there was none.

**Exhibit 5** is an email from creditor attorney Robert Opera to David Aman, that is of record in the court documents of the Summit Bankruptcy, alleging tax issues, proving that Cox was not the source of this information and therefore had no malices.

**Exhibit 6** is the email from debtor attorney, among all parties, including Tonkon Torp, Aman, Kevin Padrick Obsidian, Perkins Coie, the DOJ and more. Proving that it was not Cox who simply made up that it was not in the creditors best interest to have a trustee, therefore Cox had no malice.


**/s/ Crystal L. Cox**
**Crystal L. Cox, Pro Se**


## CERTIFICATE OF SERVICE

On June 29th, 2014

I hereby certify that I served the foregoing on:

Portland U.S. Courts
1000 SW Third Ave
Portland, OR 97204

via Electronic Service

**/s/ Crystal L. Cox**
**Crystal L. Cox, Pro Se**

Pro Se Defendant
Reverend Crystal L. Cox
PO Box 2027
Port Townsend, WA 98368
SavvyBroker@yahoo.com